# No. 09-50137

# In the United States Court of Appeals for the Fifth Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

CHARLES WAYNE CARMONY,

*Defendant-Appellant.*

————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

————————————

**BRIEF OF DEFENDANT-APPELLANT**

————————————

HENRY J. BEMPORAD
Federal Public Defender
Western District of Texas
727 E. Durango Blvd., B-207
San Antonio, Texas 78206
Tel.: (210) 472-6700
Fax: (210) 472-4454

M. CAROLYN FUENTES
Assistant Federal Public Defender

*Attorney for Defendant-Appellant*

## CERTIFICATE OF INTERESTED PERSONS

### United States v. Charles Wayne Carmony,
### No. 09-50137

The undersigned counsel of record certifies that the persons having an interest in the outcome of this case are those listed below:

1. **Charles Wayne Carmony,** Defendant-Appellant;

2. **John E. Murphy,** Acting U.S. Attorney;

3. **Tracy Braun,** Assistant U.S. Attorney, who represented Plaintiff-Appellee in the district court;

4. **Henry J. Bemporad,** Federal Public Defender;

5. **R. Clark Adams,** Assistant Federal Public Defender, who represented Defendant-Appellant in the district court; and

6. **M. Carolyn Fuentes,** Assistant Federal Public Defender, who represents Defendant-Appellant in this Court.

This certificate is made so that the judges of this Court may evaluate possible disqualification or recusal.

 

_____
M. CAROLYN FUENTES
*Attorney for Defendant-Appellant*

# REQUEST FOR ORAL ARGUMENT

Charles Wayne Carmony requests oral argument.  Carmony pleaded guilty and was sentenced to life in prison for enticing a minor to engage in sexual conduct for the purpose of producing a visual depiction of that conduct.  Carmony raises six issues on appeal.  He contends, among other things, that his life sentence exceeds the statutory maximum for his offense, and that the guideline adjustments that resulted in a sentencing range of life were improperly assessed.  Carmony also contends that the Government breached its plea agreement with him, and that it failed to present a factual basis for the charged offense.  Because of the seriousness of Carmony's sentence, and the complexity and number of the issues he raises, oral argument should be granted to assist the Court's resolution of the appeal.

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS.. . . . . . . . . . . . . . . . . i

REQUEST FOR ORAL ARGUMENT.. . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES.. . . . . . . . . . . . . . . . . . . . . . . . . 5

SUBJECT MATTER AND APPELLATE JURISDICTION.. . . . . . . . 1

ISSUES PRESENTED FOR REVIEW.. . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE

    1.   Nature of the Case.. . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    2.   Course of Proceedings and Disposition in the Court Below.. . . 3

    3.   Statement of Facts.. . . . . . . . . . . . . . . . . . . . . . . . . . 4

SUMMARY OF THE ARGUMENTS.. . . . . . . . . . . . . . . . . . . . 15

ARGUMENTS AND AUTHORITIES

I.   CARMONY'S LIFE SENTENCE EXCEEDS THE STATUTORY MAXIMUM
    FOR HIS OFFENSE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    A.  Standard of Review.. . . . . . . . . . . . . . . . . . . . . . . . . 19

    B.  Carmony Does Not Have Two Prior Convictions for the Sexual
       Exploitation of Children.. . . . . . . . . . . . . . . . . . . . . . . 20

    C.  Carmony's Sentence Appeal Waiver Is Inapplicable to His
       Challenge of a Sentence above the Statutory Maximum.. . . . . 25

iii

II. THE DISTRICT COURT MISAPPLIED GUIDELINE ADJUSTMENTS FOR A DEFENDANT WHO IS THE LEGAL GUARDIAN OF THE MINOR INVOLVED IN THE OFFENSE AND FOR THE PRODUCTION OF VISUAL DEPICTIONS OF SADISTIC CONDUCT................. 27

    A. Standard of Review............................. 28

    B. Carmony Was Not His Girlfriend's Guardian............. 28

    C. Carmony Did Not Produce Visual Depictions of Sadistic, Masochistic, or Violent Conduct..................... 30

    D. The District Court's Errors Harmed Carmony............. 35

    E. Carmony's Sentence Appeal Waiver Is Invalid............. 35

III. BY ADVOCATING FOR A 35-YEAR MINIMUM SENTENCE, THE GOVERNMENT BREACHED THE PLEA AGREEMENT............. 40

    A. Standard of Review............................. 40

    B. The Government Breached the Plea Agreement........... 40

IV. CARMONY'S GUILTY PLEA MUST BE VACATED BECAUSE THE FACTUAL BASIS FOR THE PLEA FAILED TO ESTABLISH AN ESSENTIAL ELEMENT OF THE OFFENSE......................... 43

    A. Standard of Review............................. 43

    B. Because the Record Does Not Establish that the Materials Used by Carmony Traveled in Interstate of Foreign Commerce, the Factual Basis for His Guilty Plea Was Insufficient.......... 44

CONCLUSION.................................... 48

CERTIFICATE OF SERVICE......................... 49

iv

# TABLE OF AUTHORITIES

Page

**Cases**

*Brady v. United States*,
  397 U.S. 742 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Miller v. Commonwealth*,
  2008 WL 3161507, No. 2006-CA-002598-MR
  (Ky. Ct. App. Aug. 8, 2008) (unpublished). . . . . . . . . . . . . . . . . . 23

*Randolph v. Commonwealth*,
  2007 WL 1192028, No. 2002-CA-001867-MR
  (Ky. Ct. App. Apr. 13, 2007) (unpublished). . . . . . . . . . . . . . . . . . 23

*Taylor v. United States*,
  495 U.S. 575 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Adams*,
  961 F.2d 505 (5th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . 44

*United States v. Alfaro*,
  555 F.3d 496 (5th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . 29

*United States v. Andis*,
  333 F.3d 886 (8th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. Angeles-Mascote*,
  206 F.3d 529 (5th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . 43, 44

*United States v. Armstrong*,
  951 F.2d 626 (5th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . 46–47

*United States v. Bach*,
  400 F.3d 622 (8th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Baty*,
  980 F.2d 977 (5th Cir. 1992). . . . . . . . . . . . . . . . . . . 36, 37, 39

*United States v. Baymon*.
  312 F.3d 725 (5th Cir. 2002). . . . . . . . . . . . . . . . . . . . . 35, 46

*United States v. Bownes*,
  405 F.3d 634 (7th Cir. 2005). . . . . . . . . . . . . . . . . . . . . 26

*United States v. Briggs*,
  939 F.2d 222 (5th Cir. 1991) (en banc). . . . . . . . . . . . . . . . . 47

*United States v. Broughton-Jones*,
  71 F.3d 1143 (4th Cir. 1995). . . . . . . . . . . . . . . . . . . . 25–26

*United States v. Burns*,
  526 F.3d 852 (5th Cir. 2008). . . . . . . . . . . . . . . . . . . . . 28

*United States v. Calverley*,
  37 F.3d 160 (5th Cir. 1994) (en banc). . . . . . . . . . . . . . . . 44, 47

*United States v. Cooper*,
  70 F.3d 563 (10th Cir. 1995). . . . . . . . . . . . . . . . . . . . . 43

*United States v. Delgado-Martinez*,
  564 F.3d 750 (5th Cir. 2009). . . . . . . . . . . . . . . . . . . 28, 35

*United States v. Elashyi*,
  554 F.3d 480 (5th Cir. 2008). . . . . . . . . . . . . . . . . . . . . 41

*United States v. Fierro-Reyna*,
  466 F.3d 324 (5th Cir. 2006). . . . . . . . . . . . . . . . . . . . . 23

*United States v. Fowler*,
  216 F.3d 459 (5th Cir. 2000). . . . . . . . . . . . . . . . . . . . 33–34

*United States v. Galo*,
  239 F.3d 572 (3d Cir. 2001). . . . . . . . . . . . . . . . . . . . 21, 22

*United States v. Gonzalez*,
  309 F.3d 882 (5th Cir. 2002). . . . . . . . . . . . . . . . . . . . . 42

*United States v. Gonzalez-Terrazas*,
  529 F.3d 293 (5th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Gwinnett*,
  483 F.3d 200 (3d Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. Hildenbrand*,
  527 F.3d 466 (5th Cir.),
  *cert. denied*, 129 S. Ct. 437 (2008). . . . . . . . . . . . . . . . . 43, 44, 45

*United States v. Houston*,
  364 F.3d 243 (5th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Hubbard*,
  480 F.3d 341 (5th Cir. 2007). . . . . . . . . . . . . . . 10, 19, 21, 24, 25

*United States v. Johnson*,
  541 F.3d 1064 (11th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. Jones*,
  475 F.3d 701 (5th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Kimbrough*,
  536 F.3d 463 (5th Cir. 2008),
  *cert. denied*, 129 S. Ct. 936 (2009). . . . . . . . . . . . . . . . . . . . . . 35

*United States v. Lyckman*,
  235 F.3d 234 (5th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . 30, 32

*United States v. Malloy*,
  568 F.3d 166 (4th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . 45, 46

*United States v. McCalla*,
  545 F.3d 750 (9th Cir. 2008),
  *cert. denied*, 129 S. Ct. 1363 (2009). . . . . . . . . . . . . . . . . . . . . 46

*United States v. Melancon*,
  972 F.2d 566 (5th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . 25, 36

*United States v. Mezzanatto*,
    513 U.S. 196 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. Munoz*,
    408 F.3d 222 (5th Cir. 2005). . . . . . . . . . . . . . . . . . . . . 40, 41

*United States v. Nolen*,
    472 F.3d 362 (5th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Olano*,
    507 U.S. 725 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*United States v. Ortega-Gonzaga*,
    490 F.3d 393 (5th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Parker*,
    267 F.3d 839 (8th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . 33

*United States v. Pierson*,
    544 F.3d 933 (8th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Portillo*,
    18 F.3d 290 (5th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . 39

*United States v. Price*,
    95 F.3d 364 (5th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . 36

*United States v. Ramos-Sanchez*,
    483 F.3d 400 (5th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Randolph*,
    364 F.3d 118, 122 (3d Cir. 2004). . . . . . . . . . . . . . . . . . . . 22

*United States v. Ready*,
    82 F.3d 551 (2d Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. Robinson*,
    187 F.3d 516 (5th Cir. 1999). . . . . . . . . . . . . . . . . 35, 36, 37, 39

viii

*United States v. Rodriguez*,
   523 F.3d 519 (5th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . 24

 *United States v. Sacko*,
   178 F.3d 1 (1st Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Sandoval-Ruiz*,
   543 F.3d 733 (5th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Sarmiento-Funes*,
   374 F.3d 336 (5th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Spruill*,
   292 F.3d 207 (5th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . 47

*United States v. Turchen*,
   187 F.3d 735 (7th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . 33

*United States v. White*,
   258 F.3d 374 (5th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . 47

## Statutes

18 U.S.C. § 2251. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

18 U.S.C. § 2251(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 20, 45

18 U.S.C. § 2251(e). . . . . . . . . . . . . . . . . . 4, 9, 15, 19, 20, 22

18 U.S.C. § 2252(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 2252A. . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 25

18 U.S.C. § 2423(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 3231. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3742. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 2255. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Ky. Rev. Stat. Ann. § 530.064(1)(a). . . . . . . . . . . . . . . . . . 23

Ky. Rev. Stat. Ann. § 530.065(1). . . . . . . . . . . . . . . . 22, 23

Okla. Stat. tit. 21, § 1123(A)(1) (2000). . . . . . . . . . . . . . . . 25

**United States Sentencing Guidelines**

U.S.S.G. §1B1.3(a). . . . . . . . . . . . . . . . . . . . . . . . . . . 33

U.S.S.G. §1B1.3(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . 34

U.S.S.G. §2G2.1 . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 34

U.S.S.G. §2G2.1, comment. (n.3). . . . . . . . . . . . . . . . . . . 29

U.S.S.G. §2G2.1, comment. (n.3(A)). . . . . . . . . . . . . . . . . 28

U.S.S.G. §2G2.1(b)(4). . . . . . . . . . . . . . . 2, 11, 16, 27, 30, 33, 34

U.S.S.G. §2G2.1(b)(5). . . . . . . . . . . . . . . . 2, 11, 16, 27, 28

U.S.S.G. §2G2.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

U.S.S.G. §2L1.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

U.S.S.G. §3D1.2(d). . . . . . . . . . . . . . . . . . . . . . . . . . . 34

U.S.S.G. Ch.5, Pt.A (Sentencing Table). . . . . . . . . . . . . 12, 35

**Rules**

Federal Rule of Appellate Procedure 4(b). . . . . . . . . . . . . . . . 1

Federal Rule of Criminal Procedure 11(b)(1)(N). . . . . . . . . . . . . . . 36

Federal Rule of Criminal Procedure 11(b)(3). . . . . . . . . . . . . . . . 44

**Other Authority**

Webster's Ninth New Collegiate Dictionary (1984). . . . . . . . . . . . . 31

## SUBJECT MATTER AND APPELLATE JURISDICTION

1. **Subject Matter Jurisdiction in the District Court.**  This case arose from the prosecution of alleged offenses against the laws of the United States. The district court exercised jurisdiction under 18 U.S.C. § 3231.

2. **Jurisdiction in the Court of Appeals.**  This is a direct appeal from a final decision of the United States District Court for the Western District of Texas, entering judgment of criminal conviction and sentence under the Sentencing Reform Act of 1984.  This Court has jurisdiction of the appeal under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

Under Federal Rule of Appellate Procedure 4(b), a criminal defendant who wishes to appeal a district court judgment must file notice of appeal in the district court within 10 days after either the entry of the judgment or order appealed from, or the filing of a notice of appeal by the Government.  In this case, written judgment was entered on February 10, 2009, and Carmony filed notice of appeal on February 11, 2009.  A first amended written judgment was entered on April 1, 2009, and Carmony filed an amended notice of appeal on April 9, 2009.

## ISSUES PRESENTED FOR REVIEW

1.   Whether Carmony's sentence of life imprisonment exceeds the statutory maximum for his offense.

2.   Whether the district court erred by imposing a two-level upward adjustment, under guideline §2G2.1(b)(5), on the rationale that Carmony was the legal guardian of the minor he was dating.

3.   Whether the district court erred by imposing a four-level upward adjustment, under guideline §2G2.1(b)(4), on the rationale that images of his minor girlfriend portrayed sadistic or masochistic conduct.

4.   Whether the Government breached the plea bargain agreement.

5.   Whether the factual basis for Carmony's guilty plea was insufficient to support it.

6.   Whether Carmony's sentence appeal waiver is invalid, or otherwise insufficient to preclude the issues he raises on appeal.

## STATEMENT OF THE CASE

### 1. Nature of the Case.

Charles Wayne Carmony appeals the sentence of life imprisonment imposed upon his conviction for enticing a minor to engage in sexually explicit conduct to produce a visual depiction of that conduct. On appeal, he contends that his life sentence exceeds the statutory maximum of 50 years, because he has only one prior conviction that subjected him to enhancement. He also challenges two upward guideline adjustments imposed by the district court. Carmony further contends that the Government breached the plea bargain agreement, and that the factual basis for his plea was insufficient to convict him of the charged offense. None of these issues, Carmony argues, is foreclosed by the sentence-appeal waiver in his plea agreement. For these reasons, Carmony asks this Court to vacate his guilty plea and reverse his conviction. Alternatively, he requests remand for resentencing before a different judge.

### 2. Course of Proceedings and Disposition in the Court Below.

An indictment charged Carmony with traveling in interstate commerce to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b) (Count One), and with enticing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct, using materials transported in interstate commerce, in violation of 18 U.S.C. § 2252(a)

3

(Count Two).  (1 R. 28–29.)[1]  Pursuant to a plea agreement, Carmony pleaded guilty to Count Two.  (2 R. 60–61.)  The district court sentenced him to life imprisonment, but subsequently granted the parties' request to vacate that sentence.  (1 S.R. Dkt. 51, 56, 60.)  At a second sentencing hearing, the court denied Carmony's motion to withdraw his plea and again sentenced him to life imprisonment, ruling that Carmony had two prior convictions that subjected him to enhanced punishment under 18 U.S.C. § 2251(e).  (1 S.R. 25–47; 2 S.R. 110, 149.)  Carmony appealed.  (1 R. 120; 1 S.R. 69.)

### 3.  Statement of Facts.

**a.  *Carmony's offense.***  In 2004, when Carmony was 39 years old, he met a teenaged girl through an internet chat room.  (1 R. 60; P.R. 4.) Carmony claimed to be 19 years old.  (1 R. 60; 2 R. 24; P.R. 21–22.) Carmony and the girl eventually started dating—he traveled from Kentucky, where he lived, to San Antonio, Texas, to see her.  (P.R. 4.)  From late 2005, through July 26, 2006, when the girl was 14 and 15 years old, Carmony visited her a half-dozen times in San Antonio, and the two engaged

---

1.  The record on appeal is cited as "[volume] R. [page]."  The supplemental record on appeal is cited as "[volume] S.R. [page]."  The revised presentence report is cited as "P.R. [page]," and the addendum to the presentence report is cited as "P.R. Add."  Sealed documents are referred to by their docket numbers.  The district court's sealed statement of reasons is cited as "SOR."

in sexual intercourse. (1 R. 61–62, 95.) The girl's parents knew of the relationship, but they believed Carmony was 19 or 20. (1 R. 61.)

During their internet chats, the girl, at Carmony's request, disrobed and simulated sexual acts in front of her web camera for Carmony to view. (1 R. 60, 62.) The girl also sent sexually explicit images of herself to Carmony using a cellular telephone he had purchased for her. (1 R. 62.) Based on his relationship with the girl, Carmony was charged with traveling interstate to engage in illicit sexual conduct, and with enticing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct. (1 R. 28–29, 60–62.)

**b.  *Carmony's guilty plea.*** Carmony pleaded guilty to Count Two of the indictment, which charged that he

> did knowingly . . . entice . . . a minor, CV1, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct and which visual depiction was produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce,

in violation of 18 U.S.C. § 2251(a). (1 R. 28–29, 59; 2 R. 60–61.) The factual basis for this plea outlined Carmony's relationship with his teenaged girlfriend, including their production of sexually explicit images using the girl's web camera and a cellular telephone. (1 R. 60–61; R. Excerpt 3.) The factual basis also noted that Carmony's laptop computer, found at his Kentucky residence, contained sexually explicit videos and images of the girl,

as well as images of child pornography depicting other minors. (1 R. 61–62; R. Excerpt 3; P.R. 5–7.) There were no facts, however, about where the web camera or the telephone were made, or about whether these items had ever traveled in interstate commerce. (1 R. 59–61; R. Excerpt 3.) And there was no information that the computer was used to produce the images. Although the district court did not "have time to read all of" the written factual basis for the guilty plea, it asked Carmony whether that factual basis was correct. (2 R. 56; R. Excerpt 4.) Carmony said that it was. (*Id.*)

Carmony's guilty plea was entered pursuant to a written plea agreement, which "waive[d] [his] right to appeal his sentence on any ground, including any appeal right conferred by 18 U.S.C. § 3742." (1 R. 62; R. Excerpt 3.) The sentence appeal waiver included collateral proceedings under 28 U.S.C. § 2255, with the exception of claims based on ineffective assistance of counsel or prosecutorial misconduct. (1 R. 63; R. Excerpt 3.)

At the plea hearing, the district court asked Carmony whether he had enough time "to go over" the plea agreement with his attorney, "and receive his advice and counsel[.]" (2 R. 52; R. Excerpt 4.) Carmony said yes. (*Id.*) The court did not ask Carmony whether he had read the agreement or whether he understood it. (2 R. 52–59; R. Excerpt 4.) Neither did the court specifically address the agreement's sentence appeal waiver. (*Id.*) Instead,

the court mentioned the right to appeal during its explanation of some of Carmony's Fifth and Sixth Amendment trial rights:

> Mr. Adams, on your behalf, would exercise your constitutional rights to cross-examine . . . witnesses. You would have the absolute right to remain silent, as you do right now. If you want to quit talking to me, you may do so. On the other hand, you could give up that right alone and get up and testify to the jury about your side of what happened.
>
> And then if the jury did convict you, you would have two rights of appeal, one being direct appeal and one being what's called habeas corpus or indirect appeal. And you would not have to prove yourself innocent, but rather, the government would always have the burden of proving you guilty.

(2 R. 58; R. Excerpt 4.)   After Carmony said that he understood his constitutional rights, the court asked whether he was "willing to give up those rights in order to have Count 1 dismissed and perhaps hope to get some reduction on . . . punishment." (*Id*.) Carmony said yes. (*Id*.)

Because defense counsel was unsure whether the district court had addressed the waiver, he asked the court to "go over the waiver of appeal section" with Carmony. (2 R. 59; R. Excerpt 4.) The court said:

> All right. As I mentioned and we discussed, Mr. Carmony, you have two appellate rights. But in order to get the benefits of this plea agreement you're giving up not only the right to trial by jury and the right to remain silent and the right to cross-examination, but also those rights to appeal, subject to, technically, some limited right of appeal if it were to be found that Mr. Adams or I or Ms. Braun violated any of our professional responsibilities or if some error was

7

made in the sentencing process and so forth.  But other than that, you're waiving those appellate rights as well. Do you understand that?

(2 R. 59–60; 2 R. Excerpt 4.)  Carmony replied "Yes, sir."  (2 R. 60; R. Excerpt 4.)

Following the express terms of the plea agreement, the district court informed Carmony that he was subject to a mandatory minimum term of imprisonment of 25 years, and a maximum term of life imprisonment.  (1 R. 60; 2 R. 54; R. Excerpt 4.)  The court stated that there was "a factual basis to support a plea of guilty" (2 R. 59; R. Excerpt 4), and accepted Carmony's guilty plea (2 R. 61; R. Excerpt 4).

    **c.**  ***Carmony's first sentencing hearing.***  At Carmony's sentencing hearing, a dispute arose about whether he was subject to a mandatory minimum sentence of 25 or 35 years' imprisonment.  (2 R. 12–14.)  The Government asserted that Carmony had two prior convictions that subjected him to a mandatory minium of 35 years, while Carmony contended that a 25-year minimum applied because he had only one conviction that qualified for enhancement.  (*Id*.)  He also argued that, under his plea bargain agreement and the advice received at his plea hearing, the mandatory minimum term was 25 years.  (2 R. 12.)  The court ruled that the proper sentence range was 25 years to life imprisonment.  It overruled Carmony's guideline objections and imposed a term of life.  (1 R. 113–19; 2 R. 34, 46–47.)

**d.** *Carmony's second sentencing hearing.*    After Carmony was sentenced, both parties agreed that the district court erred in determining the statutory sentence range.  (Dkt. 51, 56; 2 S.R. 111.)[2]  If Carmony had one prior enhancement-qualifying conviction, his range would have been 25-to-50 years' imprisonment, under 18 U.S.C. § 2251(e).  (Dkt. 51 at 2; 2 S.R. 112.)  If he had two such convictions, the range would have been 35-years-to-life, under that same provision.  (Dkt. 56 at 1–2.)  The parties asked the district court to vacate Carmony's sentence and correct its error, although they disagreed about what the correct sentence range should be.  (Dkt. 51, 56.)  The district court vacated Carmony's sentence and scheduled a new sentencing hearing.  (Dkt. 60.)[3]

**i.** *Sentencing disputes.*    At the hearing, the parties disputed the appropriate sentencing range.  They also disputed whether, by advocating for a range different from the plea bargain, the Government had breached its agreement.  (2 S.R. 118–29.)  Carmony argued that the correct punishment range was 25-to-50 years' imprisonment because he had only one prior conviction relating to the sexual abuse of a minor—a Kentucky statutory rape

---

2.  Docket entry 51 is Carmony's sealed "Motion to Vacate Sentence and Withdraw Guilty Plea."  Docket entry 56 is the Government's sealed "Response to Defendant's Motion to Vacate Sentence."

3.  Docket Entry 60 is the district court's sealed order granting Carmony's motion to vacate his sentence.

9

conviction from 1990.  (1 S.R. 30–32; 2 S.R. 141–48; R. Excerpt 7.)  The Government disagreed, claiming that Carmony's prior misdemeanor conviction for attempted unlawful transaction with a minor qualified as a second conviction relating to the sexual exploitation of a minor, thus subjecting him to imprisonment for 35 years to life.  (1 S.R. 54–55; 2 S.R. 113–14; R. Excerpt 7.)  According to the prosecutor, that offense involved solicitation of a child to engage in sexual activity.  (1 S.R. 55.)[4]

Carmony pointed out that, under this Court's categorical approach, the offense for which Carmony was convicted did not qualify as a predicate for enhancement.  The Kentucky statute under which he was convicted did not relate to the sexual exploitation of children—it forbade causing or inducing a minor to engage in controlled substance activity, or gambling, or any other criminal activity constituting a felony.  (1 S.R. 30–32; 2 S.R. 143, 145.) Relying on this Court's decision in *United States v. Hubbard*,[5] the district court decided that the unlawful-transaction offense "does constitute . . . an enhancement," and it ruled that the correct sentence range was 35 years to life imprisonment.  (2 S.R. 141, 148; R. Excerpt 7.)

---

4.  The presentence report characterized the offense as involving obscene telephone calls to a 15-year-old girl and an attempt to "rendevous" with her.  (P.R. 14–15.)

5.  480 F.3d 341, 344 (5th Cir. 2007).

10

Carmony also reurged his presentence report objections. (2 S.R. 132–40; R. Excerpt 7; P.R. Obj.) Among other things, he objected to the presentence report's recommendation for a two-level upward adjustment in offense level, under guideline §2G2.1(b)(5). (2 S.R. 136–39; R. Excerpt 7; P.R. 10; P.R. Obj.) The recommendation was based on the theory that Carmony was the "legal guardian" of his girlfriend because he "was permitted to date" her. (P.R. 10.) The district court overruled that objection. (2 S.R. 139; R. Excerpt 7.)

Carmony also objected to an additional four levels based on visual depictions of Carmony having sexual intercourse with his 14-year-old girlfriend and of the girl's pierced labia. (2 S.R. 134–36; R. Excerpt 7; P.R. 10; P.R. Obj.)[6] According to the report, such depictions portrayed sadistic or masochistic conduct, or violence, thus supporting an adjustment under guideline §2G2.1(b)(4). (P.R. 10.)[7]

In addition to the reasons presented in the presentence report, the prosecutor contended that the adjustment was supported by Carmony's chat

---

6. The presentence report refers to girl's pierced vagina, but it appears that the piercing was actually, as counsel stated, of her labia. (2 S.R. 134.) The prosecutor appeared to agree that the piercing was in the "vaginal area." (2 S.R. 135.) The image of the piercing was not of the act of piercing as it occurred; rather it depicted the girl's genital area after a ring had been inserted in her labia. (*Id.*)

7. The presentence report addendum noted that the adjustment was supported by images of Carmony's girlfriend urinating. (P.R. Add.)

11

session with another person, during which he requested images involving urination, and by images of other minors found on Carmony's laptop computer in 2007. (2 S.R. 135–36; R. Excerpt 7; P.R. 5–7.) Defense counsel contended that these images could not support the adjustment because they were not part of Carmony's offense. (2 R. 136; R. Excerpt 7.) The Government disagreed, claiming that the additional images were "relevant conduct." (*Id*.) The district court overruled Carmony's objection. (*Id*.)

The overruling of Carmony's objections resulted in a total adjusted offense level of 43. (2 S.R. 148; R. Excerpt 7; P.R. 11.) This offense level, combined with Carmony's criminal history category II, produced an advisory guideline sentence of life imprisonment. *See* U.S.S.G. Ch.5, Pt.A (Sentencing Table).[8] Carmony argued that a life term was unreasonable, pointing out that the sexual relations had not been forcible in any way, and that he himself had been sexually abused a s a child. (1 S.R. 32–37; 2 S.R. 150–53.) The district court imposed a guideline sentence of life imprisonment. (1 S.R. 62–68.)

**ii.** ***Carmony's claim of breach.*** Carmony asked the district court to permit him to withdraw his guilty plea because the Government had breached the plea agreement. (Dkt. 51 at 3–6; 1 S.R. 25–47.) He pointed out that the

---

8. Had Carmony's objections been sustained, he would have an offense level of 37 and a guideline sentence range of 235 to 293 months' imprisonment.

Government's assertion that a 35-year mandatory minimum applied was in direct contravention of the agreement's provision specifying a mandatory minimum of 25 years. (1 R. 60; Dkt. 51 at 3–6; 1 S.R. 25–47.) The district court acknowledged that "the plea agreement referred to a 25 year minimum mandatory." (2 S.R. 111; R. Excerpt 7.) And Carmony understood that he could receive a 25-year sentence under the explicit terms of the plea bargain agreement. (Dkt. 51 at 5.)

The Government conceded that Carmony had "his hopes set on 25" (2 S.R. 124), and that "[e]ven at the time of sentencing, he was hoping for a 25 year sentence." (2 S.R. 128.) But it contended that there was no breach because the plea agreement informed Carmony that he could receive a sentence of up to life imprisonment. (2 S.R. 124.) The district court at first seemed to accept this assessment, asking defense counsel whether the difference between 25 years and 35 years—or, as the court put it, "the difference between the 2 and the 3"—was really "significant." (2 S.R. 125.) Counsel replied that it was. (*Id.*)

The court then appeared to agree that the plea agreement had been breached, saying to the prosecutor: "Well . . . obviously, the record reflects what it reflects in terms of the Government taking the position that . . . it shouldn't be 25, it should be 35." (2 S.R. 126.) In the district court's view, it was now the Government's call as to how best to address the breach: "the

13

issue shifts to the Government to say clearly that happened and does it make more sense to step back and redo this either by trial or by a new plea agreement . . . . Or, in the alternative . . . let the appellate chips fall where they may." (2 S. R. 126–27.) The prosecutor replied: "I vote for door number two . . . . letting the chips fall where they may." (2 S. R. 127.) The district court denied Carmony's request to withdraw his plea. (2 S.R. 149; R. Excerpt 7.)

## SUMMARY OF THE ARGUMENTS

### I. Carmony's Life Sentence Exceeds the Statutory Maximum for His Offense.

The offense of enticing a minor to engage in sexual conduct, to produce an image of the conduct, is punishable by 15 to 30 years' imprison-ment. The statutory sentencing range increases to 25 to 50 years if a defendant has a prior conviction for the sexual exploitation of children, and to a range of 35 years to life, if he has two such convictions. See 18 U.S.C. § 2251(e). Carmony concedes that he has one prior conviction that qualifies for enhancement. Contrary to the district court's ruling however, he does not have two.

The district court found Carmony was subject to additional enhancement due to a prior Kentucky conviction for attempted unlawful transaction with a minor, in the second degree. This offense punishes one who induces or causes a minor to engage in illegal controlled substances activity involving marijuana, in illegal gambling activity, or in any other criminal activity constituting a felony. Given its breadth, the offense does not meet § 2251(e)'s definition of an offense relating to the sexual exploitation of children. Because Carmony does not have two prior convictions for sexual exploitation of children, his sentence of life imprisonment must be vacated and the case remanded for resentencing.

15

**II. The District Court Misapplied Guideline Adjustments for a Defendant Who Is the Legal Guardian of the Minor Involved in the Offense and For the Production of Visual Depictions of Sadistic Conduct.**

The district court imposed a two-level increase in Carmony's offense level, under guideline §2G2.1(b)(5), on the theory that he was the legal guardian of his girlfriend because he was permitted to date her. This was error. The adjustment is meant to apply to one who plays a caretaker role, such as a teacher, day care provider, or babysitter. Carmony was dating the minor involved in his offense—that was not in a caretaker role and did not qualify for the adjustment.

The district court further adjusted the sentencing range, on the theory that images of Carmony engaging in sexual relations with his teenaged girlfriend, and of the ring in the girl's pierced labia, depicted sadistic, masochistic, or violent conduct, under guideline §2G2.1(b)(4). This too was a misapplication of the guideline. The adjustment under guideline §2G2.1(b)(4) applies to images depicting the infliction of pain, acts of physical or mental cruelty, physical abuse or humiliation, or the use of force to injure or abuse. The images involved in Carmony's case do not qualify for that four-level adjustment.

With the district court's erroneous adjustments, Carmony had a guideline sentence range of life. Without them, his sentence range was 235 to 293

months.  Because the district court's errors harmed Carmony, he asks this Court to vacate his sentence and remand for resentencing.

## III. By Advocating for a 35-Year Minimum Sentence, the Government Breached the Plea Agreement.

Carmony pleaded guilty pursuant to a plea agreement that specifically provided he was subject to a mandatory minimum term of imprisonment of 25 years.  Despite its explicit agreement that Carmony's minimum term of imprisonment was 25 years, the Government argued at sentencing that a minimum of 35 years applied instead.  Because of that breach of the plea agreement, Carmony asks this Court to vacate his conviction and permit him to withdraw his plea.  Alternatively, he requests vacation of his sentence and remand for resentencing before a different judge.

## IV. Carmony's Guilty Plea Must Be Vacated Because the Factual Basis for the Plea Failed to Establish an Essential Element of the Offense.

The district court may not accept a guilty plea unless there is a factual basis for it.  Carmony pleaded guilty to an indictment count that alleged he enticed a minor to engage in sexually explicit conduct to produce a visual depiction of it "using materials that had been mailed, shipped, and transported in interstate and foreign commerce."  The factual basis for the guilty plea established that the minor had used a web camera, as well as a cellular telephone, to send Carmony images of herself engaging in sexually explicit conduct.  But nothing in the factual basis for his plea established that either

17

the camera or the telephone had traveled in interstate or foreign commerce.
Accordingly, the factual basis for Carmony's conviction is inadequate and the
conviction must be reversed.

## ARGUMENTS AND AUTHORITIES

### I. CARMONY'S LIFE SENTENCE EXCEEDS THE STATUTORY MAXIMUM FOR HIS OFFENSE.

The offense of enticing a minor to engage in sexual conduct, for the purpose of producing a visual depiction of that conduct, is punishable by 15 to 30 years' imprisonment. 18 U.S.C. § 2251(e). The punishment increases to 25 to 50 years' imprisonment if a person who violates the statute has one prior conviction for the sexual exploitation of children. *Id.* And it increases further, to 35 years to life imprisonment, if he has two such prior convictions. *Id.*

Carmony has one prior conviction qualifying for enhancement—a conviction that sets his imprisonment range at 25 to 50 years. Accordingly, his life sentence exceeds the statutory maximum. Carmony asks this Court to vacate the illegal life sentence and remand his case for resentencing.

### A.  Standard of Review.

This Court reviews the legality of a sentence *de novo*. *United States v. Nolen*, 472 F.3d 362, 382 (5th Cir. 2006). The district court's "determinations regarding a prior conviction" also are reviewed *de novo*. *United States v. Hubbard*, 480 F.3d 341, 344 (5th Cir. 2007).[9]

---

9. Carmony's plea agreement included an appeal waiver. (1 R. 62–63.) But, for the reasons set out below, it is inapplicable to a sentence in excess of the statutory maximum, see Part I.C., and invalid in any event, see Part II.E.

### B. Carmony Does Not Have Two Prior Convictions for the Sexual Exploitation of Children.

Carmony's offense of enticing a minor, under 18 U.S.C. § 2251(a), was punishable by 15 to 30 years' imprisonment, unless the Government established that he had prior enhancement-qualifying convictions, under 18 U.S.C. § 2251(e).  The enhancement provision states:

> Any individual who violates. . . this section shall be . . . imprisoned not less than 15 years nor more than 30 years, but if such person has one prior conviction . . . under the laws of any State relating to the sexual exploitation of children, such person shall be . . . imprisoned for not less than 25 years nor more than 50 years, but if such person has 2 or more prior convictions . . .  under the laws of any State relating to the sexual exploitation of children, such person shall be fined under this title and imprisoned not less than 35 years nor more than life.

18 U.S.C. § 2251(e).[10]  Carmony conceded that his 1990 statutory rape conviction subjected him to the enhanced range of 25 to 50 years imprisonment.  (1 S.R. 30.)  He objected to a range of 35 years to life, however, arguing that his 1998 Kentucky misdemeanor conviction for attempted second degree unlawful transaction with a minor was not a conviction relating to the sexual exploitation of children, as required by § 2251(e).  (1 S.R. 30–32; 2 S.R. 141–48.)  The district court erred in overruling that objection.

_____

10.  The full text of 18 U.S.C. § 2251, as it existed when Carmony committed his offense in 2005, is attached as Addendum A to this brief.

This Court uses a categorical approach "when determining whether a predicate state conviction qualifies as a conviction for purposes of sentence enhancement under federal law[.]" *United States v. Sandoval-Ruiz*, 543 F.3d 733, 735 (5th Cir. 2008) (citing *Taylor v. United States*, 495 U.S. 575, 600 (1990)). That approach accordingly applies when deciding whether a prior state conviction relates to the "sexual exploitation of children," so as to warrant enhancement under 18 U.S.C. § 2251. *See United States v. Galo*, 239 F.3d 572, 581–82 (3d Cir. 2001) (applying *Taylor*'s categorical approach to enhancement analysis under 18 U.S.C. § 2251); *United States v. Pierson*, 544 F.3d 933, 942 (8th Cir. 2008) (same); *cf. Hubbard*, 480 F.3d at 341, 348–49 & n.34 (5th Cir. 2007) (noting applicability of *Taylor* to determine if prior convictions relate to sexual abuse for enhancement under 18 U.S.C. § 2252A). Under the categorical approach, the Court looks only to the statutory definition of the prior offense—not to the particular facts underlying the conviction. *Sandoval-Ruiz*, 543 F.3d at 735. The Court then "examine[s] the state law under which a prior conviction was obtained to determine whether it was for one of the[ ] generic offenses" that qualify for enhancement. *Hubbard*, 480 F.3d at 348.

A person is guilty of second degree unlawful transaction with a minor, under Kentucky law, if

he knowingly induces, assists, or causes a minor to engage in illegal controlled substances activity involving marijuana, illegal gambling activity, or any other criminal activity constituting a felony.

KY. REV. STAT. ANN. § 530.065(1).[11]  On its face, the statutory definition of Carmony's prior offense does not relate to the "sexual exploitation of children," as required by 18 U.S.C. § 2251(e).  While "sexual exploitation of children" is not defined, the plain and ordinary meaning of the term requires that the prior offense must at least forbid some sort of illegal sexual conduct involving a minor.  *See United States v. Bach*, 400 F.3d 622, 633 (8th Cir. 2005) ("sexual exploitation of children" means criminal sexual conduct with a child that takes advantage of or exploits a child sexually); *see also United States v. Randolph*, 364 F.3d 118, 122 (3d Cir. 2004) (statute forbidding immoral or indecent act with child under 14 to arouse or satisfy sexual desire is related to sexual exploitation of children); *Galo*, 239 F.3d at 583 (statutes forbidding statutory rape and deviate sexual intercourse with child are related to sexual exploitation of children).  *Cf. United States v. Ramos-Sanchez*, 483 F.3d 400, 402 (5th Cir. 2007) (sexual abuse of a minor requires abuse that is "sexual in nature").

The statute under which Carmony was convicted makes no reference to any sexual conduct.  To the contrary, the statute's references to "illegal

---

11.  The full text of the statute in effect when Carmony committed his offense in 1998 is attached to this brief as Addendum B.

controlled substances activity involving marijuana," and "illegal gambling activity" by their express terms exclude sexual conduct.  KY. REV. STAT. ANN. § 530.065(1).  And the final catch-all provision, which forbids inducing a minor to engage in "any other criminal activity constituting a felony[,]" *id.*, is so broad that it captures conduct that is not within the plain ordinary meaning of "sexual exploitation of children."  Indeed, it has been used in Kentucky to prosecute non-sex offenses.  *See, e.g.*, *Miller v. Commonwealth*, 2008 WL 3161507, at *1, No. 2006-CA-002598-MR (Ky. Ct. App. Aug. 8, 2008) (unpublished) (second degree unlawful transaction conviction for involving juvenile in burglary); *Randolph v. Commonwealth*, 2007 WL 1192028, at *1–*2, No. 2002-CA-001867-MR (Ky. Ct. App. Apr. 13, 2007) (unpublished) (second degree unlawful transaction conviction for involving juvenile in car theft).  And Kentucky expressly includes sexual activity in a separate, first-degree offense.  *See* KY. REV. STAT. ANN. § 530.064(1)(a).

When, as in this case, "the statute of conviction encompasses prohibited behavior that is not within the plain, ordinary meaning" of the generic offense required for enhancement, enhancement is improper.  *United States v. Fierro-Reyna*, 466 F.3d 324, 327 (5th Cir. 2006) (quotation marks and citation omitted) (discussing crime-of-violence enhancement under guideline §2L1.2).  Because there is no subsection of Kentucky Revised Statute § 530.065 that prohibits the sexual exploitation of children, there is no need to resort to

23

judicial records to narrow the statute further. *See United States v. Gonzalez-Terrazas*, 529 F.3d 293, 297–98 (5th Cir. 2008) (resort to judicial records is permitted only to determine under which subsection of statute defendant was convicted); *see also United States v. Ortega-Gonzaga*, 490 F.3d 393, 396 n.5 (5th Cir. 2007) (same).  In any event, the Government introduced no judicial records pertaining to Carmony's Kentucky conviction.[12]  Accordingly, the Court may look only to the Kentucky statutory definition, which, by its plain terms, does not define an offense relating to the sexual exploitation of children.

This Court's opinion in *Hubbard*—relied upon by the district court—does not establish otherwise.  (2 S.R. 148.)  Hubbard's prior Oklahoma conviction was under a statute forbidding a person to "'[m]ake any . . . lewd or indecent proposal to any child under sixteen (16) years of age for the child to have unlawful sexual relations or sexual intercourse with any person[.]'"

-------

12.  A discussion of the alleged facts leading to the conviction appears in the presentence report, which explicitly acknowledged that "[c]ourt documents" for the offense were unavailable.  (P.R. 14.)  Although the prosecutor at times alluded to details of the offense, which allegedly involved obscene telephone calls to a 15-year-old girl (1 S.R. 54–55; 2 S.R. 113–14; P.R. 14–15), neither those unsworn statements nor the PSR's characterization of the offense may be relied upon to meet the Government's burden to establish facts supporting a sentencing enhancement. *See United States v. Rodriguez*, 523 F.3d 519, 524 (5th Cir. 2008) (presentence report characterizations inadequate); *United States v. Jones*, 475 F.3d 701, 705 (5th Cir. 2007) ("unsworn assertions of the government's attorney do not provide a sufficiently reliable basis for a defendant's sentence").

*Hubbard*, 480 F.3d at 345 (quoting OKLA. STAT. tit. 21, § 1123(A)(1) (2000) (alteration in *Hubbard*).  Under the specific terms of this statutory definition, Hubbard's conviction was related to sexual abuse involving a minor, as required for enhancement under 18 U.S.C. § 2252A.  *Id.* at 347–51.  The Kentucky statute under which Carmony was convicted bears no similarity to the Oklahoma statute in *Hubbard*.  *Hubbard* is therefore inapposite.

Because Carmony does not have two prior convictions related to the sexual exploitation of children, he does not qualify for an enhanced sentence of 35 years to life imprisonment.  The applicable statutory range is, instead, 25 to 50 years.  His sentence of life imprisonment thus exceeds the statutory maximum for his offense.

### C. Carmony's Sentence Appeal Waiver Is Inapplicable to His Challenge of a Sentence above the Statutory Maximum.

Carmony's plea agreement included a sentence appeal waiver provision. That provision, however, does not foreclose a challenge to his excessive sentence.

A defendant may waive his right to appeal as part of a plea agreement. *United States v. Melancon*, 972 F.2d 566, 567 (5th Cir. 1992).  The federal courts have acknowledged, however, that appeal waivers are "inapplicable to appeals that challenge sentences as 'imposed in excess of the maximum penalty provided by statute[.]'"  *United States v. Broughton-Jones*, 71 F.3d

1143, 1147 (4th Cir. 1995) (internal citation omitted); *see also*, *e.g.*, *United States v. Johnson*, 541 F.3d 1064, 1068 (11th Cir. 2008) (otherwise valid appeal waiver does not foreclose "appellate review of a sentence imposed in excess of the maximum penalty provided by statute"); *United States v. Gwinnett*, 483 F.3d 200, 203 (3d Cir. 2007) (same); *United States v. Andis*, 333 F.3d 886, 892 (8th Cir. 2003) (same).

An appeal waiver is inapplicable to such a challenge because "due process . . . limitations on waiver of the right of appeal in a criminal case" dictate that a "sentence in excess of the statutory maximum . . . can be challenged on appeal even if the defendant executed a blanket waiver of his appeal rights." *United States v. Bownes*, 405 F.3d 634, 637 (7th Cir. 2005); *cf. United States v. Mezzanatto*, 513 U.S. 196, 204 (1995) (some rights "are so fundamental . . . that they may never be waived without irreparably 'discredit[ing] the federal courts.'") (internal citation omitted). Moreover, since plea agreements, like other contracts, must be construed "against a general background understanding of legality," the waiver language in such agreements should not "allow the inference that the parties intended it to preclude the appeal of an illegally imposed" sentence. *United States v. Ready*, 82 F.3d 551, 559 (2d Cir. 1996) (permitting defendant to appeal legality of restitution penalty).

26

For all these reasons, Carmony's sentence appeal waiver, even if valid, see Part II.E., *infra*, does not apply to his argument that the life imprisonment sentence imposed by the district court exceeded the statutory maximum for his offense. His sentence must be vacated, and his case remanded for resentencing.

## II. THE DISTRICT COURT MISAPPLIED GUIDELINE ADJUSTMENTS FOR A DEFENDANT WHO IS THE LEGAL GUARDIAN OF THE MINOR INVOLVED IN THE OFFENSE AND FOR THE PRODUCTION OF VISUAL DEPICTIONS OF SADISTIC CONDUCT.

The district court imposed a two-level upward adjustment, under guideline §2G2.1(b)(5), on grounds that Carmony was the legal guardian of the minor involved in his offense because he was allowed to date her. (P.R. 10; SOR.) The court added another four levels on the theory that visual depictions of Carmony engaging in sexual intercourse with his teenaged girlfriend, and an image of her pierced labia, portrayed sadistic or masochistic conduct, or violence, under guideline §2G2.1(b)(4). (P.R. 10; SOR.) The court's imposition of these adjustments was a misapplication of the guidelines. Because the misapplication was not harmless, Carmony's sentence should be vacated and the case remanded for resentencing without the adjustments. Carmony may raise these issues on appeal despite his sentence appeal waiver because it is invalid.

27

## A.  Standard of Review.

This Court reviews the district court's application of the Sentencing Guidelines *de novo* and its findings of fact for clear error.  *United States v. Delgado-Martinez*, 564 F.3d 750, 751 (5th Cir. 2009); *United States v. Burns*, 526 F.3d 852, 859 (5th Cir. 2008).

## B.  Carmony Was Not His Girlfriend's Guardian.

The district court accepted the presentence report recommendation for a two-level increase in offense level on the ground that Carmony "was a legal guardian" of his girlfriend "because [he] was permitted to date" her.  (P.R. 10.  Guideline §2G2.1 allows the increase "[i]f the defendant was a parent, relative, or legal guardian of the minor involved in the offense, or if the minor was otherwise in the custody, care, or supervisory control of the defendant[.]"  U.S.S.G.  §2G2.1(b)(5).  The guideline commentary gives examples of persons who fit this role: "teachers, day care providers, baby-sitters, or other temporary caretakers[.]" U.S.S.G. §2G2.1, comment. (n.3(A)).  And it instructs that the adjustment is to be applied broadly, looking to "the actual relationship that existed between the defendant and the minor[.]"  *Id*.

No matter how broadly this section applies, it does not extend to the actual relationship in this case—a relationship between a boyfriend and

girlfriend. That was not a relationship that involved placing the minor in Carmony's custody, care, or supervisory control.

This Court's recent opinion in *United States v. Alfaro*, 555 F.3d 496 (5th Cir. 2009), demonstrates factors that are important to application of this guideline adjustment. In *Alfaro*, the defendant was the 36-year-old brother-in-law of the 15-year-old girl involved in his offense. *Id*. at 498. The Court concluded that the difference in age and the implicit trust in the family relationship were relevant to the issue whether Alfaro exercised custody or supervisory control over the minor. *Id*. at 499.

Neither factor applies here. Although Carmony was in fact much older than his teenaged girlfriend, both she and her parents believed he was 19 or 20 years old. (R. 139.) Accordingly, when the mother permitted Carmony and the girl to date, it did not create the sort of trust relationship that exists when a parent gives over care, custody, or supervisory control of her child to a "caretaker" such as a teacher, or a babysitter. U.S.S.G. §2G2.1, comment. (n.3). A teenager's boyfriend, even if he is legally an adult, is not seen as a caretaker—he is seen as a peer. Boyfriends do not have authority to dictate their girlfriends' comings and goings, accept responsibility for their misconduct, consult with their teachers, or engage in activities normally associated with a caretaker. In this case, Carmony simply took his teenaged girlfriend on dates. Based on these circumstances, it was clearly erroneous

29

for the district court to apply the two-level upward adjustment on the theory that Carmony's minor girlfriend was in his custody, care, or supervisory control.

**C. Carmony Did Not Produce Visual Depictions of Sadistic, Masochistic, or Violent Conduct.**

Guideline §2G2.1(b)(4) provides for a four-level upward adjustment in offense level "[i]f the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence." Sadistic conduct is "the infliction of pain upon a love object as a means of obtaining sexual release, delight in physical or mental cruelty, and the use of excessive cruelty." *United States v. Lyckman*, 235 F.3d 234, 238 n.19 (5th Cir. 2000) (internal quotation marks omitted and citation omitted). Masochistic conduct is conduct that "gain[s] or increase[s] sexual gratification through the acceptance of physical abuse or humiliation." *Id*. A depiction of "violence" shows "the exertion of any physical force so as to injure, damage or abuse[.]" *Lyckman*, 235 F.3d at 238 (internal quotation marks and citation omitted). Neither the visual depictions of Carmony engaging in sexual intercourse with his teenaged girlfriend, nor the image of the girl's pierced labia, meets these definitions.

The depiction of "the sexual penetration of a prepubescent female by an adult male" qualifies as "violence" because "the sexual act depicted is likely to cause pain in one so young." 235 F.3d at 238 (internal quotation marks

and citation omitted).  The depiction of that same act between an adult male and his consenting 14-year-old girlfriend, however, does not portray violence, because sexual intercourse is not likely to cause pain to a girl of that age and maturity.[13]  *Cf. United States v. Houston*, 364 F.3d 243, 247 (5th Cir. 2004) (sexual intercourse between adult male and 16 year old girl not physically dangerous); *United States v. Sacko*, 178 F.3d 1, 6 (1st Cir. 1999) (refusing to conclude that sex is physically dangerous for a 14 year old girl).  Of course, had the Government shown that the act was in fact painful, or violent, or even that the girl was sexually immature at the time, the adjustment might have been proper.  But it did not make any such showing.

For similar reasons, the image of a pierced labia does not qualify for the adjustment. The image did not show the piercing as it occurred.  (2 S.R. 133–35.)  Instead, it was a depiction of a ring placed in the piercing, comparable to an image of jewelry placed in a pierced earlobe. (2 S.R. 134–35.)  An adjustment for depictions of violent, sadistic, or masochistic conduct is appropriate for images of prepubescent children subjected to sexual intercourse, images showing the insertion of objects into their bodies, images

---

13.  The minor in this case could not legally "consent," but the term is used here according to its ordinary meaning: "to give assent or approval."  Webster's Ninth New Collegiate Dictionary 279 (1984); *see United States v. Sarmiento-Funes*, 374 F.3d 336, 341 (5th Cir. 2004) (sex at issue in statutory rape may be consensual as a matter of fact, even if illegal).

of bondage, or images of adults urinating on a child. *See Lyckman*, 235 F.3d at 238–39 & nn.20, 21 (citing cases). An image of jewelry in a body piercing, even in the genital area, is not the same sort of image—it does not show the infliction of pain, or abuse, or the use of excessive cruelty. *See id.* at 238 n.19 (defining sadistic, masochistic). Accordingly, it does not support the adjustment.

Perhaps sensing that the above images were insufficient to support the adjustment, the presentence report addendum and the prosecutor relied on Carmony's request for an image of his girlfriend urinating, and his possession of other images of urination on his computer. (P.R. 10; P.R. Add.; 2 R. 135–36.) It is not clear whether the court relied on these other bases for enhancement. [14] Whether or not the district court relied on them, they do not support the adjustment.

The requested image of Carmony's girlfriend urinating cannot support the adjustment because it does not portray sadistic, masochistic, or other violent conduct, as required by guideline §2G2.1(a)(4). While sadistic or masochistic depictions of "adult males standing over and urinating in the face of a female

---

14. The images of other minors were not the basis of the adjustment recommended in the presentence report, which the district court adopted. (P.R. 10; SOR.) Defense counsel argued that they could not support the adjustment because they were not part of Carmony's offense. (2 S.R. 135–36.) Accordingly, it is unclear whether the district court relied on them to impose the adjustment.

child[,]" or a photograph of "men urinating on [a] grimacing girl" qualify for the adjustment, *United States v. Parker*, 267 F.3d 839, 847 (8th Cir. 2001), a depiction of the simple act of urination does not. That is because such a depiction does not portray the sort of "mental anguish, mental violence [or] physical violence" that an adjustment for sadistic or masochistic conduct, or other violence, is meant to encompass. *See United States v. Turchen*, 187 F.3d 735, 739 (7th Cir. 1999) (applying guideline §2G2.2 adjustment to photograph of men urinating on girl).

The visual depictions of minors other than his girlfriend, which were on Carmony's laptop computer, cannot support the guideline §2G2.1(b)(4) adjustment because they were not part of his offense. Chapter 2 adjustments must be based on a defendant's conduct, or conduct he procured, "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. §1B1.3(a). Carmony's offense of conviction was enticing a particular minor to engage in sexual activity for the purpose of producing a visual depiction of that conduct. Carmony did not produce the images of minors other than his girlfriend, and he did not induce anyone else to produce them. He did not even receive those images during the commission of his offense of conviction, in preparation for it, or in an attempt to avoid detection of it. *See United States v. Fowler*, 216 F.3d 459,

461–62 (5th Cir. 2000) (enhancement based on sadistic images improper because defendant's receipt of images did not occur during commission of offense of conviction). According to the prosecutor, Carmony's request for visual depictions of urination occurred during on-line chats with another man in November 2006, after the completion of his offense of conviction. (1 R. 28, 60–61, 97–98.)

Other conduct that is "part of the same course of conduct or common scheme or plan as the offense of conviction" may sometimes be considered "relevant conduct" and used to impose Chapter 2 adjustments. U.S.S.G. §1B1.3(a)(2). The common-scheme-or-plan provision, however, applies "solely with respect to offenses of a character for which §3D1.2(d) would require grouping[.]" *Id*. Carmony's offense, which is covered by guideline §2G2.1, is "[s]pecifically excluded" from grouping under that provision. U.S.S.G. §3D1.2(d). Contrary to the prosecutor's contention, Carmony's receipt of urination images of other minors was not part of the relevant conduct of his offense, and could not be used as the basis for a §2G2.1(b)(4) adjustment. That likely is why the presentence report did not include these images as a basis for the adjustment, or for any other adjustments under §2G2.1. See (P.R. 9–12). If the court relied on these images to impose the adjustment, it erred.

34

### D.  The District Court's Errors Harmed Carmony.

With the disputed adjustments for Carmony's caretaker role and for sadistic images, his offense level was 43.  (P.R. 11.)  Combined with Carmony's criminal history category II, that level resulted in a guideline range of life imprisonment.  *See* U.S.S.G. Ch.5, Pt.A (Sentencing Table). Without the two-level adjustment for the guardian relationship, the offense level would be 41, and the guideline range would be 360 months to life.  *Id*. If the four-level adjustment for the sadistic images were also removed, the offense level would be 37, and the range 235 to 293 months.  *Id*.  "Because the district court is required to consider the correctly calculated guideline range when imposing a sentence," but failed to do so here, Carmony "must be resentenced."  *United States v. Kimbrough*, 536 F.3d 463, 468 (5th Cir. 2008), *cert. denied*, 129 S. Ct. 936 (2009); *see also Delgado-Martinez*, 564 F.3d at 752–53 (guideline application error is significant procedural error requiring remand unless government shows the error was harmless).

### E.  Carmony's Sentence Appeal Waiver Is Invalid.

A defendant's right to appeal his sentence may be waived, but only if the waiver is "informed and voluntary."  *United States v. Robinson*, 187 F.3d 516, 517 (5th Cir. 1999) (quotation marks and citation omitted).[15]  A

---

15.  This Court reviews the validity of an appeal waiver de novo.  *United States v. Baymon*, 312 F.3d 725, 727 (5th Cir. 2002).

provision waiving the right to appeal "requires the special attention of the district court." *United States v. Baty*, 980 F.2d 977, 979 (5th Cir. 1992). That is because the district court has the obligation to insure that the defendant understands his right to appeal and the consequences of waiving that right. *Robinson*, 187 F.2d at 518; *see* FED. R. CRIM. P. 11(b)(1)(N) (court "must inform" defendant of "the terms of any plea-agreement provision waiving the right to appeal"). In this case, the district court did not ensure a proper understanding. Accordingly, the appeal-waiver provision of Carmony's plea bargain is invalid.

This Court's precedent illustrates the type of attention required of the district court before an appeal waiver may be enforced. In *Melancon,* the district court expressly advised the defendant of the paragraph of the plea agreement that stated he was waiving his right to appeal his sentence. 972 F.2d at 567–68. The court told Melancon that it was "very important that you knowingly, that means you know what you are doing, and by reasoning, have exercised the choice to intelligently and voluntarily . . . waive the right to appeal the sentence . . . ." 972 F.2d at 567. The court asked him whether he understood, and he replied that he did. *Id.* Similarly, in *United States v. Price*, the court specifically advised the defendant of the waiver-of-appeal provision, and the defendant indicated that he understood it and had discussed it with his attorney. 95 F.3d 364, 367 (5th Cir. 1996).

36

Without such careful advice, this Court has held appeal waivers unenforceable. In *Robinson*, for instance, the district court did not ask the defendant whether he had read the written plea agreement or whether he understood it. 187 F.3d at 518. The court did mention the appeal waiver, but only during a general discussion of the sentencing guidelines. *Id*. This Court concluded that Robinson's plea colloquy was not adequate to show that he knowingly and voluntarily waived his right to appeal. *Id*. Similarly, in *Baty,* this Court refused to enforce the waiver provision because the district court gave "no satisfactory explanation" of the consequences of the appeal waiver. 980 F.2d at 979. During the plea colloquy, the prosecutor mentioned the waiver provision, and the district judge told Baty that the waiver was "part of what the government wants in the agreement," but the judge offered no further explanation of the waiver provision or its consequences. *Id.*

The plea colloquy in Carmony's case was similarly inadequate. Although the district court asked Carmony whether he had enough time "to go over" the plea agreement with his attorney, "and receive his advice and counsel," the court did not ask Carmony whether he had read the agreement, or whether he understood it. (2 R. 52–59; R. Excerpt 4.) Neither did the court refer to the plea agreement provision that waived the right to appeal. (*Id*.)

The only mention of the right to appeal was made during the court's general explanation of some of Carmony's constitutional rights:

> Mr. Adams, on your behalf, would exercise your constitutional rights to cross-examine . . . witnesses. You would have the absolute right to remain silent, as you do right now. If you want to quit talking to me, you may do so. On the other hand, you could give up that right alone and get up and testify to the jury about your side of what happened.
>
> And then if the jury did convict you, you would have two rights of appeal, one being direct appeal and one being what's called habeas corpus or indirect appeal. And you would not have to prove yourself innocent, but rather, the government would always have the burden of proving you guilty.

(2 R. 58; R. Excerpt 4.)   After Carmony said that he understood his constitutional rights, the court asked whether he was "willing to give up those rights in order to have Count 1 dismissed and perhaps hope to get some reduction on . . . punishment." (*Id*.) Carmony said yes. (*Id*.)

Defense counsel asked the district court to "go over the waiver of appeal section," because he was unsure whether the court had addressed it. (2 R. 59; R. Excerpt 4.) Instead of reviewing the plea agreement's appeal-waiver provision—which had not been mentioned—the court told Carmony that, "in order to get the benefits of this plea agreement" he was giving up his right to appeal "subject to, technically, some limited right of appeal if it were to be found that [defense counsel] or I or [the prosecutor] violated any of our

38

professional responsibilities or if some error was made in the sentencing process and so forth. But other than that, you're waiving those appellate rights as well." (2 R. 59–60.) The court's statement, like the statement in *Baty*, failed to provide a "satisfactory explanation . . . of the consequences of" the sentence appeal waiver. 980 F.2d at 979. In fact, it did the opposite—the court's explanation effectively voided the sentence appeal waiver, since Carmony was told that he could appeal "if some error was made in the sentencing process[.]" (2 R. 60.) With this explanation, Carmony could not possibly have understood that he was waiving his right to appeal sentencing errors.

This Court has refused to enforce appeal-waiver provisions when, as in this case, there was "no satisfactory explanation" of the consequences of that waiver. *Baty*, 980 F.2d at 979; *see also Robinson*, 187 F.3d at 517–18. Because the court failed to accurately advise Carmony of the terms of his purported appeal waiver, and did not determine whether he even knew of the waiver provision in his plea agreement, the record cannot support the conclusion that Carmony made an informed waiver of his right to appeal. *Cf. United States v. Portillo*, 18 F.3d 290, 292–93 (5th Cir. 1994) (appeal waiver valid because defendant was asked if he read and understood the plea agreement). Because Carmony's waiver was neither knowing or voluntary, this Court should refuse to enforce it.

### III. BY ADVOCATING FOR A 35-YEAR MINIMUM SENTENCE, THE GOVERNMENT BREACHED THE PLEA AGREEMENT.

Carmony pleaded guilty pursuant to a plea agreement that specifically provided he was subject to "a mandatory minimum term of imprisonment of 25 years[.]" (1 R. 60.) The agreement reserved the parties' right to advocate for "the appropriate sentence [Carmony] should receive, *unless otherwise provided*" by the plea agreement. (1 R. 65) (emphasis added). Despite the Government's explicit agreement that Carmony's minimum term of imprisonment was 25 years, it argued that a minimum of 35 years applied instead. (2 R. 12–13; Dkt. 56–58; 1 S.R. 54; 2 S.R. 111.) This argument breached the agreement. Carmony asks this Court to vacate his conviction and permit him to withdraw his plea as a remedy for this breach of the plea bargain agreement. Alternatively, he requests that his sentence be vacated and the case remanded for resentencing before a different judge.

### A. Standard of Review.

"Whether the Government has breached a plea agreement is a question of law that the court reviews *de novo*." *United States v. Munoz*, 408 F.3d 222, 226 (5th Cir. 2005).

### B. The Government Breached the Plea Agreement.

When a defendant pleads guilty pursuant to a plea agreement, "the Government must strictly adhere to the terms and conditions of its promises

in the agreement." *Munoz*, 408 F.3d at 226. In interpreting the agreement's terms, the Court applies the general principles of contract law and strictly construes the terms of the plea agreement against the Government. *United States v. Elashyi*, 554 F.3d 480, 501 (5th Cir. 2008). To determine whether the Government breached those terms, the Court "considers whether the Government's conduct was "consistent with the defendant's reasonable understanding of the agreement." *Munoz*, 408 F.3d at 226.

In this case, the Government's conduct was not consistent with Carmony's reasonable understanding of the plea agreement. That agreement documents the parties' understanding that Carmony faced a mandatory minimum term of imprisonment of 25 years. (1 R. 2.) Indeed, the Government conceded that Carmony had "his hopes set on 25" (2 S.R. 124), and that "[e]ven at the time of sentencing, he was hoping for a 25 year sentence." (2 S.R. 128.)

The plea agreement permitted the Government argue for a particular sentence "unless otherwise provided" by the agreement. (1 R. 65.) Accordingly, the Government could not argue for a higher mandatory minimum than that specified in the agreement. (1 R. 60.) Yet, despite the 25-year minimum specified in the bargain, the Government argued that a 35-year mandatory minimum sentence applied. (2 S.R. 126.) The Government's conduct was a breach of the agreement.

41

The district expressly recognized that the Government's argument contradicted the plea bargain, but it is unclear whether the district court believed the Government's conduct amounted to a breach. *See* (2 R. 125–27). It stated, however, that it was the Government's choice whether to admit the breach and permit Carmony to withdraw his plea, or to take its chances on appeal. To the extent that the court found a breach and permitted the Government to select a remedy, it erred. When the Government breaches a plea agreement, the defendant—not the Government—may "seek one of two remedies: (1) specific performance, requiring that the sentence be vacated and that a different judge sentence the defendant; or (2) withdrawal of the guilty plea." *United States v. Gonzalez*, 309 F.3d 882, 886 (5th Cir. 2002). The district court erred in giving the Government any choice in the matter.

Should this Court decide that Carmony is, in fact, subject to a 35-year mandatory minimum sentence by virtue of his prior convictions, *see* Part I, *supra*, then the only available option is to permit him to withdraw his plea. If the correct mandatory minimum is 35 years, as the Government contended, then the plea agreement was based on an unfulfillable or illusory promise to Carmony—the promise that he had the opportunity to seek a 25-year sentence for his offense.

"Because the government breached its plea agreement, and because the plea agreement in this case was based on an 'unfulfillable promise,' . . . the

42

only adequate remedy in this case is to allow [Carmony] to withdraw his guilty plea." *United States v. Cooper*, 70 F.3d 563, 567 (10th Cir. 1995) (quoting *Brady v. United States*, 397 U.S. 742, 755 (1970)).

## IV. CARMONY'S GUILTY PLEA MUST BE VACATED BECAUSE THE FACTUAL BASIS FOR THE PLEA FAILED TO ESTABLISH AN ESSENTIAL ELEMENT OF THE OFFENSE.

The district court may not accept a guilty plea unless there is a factual basis for it. Reversal is called for when the factual basis fails to establish an element of the offense of conviction. Carmony pleaded guilty to enticing a minor to engage in sexually explicit conduct to produce a visual depiction of that conduct "using materials that had been mailed, shipped, and transported in interstate and foreign commerce." (1 R. 28–29; 2 R. 60–61.) Nothing in the factual basis for that plea established that Carmony had used materials that had traveled in interstate or foreign commerce. Accordingly, the factual basis for Carmony's conviction is inadequate and the conviction must be reversed.[16]

### A. Standard of Review.

Whether there is an adequate factual basis for a guilty plea is a fact finding that is reviewed for clear error. *United States v. Angeles-Mascote*, 206 F.3d 529, 530 (5th Cir. 2000). "A factual finding is not clearly

---

16. As this Court has noted, an appeal waiver does "not bar a claim that the factual basis is insufficient to support the plea." *United States v. Hildenbrand*, 527 F.3d 466, 474 (5th Cir.), *cert. denied*, 129 S. Ct. 437 (2008). Carmony's purported waiver, in any event, relates only to his sentence. (1 R. 62–63.)

erroneous as long as it is plausible in light of the record as a whole." *United States v. Hildenbrand*, 527 F.3d 466, 475 (5th Cir. 2008), *cert. denied*, 129 S. Ct. 437 (2008).

Because counsel for Carmony did not object to the sufficiency of the factual basis for his plea, review is for plain error. *See Angeles-Mascote*, 206 F.3d at 530. Plain error is error that is "obvious," "clear," or "readily apparent," and that affects substantial rights. *United States v. Calverley*, 37 F.3d 160, 162–64 (5th Cir. 1994) (en banc) (citing *United States v. Olano*, 507 U.S. 725, 730–36 (1993)). When error is plain, the Court may exercise its discretion to correct the error if it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Calverley*, 37 F.3d at 164 (quoting *Olano*, 507 U.S. at 732).

## B. Because the Record Does Not Establish that the Materials Used by Carmony Traveled in Interstate of Foreign Commerce, the Factual Basis for His Guilty Plea Was Insufficient.

The district court may not accept a guilty plea unless there is a sufficient factual basis for that plea. *Angeles-Mascote,* 206 F.3d at 530; *see also* FED. R. CRIM. P. 11(b)(3). "The factual basis cannot be implied from the fact that the defendant entered a plea, but must appear on the face of the record[.]" *United States v. Adams,* 961 F.2d 505, 508 (5th Cir. 1992). It must be "sufficiently specific to demonstrate that the accused committed the charged criminal offense." *Id.* (internal citation and quotation omitted). There must

44

be specific factual allegations to support each element of that offense. *Id.* To determine whether the factual basis is sufficient, the conduct the defendant admits must be compared to the elements of the offense charged in the indictment. *Hildenbrand*, 527 F.3d at 474–75.

Carmony pleaded guilty to Count Two of the indictment, which charged that he

> did knowingly . . . entice . . . a minor, CV1, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct and which visual depiction was produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce

in violation of 18 U.S.C. § 2251(a). (1 R. 28–29.) The elements of Carmony's offense were that: "(1) the victim was less than 18 years old; (2) the defendant used, employed, persuaded, induced, enticed, or coerced the minor to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct; and (3) the visual depiction was produced using materials that had been transported in interstate or foreign commerce." *United States v. Malloy*, 568 F.3d 166, 169 (4th Cir. 2009). The conduct alleged in the factual basis failed to show the third element—that the materials Carmony used to produce the visual depiction had traveled in interstate or foreign commerce. See (1 R. 60–62).

The third element is commonly established by evidence that the camera or other equipment used to produce the illegal visual depictions was made in

45

another country or another state. In *Malloy*, for example, the Government produced "evidence that the Sony video camera Malloy used was manufactured in Japan and that the videotape cassette at issue was manufactured in Mexico." *Id*. at 170; *see also United States v. McCalla*, 545 F.3d 750, 753 (9th Cir. 2008) (digital camera manufactured in Japan and transported in interstate and foreign commerce to California), *cert. denied*, 129 S. Ct. 1363 (2009). Nothing in the factual basis established where the webcam or telephone used by Carmony to produce visual depictions of his girlfriend were made, or where they had traveled. And while Carmony's laptop computer had traveled in interstate commerce, there was no evidence it was used to produce visual depictions. (1 R. 60–62.)

Because the factual basis was insufficient to show that Carmony had used materials that traveled in interstate or foreign commerce, his plea should not have been accepted. *See United States v. Baymon,* 312 F.3d 725, 727 (5th Cir. 2002) ("court cannot enter judgment on a plea of guilty unless it is satisfied that there is a factual basis for the plea") (quotation marks and citation omitted). The court erred in accepting Carmony's plea.

That error was plain, under clear words of the statute and the indictment in Carmony's case. The error affected Carmony's substantial rights because he stands convicted, and sentenced to life imprisonment, of a crime that the facts fail to show he committed. *See United States v. Armstrong*, 951 F.2d

46

626, 629 (5th Cir. 1992) ("It would be prejudicial to [a defendant] if he entered a plea of guilty to a crime which, based on the facts developed in the record, he did not actually commit.") (citing *United States v. Briggs,* 939 F.2d 222, 228 & n.18 (5th Cir. 1991) (en banc)).  For this same reason, the error in accepting Carmony's plea without an adequate factual basis also "seriously affects the fairness, integrity, or public reputation of the judicial proceedings" in this case.  *Calverley*, 37 F.3d at 164.  "Simply put, to convict someone of a crime on the basis of conduct that does not constitute the crime offends basic notions of justice and fair play embodied in the Constitution." *Briggs,* 939 F.2d at 228.  Perhaps that is why this Court has said that "notwithstanding an unconditional plea of guilty, we will reverse on direct appeal where the factual basis for the plea as shown of record fails to establish an element of the offense of conviction[.]" *United States v. Spruill,* 292 F.3d 207, 215 (5th Cir. 2002) (quoting *United States v. White,* 258 F.3d 374, 380 (5th Cir. 2001)).  The Court should therefore vacate Carmony's plea.

## CONCLUSION

FOR THESE REASONS, the Court should vacate Carmony's conviction and permit him to withdraw his guilty plea; alternatively, his life imprisonment sentence should be vacated and the case remanded for resentencing before a different judge.

Respectfully submitted.

HENRY J. BEMPORAD
Federal Public Defender

M. CAROLYN FUENTES
Assistant Federal Public Defender
Western District of Texas
727 E. Durango Blvd., B-207
San Antonio, Texas 78206
Tel.: (210) 472-6700
Fax: (210) 472-4454

*Attorney for Defendant-Appellant*

## CERTIFICATE OF SERVICE

On August 5, 2009, I served two copies of this Brief and a diskette containing the brief on John E. Murphy, Acting U.S. Attorney for the Western District of Texas (Attn: Joseph H. Gay, Jr., Assistant U.S. Attorney), by mailing them to his office at 601 N.W. Loop 410, Suite 600, San Antonio, Texas 78216-5512.

_____
M. CAROLYN FUENTES
*Attorney for Defendant-Appellant*

ADDENDUM A

18 U.S.C. § 2251

ADDENDUM B

KY. REV. STAT. ANN. § 530.065