# No. 09-50137

# In the United States Court of Appeals for the Fifth Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

CHARLES WAYNE CARMONY,

*Defendant-Appellant.*

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

———————————

## RECORD EXCERPTS

———————————

HENRY J. BEMPORAD
Federal Public Defender
Western District of Texas
727 E. Durango Blvd., B-207
San Antonio, Texas 78206
Tel.: (210) 472-6700
Fax: (210) 472-4454

M. CAROLYN FUENTES
Assistant Federal Public Defender

*Attorney for Defendant-Appellant*

# TABLE OF CONTENTS

| Number | Description | Record Citation |
|---|---|---|
| No. 1 | Docket Sheet, *United States v. Carmony,* SA-08-CR-36-FB | 1 S. R. |
| No. 2 | Indictment, January 23, 2008 | 1 R. 28–29 |
| No. 3 | Plea Agreement, July 24, 2008 | 1 R. 59–66 |
| No. 4 | Guilty Plea Hearing, July 24, 2008 | 2 R. 51–63 |
| No. 5 | Original Judgment and Commitment Order, February 10, 2009 | 1 R. 113–19 |
| No. 6 | Notice of Appeal, February 11, 2009 | 1 R. 120 |
| No. 7 | Second Sentencing Hearing, March 13, 2009 | 2 S.R. 105–60 |
| No. 8 | First Amended Judgment and Commitment Order, April 1, 2009 | 1 S.R. 62–68 |
| No. 9 | Amended Notice of Appeal, April 9, 2009 | 1 S.R. 69 |

Certificate of Service

CLOSED, APPEAL

## U.S. District Court [LIVE]
### Western District of Texas (San Antonio)
### CRIMINAL DOCKET FOR CASE #: 5:08-cr-00036-FB-ALL

**Case Title:** USA vs. Carmony                          **Date Filed:** 1/23/2008
**Other court case number(s):** None
**Magistrate judge case number(s):** 5:07-mj-00788-NSN

**Assigned to:** Judge Fred Biery
**Referred to:**

**Defendant**
-----------------------

**Charles Wayne Carmony (1)**                 represented by   **R. Clark Adams**
                                                              Federal Public Defender
                                                              727 E. Durango Blvd.
                                                              Room B207
                                                              San Antonio, TX 78205-1205
                                                              (210) 472-6700
                                                              Fax: 210/472-4454
                                                              Email: clark_adams@fd.org
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*
                                                              *Designation: Public Defender or*
                                                              *Community Defender Appointment*

*aka*
**Reaper Carmony**

**(1)**

*aka*
**Charles Car money**

**(1)**

**Pending Counts**                                       **Disposition**
---------------------                                    ----------------

SEXUAL EXPLOITATION OF                                   FIRST AMENDED SENTENCE: Life
CHILDREN                                                 imprisonment; Life supervised release;
(2 )                                                     $100 special assessment. ORIGINAL
                                                         SENTENCE: Life imprisonment with
                                                         credit; Life supervised release; $100
                                                         special assessment

A true copy of the original, I certify,
Clerk, U. S. District Court

By _Beverly Nolden_
                     Deputy

## Highest Offense Level (Opening)
-------------------------------------------

Felony

## Terminated Counts
--------------------------

COERCION OR ENTICEMENT OF
MINOR FEMALE
(1 )

## Disposition
------------------

Dismissed by motion of Government

## Highest Offense Level (Terminated)
-------------------------------------------------

Felony

## Complaints
--------------------------

18:2423 - Knowingly and intentionally
traveled in interstate commerce,
specifically from other states into the State
of Texas for the purpose of engaging in
illicit sexual conduct with another person
specifically sexual intercourse with CV1-a
minor female
(0 )

## Disposition
------------------

---

## Plaintiff
--------------------------

**USA**                                    represented by    **Joseph H. Gay, Jr.**
                                                             Assistant U.S. Attorney
                                                             601 N.W. Loop 410
                                                             Suite 600
                                                             San Antonio, TX 78216
                                                             (210) 384-7090
                                                             Fax: 210/530-6180
                                                             Email: Joseph.Gay@usdoj.gov
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Tracy Thompson Braun**
                                                             United States Attorney's Office
                                                             Criminal Section
                                                             601 NW Loop 410 - Suite 600
                                                             San Antonio, TX 78216
                                                             US
                                                             (210) 384-7150
                                                             Fax: 210/384-7135

Email: tracy.braun@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Filing Date | # | Docket Text |
|---|---|---|
| 12/19/2007 | 1 | COMPLAINT as to Charles Wayne Carmony (1). (ac, )[5:07-mj-00788-NSN] (Entered: 12/26/2007) |
| 12/19/2007 | 2 | Arrest Warrant Issued as to Charles Wayne Carmony. (ac, )[5:07-mj-00788-NSN] (Entered: 12/26/2007) |
| 12/20/2007 | 3 | Application for Writ of Habeas Corpus ad Prosequendum as to Charles Wayne Carmony (ac, )[5:07-mj-00788-NSN] (Entered: 12/26/2007) |
| 12/20/2007 | 4 | ORDER for Issuance of Writ of Habeas Corpus Ad Prosequendum as to Charles Wayne Carmony. Signed by Judge Nancy Stein Nowak. (ac, )[5:07-mj-00788-NSN] (Entered: 12/26/2007) |
| 12/20/2007 | 5 | Writ of Habeas Corpus ad Prosequendum Issued as to Charles Wayne Carmony for December 20, 2007 (ac, )[5:07-mj-00788-NSN] (Entered: 12/26/2007) |
| 12/20/2007 | 6 | Minute Entry for proceedings held before Judge Nancy Stein Nowak :Initial Appearance as to Charles Wayne Carmony held on 12/20/2007 (Minute entry documents are not available electronically.) Detention Hearing and Preliminary Examination are set for 10/26/2007 10:00 AM before Honorable Nancy Stein Nowak. (Court Reporter FTR Gold.) (ac, )[5:07-mj-00788-NSN] (Entered: 12/26/2007) |
| 12/20/2007 | 7 | ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to Charles Wayne Carmony R. Clark Adams for Charles Wayne Carmony appointed. Signed by Judge Nancy Stein Nowak. (ac, )[5:07-mj-00788-NSN] (Entered: 12/26/2007) |
| 12/20/2007 | 8 | ORDER as to Charles Wayne Carmony - Detention Hearing and Preliminary Examination are set for 12/26/2007 10:00 AM before Honorable Nancy Stein Nowak. Signed by Judge Nancy Stein Nowak. (ac, )[5:07-mj-00788-NSN] (Entered: 12/26/2007) |
| 12/26/2007 | 9 | Minute Entry for proceedings held before Judge Nancy Stein Nowak :Detention Hearing as to Charles Wayne Carmony held on 12/26/2007 (Minute entry documents are not available electronically.) (Court Reporter FTR Gold.) (ac, )[5:07-mj-00788-NSN] (Entered: 12/26/2007) |
| 12/26/2007 | 10 | ORDER OF DETENTION: Bond set to No Bond as to Charles Wayne Carmony. Signed by Judge Nancy Stein Nowak. (ac, )[5:07-mj-00788-NSN] (Entered: 12/26/2007) |
| 12/26/2007 | 11 | WAIVER of Preliminary Examination by Charles Wayne Carmony (ac, )[5:07-mj-00788-NSN] (Entered: 12/26/2007) |

| 1/8/2008 | 12 | Arrest Warrant Returned Executed on 12/20/07 as to Charles Wayne Carmony. (bg, )[5:07-mj-00788-NSN] (Entered: 1/8/2008) |
|---|---|---|
| 1/23/2008 | 13 | INDICTMENT(Redacted Version) filed. Unredacted document sealed pursuant to E-Government Act of 2002 as to Charles Wayne Carmony (1) count(s) 1, 2. (rg1, ) (Entered: 1/25/2008) |
| 1/24/2008 | 14 | ORDER as to Charles Wayne Carmony, ( Arraignment set for 1/30/2008 01:30 PM before Judge Pamela A. Mathy.). Signed by Judge Pamela A. Mathy. (rg1, ) (Entered: 1/25/2008) |
| 1/29/2008 | 15 | SCHEDULING ORDER as to Charles Wayne Carmony Plea Agreement due by 3/24/2008. Docket Call and Rearraignment and Plea set for 3/27/2008 8:30 AM before Judge Fred Biery. Jury Selection set for 3/31/2008 8:30 AM before Judge Fred Biery. Jury Trial set for 3/31/2008 8:30 AM before Judge Fred Biery. Signed by Judge Fred Biery. (rf) (Entered: 1/29/2008) |
| 1/29/2008 | 16 | ORDER Concerning Discovery and Pretrial Motions as to Charles Wayne Carmony. Signed by Judge Fred Biery. (rf) (Entered: 1/29/2008) |
| 1/29/2008 | 17 | General Order Concerning Authentication of Exhibits as to Charles Wayne Carmony. Signed by Judge Fred Biery. (rf) (Entered: 1/29/2008) |
| 1/30/2008 | 18 | WAIVER of Personal Appearance at Arraignment and Entry of Plea of Not Guilty by Charles Wayne Carmony (rf) (Entered: 1/31/2008) |
| 3/25/2008 | 19 | MOTION to Continue by Charles Wayne Carmony. (Adams, R.) (Entered: 3/25/2008) |
| 3/25/2008 | 20 | ORDER GRANTING [19] Motion to Continue as to Charles Wayne Carmony (1). Signed by Judge Fred Biery. (rf) (Entered: 3/25/2008) |
| 3/25/2008 | 21 | ORDER as to Charles Wayne Carmony, ( Plea Agreement due by 5/19/2008., Docket Call set for 5/22/2008 8:30 AM before Judge Fred Biery., Jury Selection reset for 5/27/2008 8:30 AM before Judge Fred Biery., Jury Trial reset for 5/27/2008 8:30 AM beforeJudge Fred Biery.). Signed by Judge Fred Biery. (rf) (Entered: 3/25/2008) |
| 5/21/2008 | 22 | Unopposed MOTION to Continue by Charles Wayne Carmony. (Attachments: # (1) Leave Notification Letter to U.S. Clerk)(Adams, R.) (Entered: 5/21/2008) |
| 5/22/2008 | 23 | ORDER GRANTING [22] Motion to Continue as to Charles Wayne Carmony (1). Signed by Judge Fred Biery. (rf) (Entered: 5/22/2008) |
| 5/22/2008 | 24 | ORDER as to Charles Wayne Carmony, ( Plea Agreement due by 7/21/2008., Docket Call and Rearraignment and Plea reset for 7/24/2008 8:30 AM before Judge Fred Biery., Jury Selection reset for 7/28/2008 8:30 AM before Judge Fred Biery., Jury Trial resetfor 7/28/2008 8:30 AM before Judge Fred Biery.). Signed by Judge Fred Biery. (rf) (Entered: 5/22/2008) |

| 7/24/2008 | 25 | PLEA AGREEMENT as to Charles Wayne Carmony (Plea agreement documents are not available electronically.) (rf) (Entered: 7/24/2008) |
| 7/24/2008 | 26 | Minute Entry for proceedings held before Judge Fred Biery:Rearraignment held on 7/24/2008 ; Defendant informed of rights. Plea of guilty entered as to Charles Wayne Carmony (1) Count 2 ;Referred to Probation for Presentence Report (Minute entry documents are not available electronically.) Guilty Plea Accepted by Court as to Charles Wayne Carmony (1) Count 2. (Court Reporter Chris Poage.) (rf) (Entered: 7/24/2008) |
| 7/24/2008 | 27 | ORDER as to Charles Wayne Carmony, ( Sentencing set for 10/10/2008 8:30 AM before Judge Fred Biery.). Signed by Judge Fred Biery. (rf) (Entered: 7/24/2008) |
| 9/26/2008 | 28 | * MOTION to Extend Time *For Filing Objections to the Presentence Report* by Charles Wayne Carmony. (Adams, R.) (Entered: 9/26/2008) |
| 9/29/2008 | 29 | * MOTION to Continue *Sentencing* by Charles Wayne Carmony. (Adams, R.) (Entered: 9/29/2008) |
| 9/30/2008 | 30 | ORDER GRANTING [28] Motion to Extend Time to file Objections to Presentence Report as to Charles Wayne Carmony (1). Signed by Judge Fred Biery. (rf) (Entered: 9/30/2008) |
| 9/30/2008 | 31 | ORDER GRANTING [29] Motion to Continue as to Charles Wayne Carmony (1). Signed by Judge Fred Biery. (rf) (Entered: 9/30/2008) |
| 9/30/2008 | 32 | ORDER as to Charles Wayne Carmony, ( Sentencing reset for 11/21/2008 8:30 AM before Judge Fred Biery.). Signed by Judge Fred Biery. (rf) (Entered: 9/30/2008) |
| 10/15/2008 | 34 | * MOTION to Strike [33] * MOTION to Continue *Sentencing* by Charles Wayne Carmony. (Adams, R.) (Entered: 10/15/2008) |
| 10/15/2008 | 35 | * MOTION *To Extend Time to File Objections to the Presentence Report and Motion to Continue Sentencing* by Charles Wayne Carmony. (Adams, R.) (Entered: 10/15/2008) |
| 10/15/2008 | 35 | * MOTION to Continue Sentencing by Charles Wayne Carmony. (rf) (Entered: 10/15/2008) |
| 10/15/2008 | | Notice of Correction: ***NOTIFIED COUNSEL THAT A SEPARATE ENTRY WAS MADE TO ADDRESS THE ADDITIONAL RELIEF INCLUDED IN THE MOTION*****re [35] * MOTION to Continue, [35] * MOTION *To Extend Time to File Objections to the Presentence Report and Motion to Continue Sentencing.* (rf) (Entered: 10/15/2008) |
| 10/16/2008 | 36 | ORDER GRANTING [35] Motion to extend time to file objections to Presentence Report as to Charles Wayne Carmony (1); GRANTING [35] Motion to Continue as to Charles Wayne Carmony (1). Signed by Judge Fred Biery. (rf) (Entered: 10/16/2008) |

| 10/16/2008 | 37 | ORDER as to Charles Wayne Carmony, ( Sentencing reset for 12/5/2008 8:30 AM before Judge Fred Biery.). Signed by Judge Fred Biery. (rf) (Entered: 10/16/2008) |
|---|---|---|
| 10/17/2008 | 38 | ORDER GRANTING [33] Motion to Continue as to Charles Wayne Carmony (1). Signed by Judge Fred Biery. (rf) (Entered: 10/17/2008) |
| 10/22/2008 | 39 | ORDER GRANTING [34] Motion to Strike doc #33 as to Charles Wayne Carmony (1). Signed by Judge Fred Biery. (rf) (Entered: 10/23/2008) |
| 10/22/2008 | | Notice of Correction: ****NOTIFIED COUNSEL THAT THIS DOCUMENT HAS BEEN STRICKEN PER COURT ORDER doc #39****re [33] * MOTION to Continue *Sentencing*. (rf) (Entered: 10/23/2008) |
| 11/4/2008 | 40 | * MOTION to Extend Time by Charles Wayne Carmony. (Adams, R.) (Entered: 11/4/2008) |
| 11/12/2008 | 41 | ORDER GRANTING [40] Motion to Extend Time to File Objections to Presentence Report as to Charles Wayne Carmony (1). Signed by Judge Fred Biery. (rf) (Entered: 11/12/2008) |
| 11/12/2008 | 42 | ORDER as to Charles Wayne Carmony, ( Sentencing reset for 12/23/2008 8:30 AM before Judge Fred Biery.). Signed by Judge Fred Biery. (rf) (Entered: 11/12/2008) |
| 12/12/2008 | 43 | SENTENCING MEMORANDUM by USA as to Charles Wayne Carmony (Braun, Tracy) (Entered: 12/12/2008) |
| 12/22/2008 | 44 | Unopposed MOTION to Continue by Charles Wayne Carmony. (Adams, R.) (Entered: 12/22/2008) |
| 12/22/2008 | 45 | ORDER GRANTING [44] Motion to Continue as to Charles Wayne Carmony (1). Signed by Judge Fred Biery. (rf) (Entered: 12/22/2008) |
| 12/22/2008 | 46 | ORDER as to Charles Wayne Carmony, ( Sentencing reset for 1/30/2009 8:30 AM before Judge Fred Biery.). Signed by Judge Fred Biery. (rf) (Entered: 12/22/2008) |
| 1/28/2009 | 47 | MOTION to Continue by Charles Wayne Carmony. (Adams, R.) (Entered: 1/28/2009) |
| 1/30/2009 | 48 | ORDER DENYING [47] Motion to Continue as to Charles Wayne Carmony (1). Signed by Judge Fred Biery. (rf) (Entered: 1/30/2009) |
| 1/30/2009 | 49 | Minute Entry for proceedings held before Judge Fred Biery:Sentencing held on 1/30/2009 for Charles Wayne Carmony (1), Count(s) 1, Dismissed by motion of Government; Count(s) 2, Life imprisonment with credit; Life supervised release; $100 special assessment. (Minute entry documents are not available electronically.) (Court Reporter Chris Poage.) (rf) (Entered: 1/30/2009) |
| 2/6/2009 | 50 | TRANSCRIPT filed of Proceedings as to Charles Wayne Carmony held on 1/30/2009 Proceedings Transcribed: Sentencing Hearing. Court |

USCA5 6

| | | |
|---|---|---|
| | | Reporter/Transcriber Chris Poage, Telephone number 210-472-4747. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. Redaction Request due 2/27/2009. Redacted Transcript Deadline set for 3/9/2009. Release of Transcript Restriction set for 5/7/2009. (Poage, Chris) (Entered: 2/6/2009) |
| 2/9/2009 | 51 | SEALED MOTION filed (Attachments: # (1) Appendix A) (Adams, R.) (Entered: 2/9/2009) |
| 2/10/2009 | | SEALED PRESENTENCE INVESTIGATION REPORT placed under seal as to Charles Wayne Carmony (rf) (Entered: 2/10/2009) |
| 2/10/2009 | 52 | JUDGMENT AND COMMITMENT as to Charles Wayne Carmony. Signed by Judge Fred Biery. (rf) (Entered: 2/10/2009) |
| 2/11/2009 | 53 | NOTICE OF APPEAL by Charles Wayne Carmony Per 5th Circuit rules, the appellant has 10 days, from the filing of the Notice of Appeal, to order the transcript. To order a transcript, the appellant should fill out Form DKT-13 (Transcript Order) and follow the instructions set out on the form. If the appellant has a court appointed attorney under CJA, the Form CJA 24 should also be completed. Both forms are available in the Clerk's Office or by clicking the hyperlinks above. (rg1, ) (Entered: 2/12/2009) |
| 2/12/2009 | | Attorney Joseph H. Gay, Jr for USA added (rg1, ) (Entered: 2/12/2009) |
| 2/13/2009 | 54 | TRANSCRIPT REQUEST: TRANSCRIPT IS ALREADY ON FILE IN CLERK'S OFFICE. by Charles Wayne Carmony (bn, ) (Entered: 2/18/2009) |
| 2/13/2009 | 55 | TRANSCRIPT REQUEST by Charles Wayne Carmony for proceedings held on July 24, 2008 before Judge Fred Biery. Proceedings Transcribed: Rearraignment. Court Reporter: Chris Poage. (bn, ) (Entered: 2/18/2009) |
| 2/18/2009 | 56 | Sealed Document filed (Braun, Tracy) (Entered: 2/18/2009) |
| 2/19/2009 | 57 | DEFICIENCY NOTICE TO TRACY BRAUN: re [56] Sealed Document. **The certificate of service reflects service through the CM system. Please note that SEALED documents must reflect service by means other than the CM system. Please file the corrected Certificate of Service as a "SEALED DOCUMENT" with reference to this SEALED document and indicate the alternate method of service.**(ep, ) (Entered: 2/19/2009) |
| 2/19/2009 | 58 | Corrected Certificate of Service to Sealed Document (#56) filed (Braun, Tracy) (Entered: 2/19/2009) |
| 2/20/2009 | 60 | Sealed Order. Signed by Judge Fred Biery. (rg1, ) (Entered: 2/24/2009) |

| | | |
|---|---|---|
| 2/23/2009 | 59 | TRANSCRIPT filed of Proceedings as to Charles Wayne Carmony held on 7/24/2008 Proceedings Transcribed: Rearraignment/Plea Hearing. Court Reporter/Transcriber Chris Poage, Telephone number 210-472-4747. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. Redaction Request due 3/16/2009. Redacted Transcript Deadline set for 3/26/2009. Release of Transcript Restriction set for 5/26/2009. Appeal Record due by 3/10/2009. (Poage, Chris) (Entered: 2/23/2009) |
| 2/23/2009 | 61 | ORDER as to Charles Wayne Carmony, ( Resentencing set for 3/13/2009 08:30 AM before Judge Fred Biery.). Signed by Judge Fred Biery. (rg1, ) (Entered: 2/25/2009) |
| 2/26/2009 (p.10) | 62 | Transcript Redaction Request in case as to Charles Wayne Carmony re [50] Transcript. filed by attorney R. Clark Adams (Adams, R.) (Entered: 2/26/2009) |
| 3/2/2009 (p.13) | 63 | USCA Info Sheet Received. USCA Case Number 09-50137 as to Charles Wayne Carmony in 5CCA for [53] Notice of Appeal - Final Judgment,, filed by Charles Wayne Carmony. (bn, ) (Entered: 3/3/2009) |
| 3/3/2009 | 64 | Redacted Transcript filed re: [50] Transcript in case as to Charles Wayne Carmony (Poage, Chris) (Entered: 3/3/2009) |
| 3/5/2009 (p.15) | 65 | Certified Record on Appeal. E-mailed on 3/5/09 as to Charles Wayne Carmony to US Court of Appeals re [53] Notice of Appeal - Final Judgment,(Appeal record held for pickup per 5th circuit instructions.) (bn, ) (Entered: 3/5/2009) |
| 3/9/2009 (p.25) | 66 | Motion to Withdraw Guilty Plea SEALED MOTION filed (Attachments: # (1) Appendix) (Adams, R.) Modified (to Unseal see order #69) on 3/30/2009 (ep, ). (Entered: 3/9/2009) |
| 3/12/2009 (p.48) | 67 | Government's Response to #66 Sealed Document filed (Braun, Tracy) Modified (to Unseal-see order #69) on 3/30/2009 (ep, ). (Entered: 3/12/2009) |
| 3/13/2009 (p.58) | 68 | Minute Entry for proceedings held before Judge Fred Biery:Resentencing held on 3/13/2009 for Charles Wayne Carmony (1), Count(s) 1, Dismissed by motion of Government; Count(s) 2, RESENTENCING: Life imprisonment; Life supervised release; $100 special assessment. ORIGINAL SENTENCE: Life imprisonment with credit; Life supervised release; $100 special assessment. (Minute entry documents are not available electronically.) (Court Reporter Denver Roden.) (ep, ) (Entered: 3/17/2009) |
| 3/27/2009 (p.60) | 69 | ORDERED THAT DOC. #66 AND DOC. #67 ARE HEREBY UNSEALED. MOOTING [66] Sealed Motion as to Charles Wayne Carmony (1). Signed by Judge Fred Biery. (ep, ) (Entered: 3/30/2009) |
| | 70 | |

| | | |
|---|---|---|
| 3/30/2009 (p.61) | | Certified and Hand Delivered Record on Appeal as to Charles Wayne Carmony to Federal Public Defender's Office, M. Carolyn Fuentes. re [53] Notice of Appeal - Final Judgment, (bn) (Entered: 3/31/2009) |
| 4/1/2009 (p.62) | 71 | AMENDED JUDGMENT as to Charles Wayne Carmony (1), Count(s) 1, Dismissed by motion of Government; Count(s) 2, FIRST AMENDED SENTENCE: Life imprisonment; Life supervised release; $100 special assessment. ORIGINAL SENTENCE: Life imprisonment with credit; Life supervised release; $100 special assessment. Signed by Judge Fred Biery. (ep, ) (Entered: 4/1/2009) |
| 4/9/2009 (p.69) | 72 | AMENDED NOTICE OF APPEAL by Charles Wayne Carmony Per 5th Circuit rules, the appellant has 10 days, from the filing of the Notice of Appeal, to order the transcript. To order a transcript, the appellant should fill out Form DKT-13 (Transcript Order) and follow the instructions set out on the form. If the appellant has a court appointed attorney under CJA, the Form CJA 24 should also be completed. Both forms are available in the Clerk's Office or by clicking the hyperlinks above. RE: [71] (bn, ) (Entered: 4/13/2009) |
| 4/9/2009 (p.70) | 73 | AMENDED DESIGNATION OF RECORD ON APPEAL by Charles Wayne Carmony re [72] Notice of Appeal - Final Judgment (bn, ) (Entered: 4/13/2009) |
| 4/14/2009 (p.72) | 74 | TRANSCRIPT REQUEST: IS ALREADY ON FILE IN CLERK'S OFFICE by Charles Wayne Carmony for proceedings held on July 24, 2008 and January 30, 2009 before Judge Fred Biery. Proceedings Transcribed: Rearraignment and Sentencing. Court Reporter: Chris Poage. (bn, ) (Entered: 4/16/2009) |
| 4/14/2009 (p.73) | 75 | TRANSCRIPT REQUEST by Charles Wayne Carmony for proceedings held on March 13, 2009 before Judge Fred Biery. Proceedings Transcribed: Resentencing. Court Reporter: Chris Poage. (bn) (Entered: 4/16/2009) |
| 5/4/2009 (p.75) | 76 | USCA Info Sheet Received. USCA Case Number 09-50137 as to Charles Wayne Carmony in 5CCA for [72] Notice of Appeal - Final Judgment,, filed by Charles Wayne Carmony. (bn, ) (Entered: 5/5/2009) |
| 5/12/2009 | 77 | TRANSCRIPT filed of Proceedings as to Charles Wayne Carmony held on 03-13-09 Proceedings Transcribed: Resentencing. Court Reporter/Transcriber Denver B Roden, RMR, Telephone number 210-271-0660. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. Redaction Request due 6/2/2009. Redacted Transcript Deadline set for 6/12/2009. Release of Transcript Restriction set for 8/10/2009. Appeal Record due by 5/27/2009. (Roden, Denver) (Entered: 5/12/2009) |

SEALED DOCUMENT PURSUANT
TO E-GOVERNMENT ACT OF 2002

FILED

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

2008 JAN 23 PM 1: 23

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF

| | |
|---|---|
| UNITED STATES OF AMERICA, | **SA08CR036FB** |
| Plaintiff, | **INDICTMENT** |
| VS. | 18 USC § 2423(b) |
| | Travel to Engage in Illicit Sexual Conduct |
| | 18 USC § 2251(a) |
| CHARLES WAYNE CARMONY, | Production of Child Pornography |
| Defendant. | |

THE GRAND JURY CHARGES:

### COUNT ONE
### [18 U.S.C. § 2423(b)]

From in or about August 15, 2005 through July 20, 2006, within the Western District of

Texas, and elsewhere, the Defendant,

### CHARLES WAYNE CARMONY,

did knowingly travel in interstate commerce, from Kentucky and other states into Texas, for the

purpose of engaging in illicit sexual conduct, specifically sexual intercourse with CV1, a juvenile

female,

All in violation of Title 18, United States Code, Section 2423(b).

### COUNT TWO
### [18 U.S.C. § 2251(a)]

On or about August 16, 2005, within the Western District of Texas, and elsewhere, the

Defendant,

### CHARLES WAYNE CARMONY,

did knowingly employ, use, persuade, induce, entice, and coerce a minor, CV1,  to engage in

sexually explicit conduct for the purpose of producing a visual depiction of such conduct and which

visual depiction was produced using materials that had been mailed, shipped, and transported in

interstate and foreign commerce,

    All in violation of Title 18, United States Code, Section 2251(a).


                A TRUE BILL.


                FOREPERSON OF THE GRAND JURY

JOHNNY SUTTON
UNITED STATES ATTORNEY

BY: _Tracy Braun_
TRACY THOMPSON BRAUN
Assistant United States Attorney


2

Filed 7-24-08
Clerk, U.S. District Court
Western District of Texas

By _____ Deputy

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                CRIM. NO.SA-08-CR-36 FB

CHARLES WAYNE CARMONY,

    Defendant.

## PLEA AGREEMENT

The United States of America, by and through the United States Attorney for the Western District of Texas (hereinafter referred to as "the Government"), and Defendant Charles Wayne Carmony (hereinafter referred to as "Defendant"), individually and by and through A. Clark Adams, Attorney for the Defendant, hereby enter into the following plea agreement in the above-referenced cause pursuant to Rule 11(c)(1), Fed.R.Crim.P.:

### 1. Defendant's Agreement to Plead Guilty:

Defendant Charles Wayne Carmony agrees to plead guilty to Count Two of the Indictment in this cause, which charges the Defendant with the crime of Production of Child Pornography in violation of Title 18, United States Code, Section 2251(a).

### 2. Punishment to be Imposed:

The Defendant understands that the sentence imposed in his case will be determined by the Court in accordance with Title 18 U.S.C. § 3553(a) as construed by the United States Supreme Court in its January 12, 2005 decisions in United States v. Booker and United States v. Fanfan. The

1

Sentencing Guidelines are advisory. The Defendant stipulates that no person has specifically promised what sentence he will receive. The Defendant therefore fully understands that the punishment that could be imposed for the crime to which he is pleading guilty is:

Count Two:

       (1) a mandatory minimum term of imprisonment of 25 years;
       (2) a maximum term of imprisonment of life;
       (3) a maximum fine of $250,000;
       (4) a maximum term of supervised release of life; and
       (5) a mandatory $100.00 special assessment pursuant to the Victims of Crimes Act.

Defendant understands and acknowledges that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for his offense. The Defendant acknowledges that he has discussed this range of punishment and penalties with his attorney, and still wants to plead guilty in this case.

**3. Factual Basis for Plea:**

The Defendant agrees and stipulates as part of this plea agreement to the following facts:

Charles Wayne Carmony, date of birth 3/17/65, met a 13-year-old female (CV1) in an Internet chat room called "Teen Chat". During the chats, CV1 indicated she was 14 years of age and Carmony indicated that he was 19 years of age and still attending high school. The chats eventually became sexual in nature. Carmony routinely requested that CV1 disrobe and simulate sexual acts in front of her web camera and transmit those images to Carmony. Carmony then traveled from Kentucky to San Antonio, TX on multiple occasions in order to engage in sexual intercourse with CV1 between August of 2005 and July of 2006.

On May 27, 2006, a Comal County Deputy Sheriff, patrolling the Nichols Landing

2

recreational area, observed a green Jeep Wrangler and upon running the license plate on the jeep, discovered that it did not match the VIN on the registration return which listed to Charles Carmony of Mary Alice, Kentucky. A drivers license check on showed that Carmony's Kentucky drivers license was suspended.

The deputy identified the driver of the Jeep as Charles Carmony, DOB 3-17-65. Accompanying Carmony was CV1 and CV1's mother. Carmony advised law enforcement that he was a family friend of CV1's and that he had met CV1 and her mother at the mall in San Antonio. Carmony stated he lived in Kentucky and worked construction in Georgia and moved around, living in hotels. He stated he came to San Antonio to "be with" CV1. Carmony was asked if he had ever been arrested and he advised that he had been arrested for "Unlawful Transaction with a Minor" in Kentucky and denied having been arrested for anything else. A criminal history check revealed that Carmony had criminal convictions for 3rd degree Rape, Burglary, and Criminal Intent to Commit Unlawful Transaction with a Minor under 16.

The parents of CV1 reported that their daughter met Carmony online and that when they first met Carmony, he introduced himself to them he stated he was 19 years of age. They further reported that he had been visiting them in San Antonio for the last couple years and that they let him stay at their residence. When informed by the deputy that Carmony was 41 years of age and a registered sex offender, they became visibly upset.

Carmony was interviewed and stated that he and CV1 were "good friends" and admitted that they had met online. He further admitted to traveling to Texas to "be with" CV1 and that he had told the family that he was 20 years old.

CV1 was interviewed in June 2006. CV1 stated that between June of 2005 and July 2006.

3

Carmony traveled from Kentucky to San Antonio, Texas at least six times and engaged in sexual intercourse and oral sex with CV1. CV1 stated that Carmony engaged in sexual intercourse with her in the hotel rooms, at the Alamo, at Medina Lake and at the home of CV1, in San Antonio, Texas.

CV1 stated that Carmony directed her to produce nude and sexually explicit images and videos of herself and to transmit those images and videos to him via the Internet. CV1 stated that she did transmit nude and sexually explicit images of herself to Carmony's cellular telephone using a cellular telephone that Carmony had purchased for her. CV1 stated that during the trips to San Antonio to engage in sexual intercourse, Carmony would also bring his laptop computer. CV1 stated that there are numerous nude images of her on Carmony's laptop.

CV1 reported that Carmony had given her many gifts such as a Harley Davidson motorcycle, a gold necklace, a gold tennis bracelet, a diamond engagement ring, and two cellular telephones.

On December 18, 2007, FBI executed a search warrant at the Carmony residence in Kentucky and seized a laptop computer. The forensic examination of the laptop computer indicated numerous image and video files depicting child pornography, including image and video files depicting the defendant engaged in genital-genital and oral-genital sexual intercourse with CV1.

### 4. Defendant's Waiver of Right to Appeal or Challenge Sentence:

The Defendant is aware that his sentence may be up to the maximum allowed by statute for his offense. He is also aware that the sentence to be imposed does not provide for parole. By entering into this agreement, and as a term of this agreement, the Defendant voluntarily and knowingly waives the right to appeal his sentence on any ground, including any appeal right conferred by 18 U.S.C. §3742. The Defendant also voluntarily and knowingly waives his right to contest his sentence or the manner in which it was determined in any post-conviction proceeding,

4

including, but not limited to, a proceeding pursuant to 28 U.S.C. §2255; provided, however, that consistent with principles of professional responsibility imposed on the Defendant's counsel and counsel for the Government, the Defendant does not waive his right to challenge his sentence to the extent that it is the result of a violation of his constitutional rights based on claims of ineffective assistance of counsel or prosecutorial misconduct of constitutional dimension.

The Defendant waives his rights to challenge the sentence imposed, knowing that his sentence has not yet been determined by the Court. The Defendant is aware that any estimate of the sentencing range that he may receive from his counsel, the Government or the Probation Office, is not a promise, did not induce his guilty plea or this waiver, and does not bind the Government, the Probation Office, or the Court.  In other words, the Defendant understands that he cannot challenge the sentence imposed by the District Court, even if it differs substantially from any sentencing range estimated by his attorney, the attorney for the Government, or the Probation Officer.  Realizing the uncertainty in estimating what sentence he will ultimately receive, the Defendant knowingly and voluntarily waives his right to appeal the sentence or to contest it in any post-conviction proceeding in exchange for the concessions made by the Government in this Agreement, except as otherwise provided herein.

## 5. Defendant's Acknowledgment of Effective Assistance of Counsel:

The Defendant acknowledges that he has reviewed the merits of the charges and all possible defenses that he may have with his attorney, including, but not limited to, his right to file motions with the Court.  The Defendant acknowledges that he has had sufficient time to consult with his attorney on such matters and all possible defenses he may have. The Defendant further acknowledges by signing this Agreement that he believes he has received effective assistance of counsel, and that

5

he has had sufficient time to consult with his counsel regarding this plea agreement and the punishment that could be imposed.

The Defendant voluntarily and knowingly waives his right to file pretrial motions, to have a hearing on any such pretrial motion, previously filed or otherwise, and to have a trial on the charges brought against him in this case.

### 6. Government's Agreement and Advisory Sentencing Guideline Calculations:

In exchange for the Defendant's plea of guilty to Count Two in the Indictment, the United States of America agrees to dismiss Count One in the Indictment charging Travel to Engage in Illicit Sexual Conduct in violation of Title 18, United States Code Section 2423(b), at the time of sentencing. Furthermore, the United States agrees not oppose a maximum level reduction for acceptance of responsibility pursuant to Section 3E1.1 of the advisory Sentencing Guidelines if recommended by the Probation Office and will leave such a reduction, if any, to the discretion of the Court. The Defendant understands that the Court is not obligated to grant the maximum level reduction for acceptance of responsibility.

The Defendant further understands that it is within the complete discretion of the Court as to the sentence to be imposed on the Defendant. The Defendant will not be permitted to withdraw his agreement to plead guilty because of the Court's decision in imposing such sentence. Moreover, the Government reserves the right to advocate in support of the Court's judgment should this case be presented to an appellate court.

Except as expressly stated above, the Defendant and the Government have made no other Rule 11(c)(1)(B) recommendations as to the applicability or inapplicability of any other advisory sentencing guideline provisions, policy statements or sentencing factors; provided, however, that the

6

Government retains all rights to oppose any request for any downward adjustment in the offense level, except as expressly set forth in the immediately preceding sub-paragraph (a) above.

The Defendant understands and agrees that nothing in this Plea Agreement shall prohibit the Government from presenting all relevant facts, information and evidence to the United States Probation Office and to the Court.

The Defendant understands and agrees that pursuant to U.S.S.G. § 6B1.4(d), the District Court may reject any of these Rule 11(c)(1)(B) sentencing recommendations in whole or in part. In the event that the District Court rejects any Rule 11(c)(1)(B) sentencing recommendation, the Defendant and the United States Attorney shall remain bound by all other terms of this plea agreement.

To the extent that the parties have projected sentencing ranges in reliance on the above stipulations, such projections are estimates only and are not binding on the parties, on the United States Probation Office, or on the District Court. The Defendant will not be permitted to withdraw his guilty plea if the sentencing ranges as determined by the District Court differ from those projected by the parties or by the Probation Office.

**7. Reservation of Rights:**

The Government and Defendant each reserve the right to: (1) bring its version of the facts of this case to the attention of the probation office in connection with that Office's preparation of a presentence report; (2) dispute sentencing factors or facts material to sentencing in the presentence report; and (3) seek resolution of such factors or facts in conference with opposing counsel and the United States Probation Office. All parties reserve full right of allocution as to the appropriate sentence the Defendant should receive, unless otherwise provided above.

7

Defendant further understands that this agreement binds only the United States Attorney's Office for the Western District of Texas and the Defendant. The Defendant acknowledges his full understanding that by this plea agreement, no representations or agreements have been made or entered into with any other United States Attorney or any other federal or state prosecutor concerning other pending or possible offenses or charges. This written plea agreement constitutes the entire agreement between the parties and shall not be modified except by agreement in open court or in a supplemental plea agreement signed by all the parties.

JOHNNY SUTTON
UNITED STATES ATTORNEY

DATE: 7·24 , 2008    BY: _____
TRACY T. BRAUN
Assistant U.S. Attorney

DATE: 7/24 , 2008    _____
A. CLARK ADAMS
Assistant Federal Public Defender

**I HAVE READ (OR HAD READ TO ME) THE ABOVE PLEA AGREEMENT IN ITS ENTIRETY AND AGREE TO THE TERMS SET FORTH IN IT. ADDITIONALLY, I HAVE READ (OR HAD READ TO ME) THE FACTUAL BASIS CONTAINED HEREIN AND AGREE TO THE FACTS SET FORTH IN THE FACTUAL BASIS.**

DATE: 7/24 , 2008    _____
CHARLES WAYNE CARMONY
Defendant

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

UNITED STATES OF AMERICA,    )
                             )
        Plaintiff,           )
                             )
        vs.                  )   Docket No. SA-08-CR-36-FB
                             )
CHARLES WAYNE CARMONY,       )   San Antonio, Texas
                             )   July 24, 2008
        Defendant.           )
_____)

TRANSCRIPT OF REARRAIGNMENT/PLEA HEARING
BEFORE THE HONORABLE FRED BIERY
UNITED STATES DISTRICT JUDGE

TRANSCRIPT ORDERED BY:  R. Clark Adams, Esquire

A P P E A R A N C E S:

FOR THE PLAINTIFF:
      UNITED STATES ATTORNEY'S OFFICE
      By:  Tracy Braun, Esquire
      601 N.W. Loop 410, Suite 600
      San Antonio, TX  78216

FOR THE DEFENDANT:
      FEDERAL PUBLIC DEFENDER'S OFFICE
      By:  R. Clark Adams, Esquire
      727 E. Durango Blvd., Room B-207
      San Antonio, TX  78206

COURT REPORTER:
      CHRIS POAGE
      Official Court Reporter
      655 E. Durango Blvd., Rm. 314
      San Antonio, TX  78206
      Telephone:  (210) 472-4747
      Email:  fedcr@sbcglobal.net

Proceedings reported by stenotype, transcript produced by
computer-aided transcription.

Chris G. Poage, RMR, CRR - (210) 472-4747

**59.**

USCA5 51

1    (July 24, 2008, open court)

2         THE COURT:  All right.  Mr. Carmony, let me get your

3    agreement here.  Raise -- well, you don't have to raise your

4    right hand.  Subject to an extra five years in federal prison

5    for perjury, do you promise to tell this Court the truth, the

6    whole truth and nothing but the truth?

7         THE DEFENDANT:  Yes, sir.

8         THE COURT:  Okay.  All right.  If you'll pull that

9    microphone over closer to you because I'll be talking to you

10   primarily, and Mr. Adams knows how to project his voice anyway.

11   Are you the same Charles Wayne Carmony, represented by Mr.

12   Adams, who is charged here in Count 2 of production of child

13   pornography?

14        THE DEFENDANT:  Yes, sir.

15        THE COURT:  And have you had enough time to go over

16   this plea agreement with Mr. Adams and receive his advice and

17   counsel?

18        THE DEFENDANT:  Yes, sir.

19        THE COURT:  Do you understand the nature of that

20   charge against you?

21        THE DEFENDANT:  Yes, sir.

22        THE COURT:  Okay.  Mr. Adams, are you satisfied that

23   Mr. Carmony is legally competent to go forward if he chooses to

24   do so?

25        MR. ADAMS:  Yes, Your Honor.

USCA5 52

1          THE COURT:  Have you had enough time to view the

2   government's evidence -- probably, unfortunately, having to

3   look at this garbage.  But at any rate, have you had enough

4   time to look at it and analyze it and the other evidence

5   against Mr. Carmony and advise him in your professional

6   capacity as to whether you think the government can prove these

7   charges against him beyond a reasonable doubt or not?

8          MR. ADAMS:  Yes, I have.

9          THE COURT:  All right.  And Mr. Carmony, when you

10  were involved in this conduct, did you know you were doing

11  something that you shouldn't be doing?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  All right.  Now, let's talk about the

14  possible punishment, because this is a very serious crime.  And

15  in your particular instance, if you plead guilty to Count 2,

16  and then have the other count -- Ms. Braun, how many other

17  counts are there?

18          MS. BRAUN:  There is one other count, Your Honor.

19  Count 1 of the indictment charges Mr. Carmony with traveling in

20  interstate commerce, specifically from Kentucky to the state of

21  Texas, with the intent to have -- to engage in sexual conduct

22  with a minor.

23          THE COURT:  Okay.  So that one would be dropped.  But

24  in return, he would plead to Count 2?

25          MS. BRAUN:  Correct, Your Honor.

Chris G. Poage, RMR, CRR - (210) 472-4747

1          THE COURT:  Okay.  And -- well, let me go back so we

2     have a full picture.  If he were to be convicted in a trial on

3     Count 1 and Count 2, what is the punishment range for Count 1?

4          MS. BRAUN:  Count 1 has no mandatory minimum but a

5     maximum punishment range of 30 years imprisonment, a fine of up

6     to $250,000, a supervised release term of up to life and a $100

7     special assessment.

8          THE COURT:  And could that run consecutive, or would

9     it have to run concurrently?

10          MS. BRAUN:  I believe it could run consecutive, but

11     it's still a little unclear.

12          THE COURT:  But it's two different offenses?

13          MS. BRAUN:  Correct.

14          THE COURT:  Okay.  All right.  So you understand

15     that's what could happen to you on Count 1.  But in return for

16     dropping that count, the government has agreed to let you

17     plead, if you want to, to Count 2.

18          Now, Count 2 has a minimum mandatory of 25 years in

19     prison, to start with, up to the rest of your natural life in

20     prison, a $250,000 possible monetary punishment.  And then if,

21     as and when you do get out of prison, you would be on

22     supervision for the rest of your life; and a $100 assessment

23     for the Victim of Crime Fund.

24          And then if you were convicted on both counts, that

25     could run consecutively to each other, or concurrently.  It

USCA5 54

 1   would be the Court's option.  But the maximum, of course, could

 2   be consecutive.  Do you understand that's the most that can

 3   happen to you?

 4        THE DEFENDANT:  Yes, sir.

 5        THE COURT:  All right.  Now, Mr. Adams, he appears to

 6   be in Bexar County jail clothes, and he's here on a writ.  Is

 7   he in state custody for something else?

 8        MR. ADAMS:  No.  No.  He's -- is he here on a writ?

 9        THE COURT:  Well, that's what it says.

10        MR. ADAMS:  He's in Guadalupe County.

11        THE COURT:  That's Guadalupe County.  All right.

12   Okay.  So as far as you know, there's nothing that we have to

13   deal with in terms of state charges, parole, anything else, Mr.

14   Adams?

15        MR. ADAMS:  Not that I'm aware of.

16        THE COURT:  Okay.  Ms. Braun, do you know anything?

17        MS. BRAUN:  Your Honor, I believe Mr. Carmony may

18   have originally been brought over on a writ.  There were some

19   state charges when the federal government first got involved in

20   this case.  It's my understanding those have all been

21   dismissed.

22        THE COURT:  Okay.  All right.  So you will get

23   credit, Mr. Carmony, for all of the time that you've been in

24   custody as a result of this offense conduct, as we call it.

25        Now, on Page 2 of the factual basis -- and I don't

1  know that -- or of the plea agreement, rather -- Mr. Adams, do

2  you have a copy right there in front of you?  Or Ms. Braun has

3  one.

4         MR. ADAMS:  I do now.

5         THE COURT:  Mr. Carmony, the facts in this case,

6  according to the government, are summarized on Page 2 and 3 and

7  part of Page 4 in the proposed plea agreement.  And it says

8  what the government thinks it could prove factually beyond a

9  reasonable doubt if, indeed, we had these matters proved in

10  court with actual witnesses and computer records and videos and

11  so forth.

12         Is that an accurate factual summary of what happened

13  that led you to be here in federal court?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  Okay.  All right.  So Ms. Braun, this

16  summarizes the facts of Count 1 as well, correct?

17         MS. BRAUN:  It does, Your Honor.

18         THE COURT:  Okay.  Well, Officer Lewis, I want -- I

19  don't have time to read all of this right now, but in the

20  presentence report I want the factual basis included so I can

21  review it before we have the sentencing --

22         PROBATION OFFICER:  Yes, sir.

23         THE COURT:  -- if we get to that point.

24         And so, Ms. Braun, do you anticipate that there will

25  be additional victim impact statement by the family of this

Chris G. Poage, RMR, CRR - (210) 472-4747

1  girl?

2       MS. BRAUN:  Yes, Your Honor.

3       THE COURT:  And is she under treatment now?

4       MS. BRAUN:  She is in counselling at this time and

5  has been since shortly after the offense.

6       THE COURT:  Okay.  All right.  Now, Mr. Carmony, even

7  though -- so something in here led me to believe that you were

8  already under some kind of supervision for this conduct -- kind

9  of conduct in Kentucky.  Were you registered up there?

10       THE DEFENDANT:  No, sir.

11       THE COURT:  You were not?

12       THE DEFENDANT:  No, sir.

13       THE COURT:  Okay.  Well, maybe I misread that.  But

14  I'll go into it in more detail.

15       Even though you have told me those facts are correct,

16  that does not make you legally guilty unless you plead guilty,

17  or if you don't want to plead guilty, change your mind, today

18  is the day to change your mind.  We tear this up.  And we will

19  have a trial at some point in the future.  The government will

20  bring in this young lady, her family, the police officers and

21  the federal agents who investigated it.  They will testify

22  under oath, subject to five years in federal prison for

23  perjury, just like you are under right now.  Be fair for both

24  sides.  The jury will decide whether these facts are correct

25  beyond a reasonable doubt or not.

USCA5 57

1     Mr. Adams, on your behalf, would exercise your
2  constitutional rights to cross-examine those witnesses.  You
3  would have the absolute right to remain silent, as you do right
4  now.  If you want to quit talking to me, you may do so.  On the
5  other hand, you could give up that right alone and get up and
6  testify to the jury about your side of what happened.
7     And then if the jury did convict you, you would have
8  two rights of appeal, one being direct appeal and one being
9  what's called habeas corpus or indirect appeal.  And you would
10  not have to prove yourself innocent, but rather, the government
11  would always have the burden of proving you guilty.
12     Do you understand all of those constitutional rights
13  that you have?
14     THE DEFENDANT:  Yes, sir.
15     THE COURT:  Understanding those rights, are you
16  willing to give up those rights in order to have Count 1
17  dismissed and perhaps hope to get some reduction on your
18  punishment?
19     THE DEFENDANT:  Yes, sir.
20     THE COURT:  Okay.  And as far as you know, Ms.
21  Braun -- and I'll be asking Mr. Adams this as well -- some of
22  these cases where we have minimum mandatories, there are
23  methods to get below that in terms of safety valve.  Does that
24  apply to this statute?
25     MS. BRAUN:  It does not, Your Honor.

1      THE COURT:  Mr. Adams?

2      MR. ADAMS:  No, it does not.

3      THE COURT:  Okay.  All right.  At this time then the

4  Court finds Mr. Carmony legally competent to go forward if he

5  chooses to do so.  He's received effective advice and counsel

6  from Mr. Adams.  He knows and understands the nature of both

7  charges against him and particularly Count 2 to which he would

8  be pleading guilty under this arm's length negotiated plea

9  agreement if he does plead guilty.  There's a factual basis to

10 support a plea of guilty if one is entered.  And there is a

11 competent, oral and written waiver of constitutional rights.

12      Having made those findings, Ms. Braun, do you wish

13 the Court to admonish or inquire further?

14     MS. BRAUN:  No, Your Honor.

15     THE COURT:  Mr. Adams?

16     MR. ADAMS:  Your Honor, just simply if the Court

17 would go over the waiver of appeal section.  I'm not sure if

18 you did or if I missed it, one or the other.

19     THE COURT:  All right.  As I mentioned and we

20 discussed, Mr. Carmony, you have two appellate rights.  But in

21 order to get the benefits of this plea agreement, you're giving

22 up not only the right to trial by jury and the right to remain

23 silent and the right to cross-examination, but also those

24 rights to appeal, subject to, technically, some limited right

25 of appeal if it were to be found that Mr. Adams or I or Ms.

USCA5 59

1   Braun violated any of our professional responsibilities or if

2   some error was made in the sentencing process and so forth.

3   But other than that, you're waiving those appellate rights as

4   well.  Do you understand that?

5           THE DEFENDANT:  Yes, sir.

6           THE COURT:  Okay.  All right.  Any further

7   admonitions or inquiries, Mr. Adams?

8           MR. ADAMS:  No, Your Honor.

9           THE COURT:  All right.  Mr. Carmony, I'm now going to

10   ask you this ultimate question.  It may not be the final

11   question.  But it ultimately is what you want to do in terms of

12   your rights in this case.  You are the only person who can make

13   that ultimate decision, to either plead guilty or plead not

14   guilty when I ask you this next question.

15           Do you understand that power and those rights that

16   you alone have?

17           THE DEFENDANT:  Yes, sir.

18           THE COURT:  To the choice against you, sir, which

19   alleges that you, Charles Wayne Carmony, within the Western

20   District of Texas, on or about, and between, August of 2005 and

21   July of 2006, and particularly on May 27, 2006, and as further

22   alleged in Count 2 of an indictment against you, that you,

23   Charles Wayne Carmony, engaged in the federal felony of

24   production of child pornography; to that charge, sir, do you

25   answer not guilty or guilty?

Chris G. Poage, RMR, CRR - (210) 472-4747

1          THE DEFENDANT:  Guilty, Your Honor.

2          THE COURT:  Has anyone forced you, threatened you or

3    paid you any money to make you give up your rights or say the

4    word "guilty" in this courtroom?

5          THE DEFENDANT:  No, sir.

6          THE COURT:  I accept Mr. Carmony's plea of guilty,

7    find him guilty of Count 2 in the indictment.

8          And we'll set the punishment date for Friday, October

9    the 10th at 8:30.

10          Now, someone, Mr. Carmony, from the probation office

11    will come over to the jail where you're being housed.  They

12    will get information from you.  They may also contact

13    employers, other law enforcement people, family members and so

14    forth.  They will prepare a full presentence report such as the

15    one we have here for today.  You and Mr. Adams will have an

16    opportunity to go over that together and make any changes or

17    corrections that you wish to make.

18          And then we'll meet back here on October the 10th to

19    decide what the -- actually -- no, that is correct.  We were

20    perhaps going to be in El Paso October the 10th.  But that's

21    been moved up a couple of weeks.  So October the 10th at 8:30.

22          And Ms. Braun, anything further on this matter?

23          MS. BRAUN:  No, Your Honor.

24          THE COURT:  Mr. Adams?

25          MR. ADAMS:  No, Your Honor.

USCA5 61

1          THE COURT:  Mr. Carmony, any questions?

2          THE DEFENDANT:  No, sir.

3          THE COURT:  All right.  Good luck to you, sir.  You

4    may go with the marshals.

5    * * *

6      (End of requested transcript)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Chris G. Poage, RMR, CRR - (210) 472-4747

```
1                            -oOo-
2          I certify that the foregoing is a correct transcript
3    from the record of proceedings in the above-entitled matter.  I
4    further certify that the transcript fees and format comply with
5    those prescribed by the Court and the Judicial Conference of
6    the United States.
7
8    Date:  2/23/2009              /s/ Chris Poage
9                                  Electronic Signature
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Chris G. Poage, RMR, CRR - (210) 472-4747

AO 245 B (Rev. 06/05)(W.D.TX.) - Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT
## Western District of Texas
### SAN ANTONIO DIVISION

FILED

FEB 1 0 2009

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

UNITED STATES OF AMERICA

v.

CHARLES WAYNE CARMONY,
  Aliases: Reaper Carmony (CB name); Charles Car money (denies using),

     Defendant.

Case Number   SA-08-CR-036(1)FB
USM Number   11622-280

## JUDGMENT IN A CRIMINAL CASE
### (For Offenses Committed On or After November 1, 1987)

The defendant, CHARLES WAYNE CARMONY, Aliases: Reaper Carmony (CB name); Charles Car money (denies using), was represented by Mr. R. Clark Adams, Assistant Federal Public Defender.

On motion of the United States, the Court has dismissed the remaining counts as to this defendant.

The defendant pled guilty to Count Two (2) of the Indictment on July 24, 2008. Accordingly, the defendant is adjudged guilty of such Count, involving the following offense:

| Title & Section | Nature of Offense | Offense Ended | Count (s) |
|---|---|---|---|
| 18 USC 2251(a) | Production of Child Pornography | August 16, 2005 | Two |

As pronounced on January 30, 2009, the defendant is sentenced as provided in pages 2 through 7 of this Judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

It is further ordered that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this Judgment are fully paid. If ordered to pay restitution, the defendant shall notify the Court and United States Attorney of any material change in the defendant's economic circumstances.

Signed this the _10_ day of February, 2009.

FRED BIERY
United States District Judge



AO 245 B (Rev. 06/05)(W.D.TX.) - Imprisonment

Judgment--Page 2

Defendant: CHARLES WAYNE CARMONY, Aliases: Reaper Carmony (CB name); Charles Car money (denies using)
Case Number: SA-08-CR-036(1)FB

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of LIFE. To the extent it applies, the defendant shall receive credit for the time he has already been in custody for this federal offense.

The Court makes the following recommendations to the Bureau of Prisons:

(a)     That the defendant receive the benefits of all applicable counseling and medical treatments and other programs, while incarcerated. Defendant's medical records shall be provided to the Bureau of Prisons by defense counsel and by United States Probation Officer so the Bureau of Prisons may designate defendant to the proper federal facility.

(b)     That the defendant participate in the Bureau of Prisons' Inmate Education Program, academic and vocational training programs, while incarcerated, as well as any work opportunities.

(c)     That the defendant be incarcerated in a federal facility in the state of Kentucky or as close to the state of Kentucky as possible.

The defendant shall remain in custody pending service of sentence.

## RETURN

I have executed this Judgment as follows:

_____
_____
_____
_____

Defendant delivered on _____ to _____
at _____, with a certified copy of this Judgment.

_____
United States Marshal

By _____
Deputy Marshal

Judgment--Page 3

Defendant: CHARLES WAYNE CARMONY, Aliases: Reaper Carmony (CB name); Charles Car money (denies using)
Case Number: SA-08-CR-036(1)FB

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of life, if defendant is ever released from prison.

While on supervised release, the defendant shall comply with the mandatory, standard and if applicable, the special conditions that have been adopted by this Court as set forth on pages 4 and 5 of this judgment, and with the following conditions issued by the Court on May 27, 2004, specifically:

1.      The defendant shall abstain from the use of alcohol and/or all other intoxicants during the term of supervision.

2.      The defendant shall submit to a drug test whenever ordered by the probation officer.

3.      The defendant shall participate in sex offender counseling, as directed by the probation officer. The defendant may be required to contribute to the costs of services rendered (copayment) in an amount to be determined by the probation officer, based on the defendant's ability to pay.

4.      The defendant will abide by all rules, requirements and conditions of the sex offender counseling program including submission to polygraph testing, at the defendant's own expense, to determine if the defendant is in compliance with conditions of release.

5.      The probation officer will provide the state officials with any and all information required by the State Sex Offender Registration Agency and may direct the defendant to report to that agency personally for additional processing such as photographing and fingerprinting.

6.      The offender shall participate in a sex offender treatment program which may include physiological testing to determine the offender's sexual orientation and patterns or sexual arousal.

7.      The defendant shall attend and participate in a mental health treatment program and/or sex offender treatment program as approved and directed by the probation officer. The defendant shall abide by all program rules, requirements and conditions of the sex offender treatment program, including submission to polygraph and all other testing. The defendant will be required to make co-payments based on the defendant's ability to pay as determined by the probation officer.

8.      The defendant shall follow all other lifestyle restrictions or treatment requirements imposed by the therapist, and continue those restrictions as they pertain to avoiding risk situations throughout the course of supervision. This includes not residing or going to places where a minor or minors are known to frequent without prior approval of the probation officer.

9.      The defendant shall not associate with any child or children under the age of 18 except in the presence and supervision of an adult specifically designated in writing by the probation officer. The probation officer will notify the designated adult of risks occasioned by the defendant's criminal record or personal history or characteristics. The defendant shall permit the probation officer to make such notifications.

10.     The defendant shall reside in a residence approved, in advance, by the probation officer. Any changes in the residence must be pre-approved by the probation officer.

11.     The defendant shall not reside within 1,000 feet of the real property comprising a public or private elementary, vocational, or secondary school or a public or private college, junior college, university or playground or a housing authority owned by a public housing authority or within 100 feet of a public or private youth center, public swimming pool or video arcade facility, without prior approval of the probation officer.

12.     The defendant shall refrain from purchasing, possessing, or using any sexually stimulating or sexually oriented materials including but not limited to written, audio and visual depictions, such as pornographic books, magazines, photographs, films, videos, DVDs, computer programs, or any other media for portrayal of the same.

AO 245 B (Rev. 06/05)(W.D.TX.) - Supervised Release

Judgment--Page 4

13.    The defendant shall not possess, or use, a computer, or electronic device with any internet capability at any location (including employment) without the prior written approval of the probation department. This includes any Internet service provider, bulletin board system, or any other public or private computer network.

14.    The defendant shall not use or possess any computer (whether or not equipped with a modem or access to the internet) at any location (whether or not at his place of employment, residence, or elsewhere) without the prior written permission of the probation officer. The defendant shall not possess or use a phone with access to the internet.

15.    The defendant will not own or possess any type of camera, photographic device, and/or equipment (including video recording equipment), without approval of the probation officer.

16.    The defendant shall have no direct or indirect contact with the victim(s) without the prior written consent of the probation officer.

17.    The defendant shall participate in the computer restriction/monitoring program and shall abide by all rules and requirement of the program. (Only for use when the Court will permit the defendant to possess or use a computer.)

18.    If required to register under the Sex Offender Registration and Notification Act, the defendant shall submit his person, and any property, house, residence, vehicle, papers, computer, other electronic communication or data storage devices or media, and effects to a search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of probation or unlawful conduct by the person, and by any probation officer in the lawful discharge of the officer's supervision functions.

19.    The defendant shall register with the State Sex Offender Registration Agency in any state where the defendant resides, is employed, carries on a vocation, or is a student, as directed by the United States Probation Officer.

Judgment--Page 5

Defendant: CHARLES WAYNE CARMONY, Aliases: Reaper Carmony (CB name); Charles Car money (denies using)
Case Number: SA-08-CR-036(1)FB

## CONDITIONS OF SUPERVISION

**Mandatory Conditions:**

1) The defendant shall not commit another federal, state, or local crime.

2) The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

3) In supervised release cases only, the defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from custody of the Bureau of Prisons.

4) If convicted of a felony, the defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.

5) The defendant shall cooperate in the collection of DNA as directed by the probation officer if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000 (42 U.S.C. § 1413a).

6) If convicted of a sexual offense as described in 18 U.S.C. § 4042(c)(4), the defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer.

7) If convicted of a domestic violence crime as defined in 18 U.S. C. § 3561(b), the defendant shall participate in an approved program for domestic violence.

8) If the judgment imposes a fine or restitution, it is a condition of supervision that the defendant pay in accordance with the Schedule of Payments sheet of the judgment.

**Standard Conditions:**

1) The defendant shall not leave the judicial district without permission of the court or probation officer.

2) The defendant shall report to the Probation Officer and shall submit a truthful and complete written report within the first five days of each month.

3) The defendant shall answer truthfully all inquires by the Probation Officer and follow the instructions of the Probation Officer.

4) The defendant shall support his or her dependents and meet other family responsibilities.

5) The defendant shall work regularly at a lawful occupation unless excused by the Probation Officer for schooling, training or other acceptable reasons.

6) The defendant shall notify the Probation Officer at least ten days prior to any change in residence or employment.

7) The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substance, except as prescribed by a physician.

8) The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered.

9) The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the Probation Officer.

10) The defendant shall permit a Probation Officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the Probation Officer.

11) The defendant shall notify the Probation Officer within seventy-two hours of being arrested or questioned by a law enforcement officer.

12) The defendant shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the Court.

13) As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245 B (Rev. 05/04)(W.D.TX.) - Supervised Release

Judgment—Page 6

Defendant: CHARLES WAYNE CARMONY, Aliases: Reaper Carmony (CB name); Charles Car money (denies using)
Case Number:  SA-08-CR-036(1)FB

14)  If convicted of a sexual offense as described in 18 U.S.C. § 4042(c)(4), or has a prior conviction of a State or local offense that would have been an offense as described in 18 U.S.C. § 4042 (c)(4) if a circumstance giving rise to Federal jurisdiction had existed, the defendant shall participate in a sex offender treatment program approved by the probation officer.  The defendant shall abide by all program rules, requirements and conditions of the sex offender treatment program, including submission to polygraph testing, to determine if the defendant is in compliance with the conditions of release.  The defendant may be required to contribute to the cost of the services rendered (copayment) in an amount to be determined by the probation officer, based on the defendant's ability to pay.

15)  The defendant shall submit to an evaluation for substance abuse or dependency treatment as directed by the probation officer, and if deemed necessary by the probation officer, the defendant shall participate in a program approved by the probation officer for treatment of narcotic addiction or drug or alcohol dependency which may include testing and examination to determine if the defendant has reverted to the use of drugs or alcohol.  The defendant may be required to contribute to the cost of the services rendered (copayment) in an amount to be determined by the probation officer, based upon the defendant's ability to pay.

16)  The defendant shall submit to an evaluation for mental health counseling as directed by the probation officer, and if deemed necessary by the probation officer, the defendant shall participate in a mental health program approved by the probation officer.  The defendant may be required to contribute to the cost of the services rendered (copayment) in an amount to be determined by the probation officer, based upon the defendant's ability to pay.

17)  If the defendant is excluded, deported, or removed upon release from imprisonment, the term of supervised release shall be a non-reporting term of supervised release.  The defendant shall not illegally re-enter the United States.  If the defendant lawfully re-enters the United States during the term of supervised release, the defendant shall immediately report in person to the nearest U.S. Probation Office.

18)  If the judgment imposes other criminal monetary penalties, it is a condition of supervision that the defendant pay such penalties in accordance with the Schedule of Payments sheet of the judgment.

19)  If the judgment imposes a fine, special assessment, restitution, or other criminal monetary penalties, it is a condition of supervision that the defendant shall provide the probation officer access to any requested financial information.

20)  If the judgment imposes a fine, special assessment, restitution, or other criminal monetary penalties, it is a condition of supervision that the defendant shall not incur any new credit charges or open additional lines of credit without the approval of the probation officer unless the defendant is in compliance with the payment schedule.

The Court further adopts such of the following special conditions applied to the supervised person by the judge at the time of sentencing:

1)  **COMMUNITY CONFINEMENT:** The defendant shall reside in a Community Corrections Center for a period of _____ months to commence on _____.  Further, once employed, the defendant shall pay 25% of his/her weekly gross income for his/her subsistence as long as that amount does not exceed the daily contract rate.

2)  **HOME DETENTION:** The defendant shall participate in the Home Confinement Program for a period of _____ days/months.  During this time the defendant shall remain at his/her place of residence except for employment and other activities approved in advance by the probation officer.  The defendant shall maintain a telephone at his/her place of residence without "call forwarding," a "modem," "caller ID," "call waiting," or portable cordless telephones for the above period.  At the direction of the probation officer, the defendant shall wear an electronic monitoring device and follow electronic monitoring procedures specified by the probation officer.  The court further orders that the defendant shall pay for the costs of Home Confinement, as directed by the probation officer.

3)  **COMMUNITY SERVICE:** The defendant shall perform ____ hours of community service work without pay, at a location approved by the probation officer, at a minimum rate of four hours per week, to be completed during the first _____ months of supervision.

AO 245 B (Rev. 06/05)(W.D.TX.) - CMP

Judgment--Page 7

Defendant: CHARLES WAYNE CARMONY,  Aliases: Reaper Carmony (CB name); Charles Car money (denies using)
Case Number:  SA-08-CR-036(1)FB

### CRIMINAL MONETARY PENALTIES/ SCHEDULE

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth.  Unless the Court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  Criminal Monetary Penalties, except those payments made through Federal Bureau of Prisons' Inmate Financial Responsibility Program shall be paid through the Clerk, United States District Court,  655 East Durango Boulevard, Room G-65, San Antonio, Texas 78206.
The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

|        | Assessment | Fine | Restitution |
|--------|-----------|------|-------------|
| TOTAL: | $100.00   | $0   | $0          |

### Special Assessment

It is ordered that the defendant shall pay to the United States a special assessment of $100.00.  Payment of this sum shall begin immediately.

### Fine

The fine is waived because of the defendant's inability to pay.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column above.  However, pursuant to 18 U.S.C. § 3664(i), all non-federal victims must be paid before the United States is paid.

If the fine is not paid, the court may sentence the defendant to any sentence which might have been originally imposed. See 18 U.S.C. §3614.

The defendant shall pay interest on any fine or restitution of more than $2,500.00, unless the fine or restitution is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. §3612(f).  All payment options may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. §3612(g).

Payments shall be applied in the following order: (1)  assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) community restitution, (6) fine interest,  (7) penalties, and (8) costs, including cost of prosecution and court costs.

Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

2009 FEB 11  PM 2: 54

UNITED STATES OF AMERICA

V.                                                          NO.  SA 08-CR-036 FB

CHARLES WAYNE CARMONY

## NOTICE OF APPEAL

Defendant Charles Wayne Carmony gives notice that he appeals to the Fifth Circuit Court

of Appeals from the final judgment of conviction and sentence entered by the United States

District Court in this case.  Sentence was pronounced on January 30, 2009 and Judgment was

entered on February 10, 2009.

DATED this 11th day of February, 2009.

Respectfully submitted.

HENRY J. BEMPORAD
Federal Public Defender

*R Clark Adams*

R. CLARK ADAMS
Assistant Federal Public Defender
Western District of Texas
727 E. Durango Blvd., B-207
San Antonio, Texas  78206-1278
(210) 472–6700
Fax: (210) 472-4454
State Bar Number: 00877650
*Attorney for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | SA-08-CR-036 |
| | ) | |
| v. | ) | Resentencing |
| | ) | |
| CHARLES WAYNE CARMONY | ) | March 13, 2009 |

BEFORE THE HONORABLE FRED BIERY
United States District Judge
In San Antonio, Texas

FOR THE GOVERNMENT:            MS. TRACY THOMPSON BRAUN
                              United States Attorney's Office
                              Criminal Section
                              601 NW Loop 410 - Suite 600
                              San Antonio, TX 78216
                              (210) 384-7150
                              210/384-7135 (fax)
                              tracy.braun@usdoj.gov


FOR THE DEFENDANT:             MR. R. CLARK ADAMS
                              Federal Public Defenders Office
                              Federal Office Building
                              727 East Durango Blvd.
                              Suite B-207
                              San Antonio, Texas 78206-1278
                              (210) 472-6700 Tel
                              (210) 472-4554 Fax


COURT REPORTER:               MR. DENVER B. RODEN, RMR
                              United States Court Reporter
                              655 E. Durango Blvd.
                              San Antonio, Texas 78206
                              (210) 271-0660


   The above styled and numbered cause was reported by
computerized stenography and produced by computer.



1    (March 13, 2009.)

2         THE COURT:  All right.  We're here now on Mr. Carmony

3    in 08-CR-36.  Mr. Carmony, come on over there to counsel table

4    there and have a seat.  And announcements for the United

5    States.

6         MS. BRAUN:  Tracy Braun on behalf of the United

7    States, Your Honor.

8         THE COURT:  And would you like to introduce the folks

9    who are here perhaps interested in this case and particularly

10   the young ones that might want to draw me a picture like your

11   daughter did and --

12        MS. BRAUN:  Yes, Your Honor.  Special Agent Larry

13   Miller -- I mean Larry Baker is here -- I'm sorry -- with his

14   three children, who are who Spring Break today.

15        THE COURT:  Good.

16        MS. BRAUN:  And I encouraged them to come and find

17   out what happens in court.

18        THE COURT:  Okay.

19        MS. BRAUN:  And you know Ms. Snow who's here,

20   Ms. Barth, and Ms. Barth's significant other.

21        THE COURT:  And Ms. Webber's here.  She's a student

22   at Reagan High School.  Her dad and I play ball against each

23   other.  She was the power forward on the Reagan High School

24   basketball team and she got shown around by one of deputy

25   Bozeman's colleagues this morning.  I think she might want to

1   be a deputy U.S. Marshal. Deputy Bozeman plays with us in our

2   FBI U.S. Marshal pick-up games. He just got back not too long

3   ago from guarding Mr. New saw we for three weeks during

4   Mr. New as a we's trial.

5          Let's see, there was something else I was going to

6   mention. At any rate, it will come back to me, so --

7          All right. And announcements and introductions by

8   Mr. Adams, I presume for the defense?

9          MR. ADAMS: Clark Adams representing the defendant.

10  He is also present before the Court. Also sitting at counsel

11  table is Laura Spindler, one of the attorneys from our office.

12         THE COURT: All right. And, of course, welcome other

13  public defenders who are here, so --

14         At any rate, so that we can address what I think is

15  the legal issue in this case, is there any objection --

16         Oh, I know what I was going to tell these young ones,

17  that's what it was. It has nothing to do with the law --

18  Well, it does. When I was about this young man's age on the

19  left there, my father took me to the -- where the FBI office

20  used to be in the old courthouse and he had just gotten sworn

21  in as a new federal criminal defense lawyer, tried his first

22  case two weeks after Judge Rice had appointed him or licensed

23  him, and when you go out on the right you will see Judge

24  Rice's picture facing out here. He was the only judge for the

25  entire Western District of Texas back then. We now have 13

1  judgeship spots. And so I -- It was in the summertime, so I

2  got to sit through that trial twice, because it was two

3  mistrials, and this guy was federally indicted for about that

4  much heroin which now days the U.S. Attorney wouldn't even

5  take. And the jury hung up twice and the Government decided

6  not to prosecute him any further.

7  But, anyway, I was six or seven then, and twenty-four

8  years later the same fellow, Dionesio Ybarra ended up in front

9  of me on a marijuana case in county court and -- because I

10  remember the name, of course, because it made an impression on

11  me. And his rap sheet showed that he had had a federal heroin

12  case in 1954 and I asked him if he went to trial. He said,

13  Yeah. Twice. I said do you remember a little boy who sat

14  through those trials? He said, Yeah. Because there wasn't

15  anybody else there in the audience. I said, Well, that was

16  me.

17  So -- so, I ended up sending him back to jail for a

18  misdemeanor marijuana and he was just an old addict and

19  couldn't stay away from the stuff, so --

20  All right. Ms. Braun, let me ask you a couple of

21  questions first. I notice in your sentence -- in your

22  Government's Response Regarding Resentencing that you ask for

23  and attached a proposed order to seal this. Why -- what kind

24  of -- It's legal issues. What kind of sensitive information

25  would require the sealing of this, particularly in light of

1    it's kind of a high profile case that the public might be

2    interested in?

3            MS. BRAUN:  I agree, Your Honor.  However,

4    Mr. Adams's motion or his original filing was sealed and so

5    that's why we moved to seal it.  There is no sensitive

6    information in it.  But given that Mr. Adams filed his under

7    seal --

8            THE COURT:  Okay.

9            MS. BRAUN:  -- I took that to be there was a reason

10   he wanted it under seal and so we filed ours under seal.

11           THE COURT:  All right.  Mr. Adams, why would we need

12   to seal it if we are looking basically -- it appears legal

13   arguments.

14           MR. ADAMS:  Your Honor, I did not want to trigger

15   somebody going back finding victim's names, finding family's

16   names, things like that.  I don't want to be the cause of any

17   of that.

18           THE COURT:  Okay.  Well, I mean -- In the day of the

19   Internet, I suppose if somebody had the motivation to want to

20   do that, they could do it anyway, so -- I think -- and because

21   this could go up on appeal, I think these matters will be

22   filed but, Ms. Vela, have the clerk's office file them as open

23   records and not sealed, so -- or they already have been filed.

24   So, the motions or requests for sealing will be denied.

25           Ms. Braun, -- And, by the way, to the extent there

1   are appeals, Mr. Roden is sitting in for Mr. Poage and,

2   therefore, you all will need to deal with two different court

3   reporters if either side should appeal.

4          Ms. Braun, we had a lengthy hearing on this matter

5   originally.  Is there any legal reason from the United

6   States's standpoint why we would have to start off from the

7   very beginning in terms of victim impact or can -- may the

8   Court or "can" the Court is the right word -- take judicial

9   notice by reference of what the Court has heard already?

10          MS. BRAUN:  Yes, Your Honor.  I don't believe we have

11   to start all over and I would ask the Court to take into

12   consideration the entire sentencing hearing that we had on

13   January 30th and everything that was said during that hearing.

14          THE COURT:  Okay.  Mr. Adams, and certainly

15   Mr. Carmony will get another opportunity to allocute, if he

16   chooses to, or on the part of this, I guess, if he wants to

17   testify.  Other than that, is there any reason why we would

18   need to go back and redo and restart the entire sentencing

19   proceeding, particularly in terms of the Victim Impact

20   Statement?

21          MR. ADAMS:  Not with regard to the victim impact,

22   Your Honor.  However, what we do have before the Court is a

23   Santobello motion urging the Court to allow Mr. Carmony to

24   withdraw his guilty plea or in the alternative a sentence of

25   25 years.

1      THE COURT:  Okay.  All right.  Well, we'll -- we'll

2  proceed on that and then based on that inquiry, the Court will

3  take judicial notice of all that took place in the prior

4  sentencing hearing, particularly the Victim Impact Statement.

5      So, on your -- Let's take up first the -- on page

6  80 -- I'm sorry, page 7 of the Government's response -- Well,

7  I made my -- All right.  I'm looking at the first sentence,

8  Ms. Braun, under -- or second sentence under the major heading

9  resentencing on page 7.  And it appears the Government is

10  agreeing that the statutory range of punishment should be

11  corrected and then the following phrase.  So, what does the

12  Government believe the statutory range should be?

13      MS. BRAUN:  The Government believes the statutory

14  range should be a mandatory minimum sentence of 35 years

15  imprisonment and a maximum of life imprisonment.

16      THE COURT:  All right.  And yet the plea agreement --

17  and that's based on this -- one of his prior convictions, and

18  we'll talk about that, because I know there is disagreement on

19  that.

20      But the plea agreement referred to a 25 year minimum

21  mandatory.

22      MS. BRAUN:  Correct.  At the time Mr. Carmony pled

23  guilty, we knew he had two prior convictions.  One was for the

24  rape of a 14 year old girl.  And both parties I believe were

25  of the understanding that that would count as a prior

1  conviction related to the sexual exploitation of a child.

2       That conviction alone increased his mandatory minimum

3  sentence from 15 to 25 years.  So, the -- If you produce child

4  pornography, you are looking at a mandatory minimum 15 years,

5  maximum 30, unless you have a prior crime against a child and

6  then if you have one prior conviction for a crime against a

7  child, your statutory range jumps from 15 to 30 to 25 to 50.

8  Everybody was under the understanding that his rape conviction

9  would count and so the absolute minimum Mr. Carmony was

10 looking at being sentenced to under the plea agreement was 25

11 years.

12       THE COURT:  25 to what maximum?

13       MS. BRAUN:  50.

14       THE COURT:  Okay.

15       MS. BRAUN:  Except we knew he had a second prior

16 conviction, the attempted unlawful transaction with a minor.

17       I think there was confusion at least on -- or

18 uncertainty on the part of the Government as to whether or not

19 that would qualify as a second conviction related to the

20 sexual abuse of a minor under 2251(e), which is what we're

21 arguing today, and whether or not either or both of those

22 convictions would count under 3559(e).

23       If you recall the Presentence Investigation Report

24 originally came out and said Mr. Carmony faces a mandatory

25 life sentence because of his priors.  And so there was some

1  uncertainty at the time Mr. Carmony pled guilty about what his

2  sentence would be.  Therefore, the range was determined to be

3  at the -- his best case scenario is going to be at least 25.

4  Worst case scenario is going to be life, and you will get a

5  range -- you will get a sentence within that range.

6        Further investigation, when we looked at the Harland

7  District Court records from Kentucky, it appears the

8  unlawful -- attempted unlawful transaction with a minor

9  conviction does count under 2251(e) as a prior conviction

10 relating to the sexual abuse or sexual exploitation of a

11 child.

12        THE COURT:  And that's what you're referring to at

13 the bottom of page 7 and thereafter?

14        MS. BRAUN:  Correct.  Because under -- Mr. Carmony

15 was originally charged with attempted unlawful transaction

16 with a minor in the first-degree, which is engaging in illicit

17 sexual behavior.  They allowed him to plead guilty to a lesser

18 offense which is the attempted unlawful transaction with a

19 minor second degree.  In order to be convicted of that

20 offense, you have to knowingly induce a fist or cause a minor

21 to either engage in illegal controlled substances activity

22 involving marijuana, which we don't have, engage in illegal

23 gambling activity, which we don't have, or engage in any other

24 criminal activity constituting a felony.  That we have.  The

25 solicitation of a minor for sex.  So, if -- In order to be

1  convicted of that crime, the jury would have to be advised of

2  the elements of that crime.  So, any other criminal activity

3  constituting a felony would have to be explained to the jury

4  or the fact finder in order for a conviction to occur and so,

5  therefore, even under a categorical approach, it is a crime

6  related to the sexual exploitation of a child because United

7  States v Hubbard says we should take a very broad view of what

8  constitutes a conviction related to the sexual exploitation of

9  children.

10        THE COURT:  And that's referred to on page 8 as a

11 Fifth Circuit case and in the parenthetical it refers to --

12 what was used there was a prior conviction in New York for

13 attempted possession of sexual performance by a child used to

14 enhance the sentence was not error.

15        MS. BRAUN:  Correct.

16        THE COURT:  So, does that -- Is that very close if

17 not on point with what the Government is arguing here?

18        MS. BRAUN:  Yes.

19        THE COURT:  Okay.  All right.  Let me -- Before I

20 hear from Mr. Adams, I want to make sure I'm real clear.  At

21 some point in your presentation -- of course, we're talking

22 about 25 year minimum or 35 year minimum -- but in response to

23 the Court's question about the statutory range or maximum, you

24 used the figure 50 years as opposed to life.

25        MS. BRAUN:  Well, if the Court finds that this --

1  that his second conviction, the unlawful transaction with a

2  minor, does not count under 2251(e), if you find it's not a

3  prior conviction related to the sexual exploitation of

4  children, then we're left with one prior conviction and the

5  statutory range has to be 25 to 50 years.

6          THE COURT:  Okay.  All right.  But in the plea

7  agreement, I gather from the written presentation here by the

8  Government, that, at least the Government argues, that it was

9  clearly set forth that life in prison was an option.

10          MS. BRAUN:  Absolutely.

11          THE COURT:  All right.  We'll talk about that in a

12  minute.  All right.  Mr. Adams.

13          MR. ADAMS:  Yes, sir.

14          THE COURT:  Mr. Adams, so -- under your best case

15  scenario, if this other second conviction were not counted, do

16  you believe the statutory maximum would be 25 to 50?

17          MR. ADAMS:  Correct.

18          THE COURT:  Okay.  So, that's what the parameters

19  are.  That's what we're talking about.

20          MR. ADAMS:  First of all, we have to determine has

21  there been a violation of the plea agreement by the Government

22  and because the Government to this very moment is arguing a

23  minimum in excess of that drafted by them and presented to the

24  Court and signed by the Government, that's a violation of the

25  plea agreement.  And then it comes to Santobello the right of

1  the defendant to seek either withdrawal of the guilty plea and
2  then have the case handled by a different judge or specific
3  performance, and right now we are tending towards withdrawal
4  of the guilty plea and then having it handled by a different
5  judge.

6       THE COURT:  And do you agree that the plea agreement
7  spoke separate and apart from the 25 year number, but it spoke
8  life in prison as an option?

9       MR. ADAMS:  It was in there, that is correct.

10      THE COURT:  Okay.  All right.

11      MR. ADAMS:  And I was -- and I -- This is a case in
12  which legally you have not been well served by either side.
13  And -- I have to stand up and admit that.

14      THE COURT:  Well, do I get --

15      MR. ADAMS:  But I'm going to fix it and if you follow
16  what I have to say, you'll be right.

17      THE COURT:  Okay.  All right.  But I don't get any
18  monetary reward for you and Ms. Braun making a mess?  I guess
19  not.

20      MR. ADAMS:  No.

21      THE COURT:  All right.  Well, that's fine.  I'll just
22  look for my regular paycheck.  All right.  Go ahead,
23  Mr. Adams.  Tell me -- tell me how we can get this back on
24  track from the defense standpoint.

25      MR. ADAMS:  Well, from the defense standpoint, I

1  think the only way we can get it back on track would be a

2  sentence of 25 years because under the Sentencing Guidelines

3  as properly calculated, and what that -- this is an issue that

4  we are going to have to go into and make a record on today as

5  well, my objections to the Presentence Report.  Properly

6  calculated guidelines are either 200 and -- -- either 188 to

7  235 months, which is 15 years to almost 20 years, or 235

8  months to 293 months, which is a bunch, almost up to 25 years.

9  But in either event, because the guidelines are lower than the

10  mandatory minimum, the mandatory minimum becomes the lowest

11  point available to the Court.  But if you -- It used to be

12  said that the guidelines shrinked to a point, that is to say

13  the 300 months.

14          THE COURT:  Which would be 300.

15          MR. ADAMS:  Right.

16          THE COURT:  Okay.  All right.  And you believe the

17  maximum to be 50 times 12, whatever that is.  50 years times

18  12 months.

19          MR. ADAMS:  Oh, for months, yes.  Yes.

20          THE COURT:  It would be -- -- Well, 600.

21          MR. ADAMS:  600.

22          THE COURT:  So, all right.  And so do you -- your

23  choice, Mr. Adams.  You want to address your objections first

24  or do you want to have Mr. Carmony or whatever presentation

25  you have on withdrawal of his plea?

1        MR. ADAMS:  Well, Your Honor, given that Mr. Carmony

2   pled guilty thinking that he was looking at a mandatory

3   minimum of 25, we have a violation of the plea agreement.

4   Even without that, due process requires that you allow him to

5   withdraw his plea, because it was not a knowing plea in the

6   sense of -- he walked in here with a piece of paper and an

7   admonition from the Court and statements from myself and a

8   statement from the Government that he was looking at a

9   mandatory minimum of 25.  Had he known that he was looking at

10  a mandatory minimum 35, I don't know whether he would have had

11  a trial or not.  I don't know what it would have done because

12  that was not discussed.

13        And going over the guidelines with Mr. Carmony, I am

14  telling him, Look, these are the reasonable guidelines that

15  you're looking at.  They are going to come out to a little bit

16  less than 25 years, but because of your prior conviction,

17  which qualifies under the first prong of the sentencing

18  statute found within 2551, you're looking at 25 years.  So,

19  the guidelines are going to put you right at 25 years.  And

20  that's what he walked in knowing and that's what he walked in

21  having been promised by the Government.  That's what he walked

22  in and you admonished him on that.

23        THE COURT:  Well, was there also discussion since --

24  and I certainly don't want you to say anything that you

25  shouldn't say, but you've already talked about what the

1  discussions were between you and Mr. Carmony.  Were there also

2  discussions about life orally as opposed to what was in the

3  written plea agreement?

4      MR. ADAMS:  I told him that the -- Well, no.  I said

5  that although the maximum could be all the way up to life,

6  this is where we are.  This is your mandatory minimum is 25,

7  these are your guidelines.

8      THE COURT:  But I'm assuming in the written plea

9  there was also the standard language and -- regardless of

10  what -- and you went over the written plea with him, that the

11  Court was not bound to the guidelines.

12      MR. ADAMS:  That is true.

13      THE COURT:  Okay.

14      MR. ADAMS:  But what Mr. Carmony has heard from the

15  Government and Court is different from what Mr. Carmony heard

16  from the Government on paper with a signature in black and

17  white, mandatory minimum 25 and the Government stands

18  thereafter and says 35.  That's a violation of the plea

19  agreement.  And then the ball goes back into Mr. Carmony's

20  Court as to what he elects to do as a remedy.

21      THE COURT:  Okay.  Well, then do you wish to put him

22  on on the -- on the motion to withdraw?

23      MR. ADAMS:  We -- Actually, I don't think -- once

24  it's laid out that there's a violation, I don't think you need

25  any testimony.

1    THE COURT:   Okay.

2    MR. ADAMS:   It doesn't matter -- as in Santobello

3    itself, the Court put on the record, yes, there's been a

4    violation of the plea agreement, but it had absolutely no

5    affect on it, and, in fact, that was a similar case.   The

6    Government had recommended or requested a certain sentence in

7    the plea agreement, came back and asked for more in the

8    sentencing.   The judge said I'm going to give him X amount of

9    years and the Government's position here has nothing to do

10   with my decision.   The Supreme Court said that just doesn't

11   matter.   Once you establish the violation, then there has to

12   be a remand.

13       THE COURT:   And was Santobello involving a mandatory

14   minimum -- Well, in other words, was there confusion in

15   Santobello about what the mandatory minimum was from --

16   whether it was 25 or 35 or was it -- what were the facts, and

17   was it preguideline?

18       MR. ADAMS:   It was definitely preguideline.

19       THE COURT:   I think I remember that from law school.

20       MR. ADAMS:   It was also premandatory.   In those days

21   there weren't any mandatories in the federal system.   It was

22   just recommendation to sentence alone.

23       THE COURT:   All right.   So, you're saying that it

24   doesn't matter what -- the Fifth Circuit case that Ms. Braun

25   cited, you first have to get past Santobello.

1    MR. ADAMS:  Correct.

2    THE COURT:  Okay.  Well, that -- that makes sense.

3    All right.  Well, then in that case I'm looking now at page 5

4    of the Government's response which sets forth the elements of

5    ruling on the motion to withdrawal of the plea.  And, number

6    one, whether the defendant has asserted his innocence.  How

7    does the defense meet that element?

8    MR. ADAMS:  We've never asserted our innocence.

9    THE COURT:  Okay.  Number two, whether withdrawal

10   would prejudice the Government.  Ms. Braun, do you want to

11   speak to that?

12   MS. BRAUN:  Your Honor, I believe there would be

13   prejudice to the Government in that the length of time from

14   which the crimes have occurred until now, granted we have

15   kept -- we still have the evidence, the Government would be

16   able to go forward, but the crime is now years old.

17   Mr. Carmony entered his plea in July of 2008 and at that time

18   everybody was notified that this case would not be going to

19   trial.

20   THE COURT:  Does the withdrawal -- the prejudice to

21   the Government include impact on the victim?

22   MS. BRAUN:  That would be the prejudice -- Well,

23   that's part of the prejudice.  My recollection fades over

24   time.  Unfortunately, I think the victim of this offense, her

25   recollection of these crimes probably won't fade, but I think

1    the Court should take into consideration the effect on the

2    victim and the victim's family.

3          THE COURT:  Okay.  Mr. Adams, do you have any case

4    law that says that second element does not include impact on

5    the victim of having to go to trial as opposed to certainly an

6    impact even if there's a plea of guilty, but not a

7    significant -- do you have any law, cases that speak to that

8    element?

9          MR. ADAMS:  I'm not prepared with them.  There may be

10   out there.  I don't know.  But I will tell the Court this:

11   Once you get into the Santobello violation, you are outside

12   the rules.  You are no longer constrained by the Federal Rules

13   of Criminal Procedure.  What you have is a different and -- a

14   different matter and a constitutional violation, a due process

15   violation.

16         THE COURT:  So, you are saying that Santobello would

17   not require these elements to be met.

18         MR. ADAMS:  No.

19         THE COURT:  It's just, in effect, a per se violation?

20         MR. ADAMS:  I think so.

21         THE COURT:  Ms. Braun, what do you think about that?

22         MS. BRAUN:  Your Honor, I think it's somewhat

23   ridiculous to argue that the Government breached the plea

24   agreement.  Mr. Carmony was told when he came in to plead

25   guilty, he has never said he was innocent, he has always

1    wanted to plead guilty. What we have in the plea agreement is

2    the defendant understands that the sentence imposed in this

3    case will be determined by the Court. The defendant

4    stipulates that no person has specifically promised what

5    sentence he will receive.

6         There is nowhere in the plea agreement where the

7    guideline calculations are set forth. In fact, numerous times

8    in the plea agreement it tells the defendant that the sentence

9    he -- that will be imposed will be determined by you. The

10   guideline calculation will be determined by the Court.

11        That if Mr. Adams told him that based on the

12   guideline range he would be looking at 25 years, then shame on

13   him. I mean, I guess that's a great argument for ineffective

14   assistance of counsel, but it has absolutely nothing to do

15   with whether the Government breached the plea agreement. The

16   plea agreement says the defendant acknowledges that he has

17   discussed this rage of punishment and penalties with his

18   attorney, still wants the plead guilty. Including, you may

19   face the rest of your life in prison.

20        The plea agreement goes on to say the defendant is

21   aware that any estimate of the sentencing range that he may

22   receive from his counsel, the Government, or the Probation

23   Office is not a promise, did not induce his guilty plea, or

24   this waiver, and does not bind the Government, the Probation

25   Office, or the Court.

1      The defendant further understands it's in the

2  complete discretion of the Court as to the sentence to be

3  imposed on the defendant.  He will not be permitted to

4  withdraw his agreement to plead guilty because of the Court's

5  decision in imposing sentence.

6      So, I guess he can testify if I knew the mandatory

7  minimum was 35 instead of 25 I wouldn't have plead guilty.  I

8  think that's insincere.  He's always wanted to plead guilty,

9  he still doesn't assert his innocence, and he knew at the time

10  he pled it could be anywhere from 25 to life.  Did he have his

11  hopes set on 25?  Absolutely.  Did counsel tell him?  Most

12  likely in his experience and based on his calculation of the

13  guideline range it may be 25 years, I -- I guess that's what

14  Mr. Adams said today.  But nothing in his signed plea

15  agreement indicates that.  What's indicated in the signed plea

16  agreement is that he knows he's not going to get less than 25,

17  he may face up to life, and he still wanted to go forward.

18  And so to say that the Government breached the plea agreement

19  -- What the plea agreement says is -- what we determine is not

20  dispositive with the Court.  The Court's going to determine

21  that, and he still can't withdraw his plea of guilty.

22      THE COURT:  Was there, Mr. Adams, a -- Yeah,

23  Santobello was while I was in law school.  I see now.  Was

24  there a written plea agreement in Santobello?  I guess there

25  was.

1    MR. ADAMS:  I frankly don't recall.

2    THE COURT:  But the quote that you have here in your

3 pleading, Mr. Adams, it says that, quote, A plea rests in any

4 significant degree on a promise or agreement of the prosecutor

5 so that it can be said to be part of the inducement or

6 consideration such promise must be fulfilled.

7    MR. ADAMS:  Correct.

8    THE COURT:  That's what you're really keying in on in

9 Santobello, right?

10   MR. ADAMS:  Right.

11   THE COURT:  So, taking the plea agreement as the

12 portions Ms. Braun just recited, the operative adjective seems

13 to be significant, does it not?  And so we're talking -- to

14 the extent we're talking about whether the 2 in the plea

15 agreement should have been a 3.  In other words 35 instead of

16 25.

17   MR. ADAMS:  Correct.

18   THE COURT:  Okay.  So, the question I think then

19 under Santobello would be whether it is -- it was a

20 significant part of Mr. Carmony's process to -- and decision

21 to plead guilty or sign the plea agreement, taking the whole

22 thing as -- as a whole in context whether the difference

23 between the 2 and the 3 was a significant promise.

24   MR. ADAMS:  I believe it to be and, in addition, Your

25 Honor, what we had at sentencing was the Government standing

1  up and arguing that, no, that part of the negotiated plea

2  agreement is not valid.

3      THE COURT:  Okay.  Well, and another question that

4  I've alluded to somewhat is do we look at the plea agreement

5  in its totality as opposed to this particular narrow legal

6  argument about what the minimum mandatory is.

7      MR. ADAMS:  No, you have -- You have to start with a

8  mandatory minimum.  That's the starting point.

9      THE COURT:  Right.

10      MR. ADAMS:  That's the starting point.  That's the

11  major point.  That's the point at which the Government and I

12  said that's the least he can get and from there on, to come in

13  later and say, Oh, king's X, it was 35, it wasn't 25, is a

14  breach.  I mean, just clearly a breach.

15      THE COURT:  Well, Ms. Braun, obviously, the record

16  reflects what it reflects in terms of the Government taking

17  the position that the Government took at the first sentencing

18  of, no, it shouldn't be 25, it should be 35.  So, then I think

19  the issue shifts to the Government to say clearly that

20  happened and does it make more sense to step back and redo

21  this either by trial or by a new plea agreement where

22  everybody does, in fact, come to the same meeting of the minds

23  in terms of what the number is --

24      MR. ADAMS:  If I may, Your Honor, I might add that

25  there really probably was not a meeting of the minds.  It was

1    more like a meeting of the mindless in this case.  We -- we

2    just weren't certain what was going on, probably should not

3    have signed it under any circumstances, any of us; but that's

4    what happened.  It was signed.

5         THE COURT:  Or, in the alternative, if -- is to

6    reaffirm the plea agreement in the first sentencing and then

7    let the appellate chips fall where they may.  Those are the

8    two choices.

9         MS. BRAUN:  I vote for door number two, and this is

10   why.

11        THE COURT:  For my number two.

12        MS. BRAUN:  Your number two.

13        THE COURT:  Of going back and --

14        MS. BRAUN:  Of letting the chips fall where they may.

15        THE COURT:  Oh, I'm sorry.  Go ahead.

16        MS. BRAUN:  I think it's appropriate to award him

17   for -- and allow him to withdraw his guilty plea when there

18   was absolutely no concern about it or issue with it, even when

19   the Presentence Investigation Report comes out and puts in

20   there in paragraph 93, that probation found the statutory

21   range to be 35 years to life.  Mr. Carmony didn't then say,

22   Oh, my gosh, we didn't have a meeting of the mind.  I want my

23   plea back right now.  He didn't say that.  He kept going

24   forward.  It was only when this Court imposed a life sentence

25   that Mr. Carmony thought, Oh, my gosh, how do I get out of

1   this.

2        THE COURT:  By the way, on that point, I wanted to

3   ask you, you raised that point in your written pleading, if I

4   can find my note here, and that there were no objections to

5   that Presentence Report on that issue.  Does that constitute a

6   waiver?

7        MS. BRAUN:  I believe it constitutes a waiver, but

8   more importantly, it puts into perspective what's going on

9   here, which is Mr. Carmony feels bad you imposed a life

10  sentence and he wants to do something about it whereas before

11  the Presentence Report says he is looking at 35 to life, there

12  was no outcry.  Even at the time of the sentencing, he was

13  hoping for a 25 year sentence.

14       I don't think that whether the mandatory minimum was

15  25 or 35 allowed his plea to rest on a significant degree what

16  the mandatory minimum was.  I disagree with Mr. Adams that we

17  have to start with the mandatory minimum.

18       Mr. Carmony said, I did this, I want to plead guilty,

19  and I know that I could be facing up to life in prison.

20       The plea agreement also allows for the Government to

21  advocate in support of the Court's judgment that we don't --

22  what -- Here's what happened:  The PSI came out and said it's

23  mandatory life.  We got together and looked at the prior

24  convictions and we all decided mandatory life probably

25  doesn't -- does not apply.  But the 35 year mandatory

1 minimum/life maximum, does apply. And so given that there is

2 a legal basis for that statutory range, the Government, I

3 believe, is obligated to argue that to the Court, that under

4 the law, because of what his prior convictions are, you cannot

5 sentence him below 35 years and have you to sentence him

6 between 35 and life. I think it's a separate issue then

7 because it's 35 I want my plea back, instead of 25 because I

8 wouldn't have plead. I think that's just incredible.

9 　　　　　MR. ADAMS:　If I may, Your Honor.

10 　　　　　THE COURT:　Okay.

11 　　　　　MR. ADAMS:　Which then takes us to the next point.

12 You will recall at the sentencing that I was arguing for and

13 in favor of the 25 year mandatory minimum. Now -- and you

14 ruled, in fact, your finding for a mandatory minimum was 25.

15 　　　　　Thereafter, I can't waive any legal sentence. Your

16 sentence of life, based upon your ruling of a mandatory

17 minimum 25, become an illegal sentence because the maximum was

18 50.

19 　　　　　THE COURT:　Under -- under your analysis that second

20 conviction didn't bump it to life?

21 　　　　　MR. ADAMS:　That plus your ruling that the mandatory

22 minimum was 25. Once you said the mandatory minimum was 25,

23 the maximum became 50.

24 　　　　　THE COURT:　Wait a minute. Ms. Braun, I thought your

25 argument was the case that you cited that even if the

1  mandatory minimum was 25, the maximum could still be life

2  under that.

3           MS. BRAUN:  No.

4           THE COURT:  Huh?

5           MS. BRAUN:  No.  If -- The Court has to determine

6  whether his second conviction counts as a prior conviction

7  related to the sexual abuse of a child.  If it does, his

8  statutory range is 35 to life.  If it doesn't count, it's 25

9  to 50.

10          THE COURT:  Okay.  But did I -- Separate and apart

11 from the numbers that we were discussing, did I make a ruling

12 that the second conviction did not count?

13          MS. BRAUN:  No.

14          THE COURT:  Mr. Adams?

15          MR. ADAMS:  Your ruling was, I'm going to find that

16 the mandatory minimum is 25 and you said some other things,

17 most of which I did not like, and then you said I'm going to

18 sentence life.  That became -- when you said that, that

19 became -- that was an illegal sentence upon your finding 25

20 was the mandatory minimum and once you said I'm finding that

21 the mandatory minimum is 25, you ruled that his other

22 conviction didn't count.  That was the -- that was the effect

23 of the ruling.  You didn't say it, but that was the effect.

24          MS. BRAUN:  I disagree.  I don't think you ever ruled

25 whether the second conviction counted because if it didn't

1    count, then he was limited to 50 years and you said -- you

2    determined the guideline range to be 25 years to life.  It

3    doesn't -- tie doesn't go to the runner automatically, so you

4    didn't rule.  You imposed an incorrect guideline range as 25

5    to life.  Had you said I find the guideline range to be 25 to

6    50 years, then you don't have to specifically articulate that

7    the second conviction doesn't count, but that's what would be

8    clear.  But you didn't.  You said 25 to life and that's why

9    the Government responded that I believe the sentence is

10   correct but the guideline -- the statutory range needs to be

11   corrected.

12        THE COURT:  And -- Okay.  And so I now am looking at

13   the Court's judgment so -- which says the Court finds the

14   proper guideline range to be 25 years to life.  And so what

15   the Government is suggesting is that the judgment needs to be

16   amended to 35 years.

17        MS. BRAUN:  Well, correct.  The judgment needs to be

18   amended based on your finding of whether that second

19   conviction counts as a prior conviction related to the sexual

20   abuse of a child.  If it counts, then we're at 35 to life.  If

21   it doesn't count, we're at 25 to 50.

22        THE COURT:  Okay.  Well, then that -- that brings us

23   back to the Fifth Circuit case that you cited out of the

24   New York -- prior New York conviction.

25        MS. BRAUN:  Correct.

1    THE COURT:  Okay.  All right.  And then, Mr. Adams,

2 do you -- You had mentioned earlier you felt like the Court

3 needed to rule on other objections that were not ruled on the

4 first time?

5    MR. ADAMS:  You didn't allow me to make a record as

6 to -- as to how -- how the objections -- my bases for the

7 objections.

8    THE COURT:  Okay.

9    MR. ADAMS:  You simply said they are all overruled.

10    THE COURT:  Okay.  Well, go ahead and make your

11 record.

12    MR. ADAMS:  First of all, with regard to -- the base

13 offense level we do not argue with.  That's paragraph 20.  Nor

14 is 21 argued with.  Nor is 22 argued with.

15    THE COURT:  Here we go.  Go ahead.

16    MR. ADAMS:  All right.  Paragraph 23, Your Honor, I

17 had raised an objection to paragraph 23 that based upon the

18 evidence that I -- the information that I had up until that

19 point, it did not appear that there had been any distribution.

20 There had been some talk in some of the phone conversations

21 that had been intercepted that some photograph of some sort

22 had been seen by a person or other.  But as to the nature of

23 the paragraph, that was not clear.  Thus, a photograph of

24 somebody's face is not a violation or distribution of child

25 pornography.

1     Thereafter, on paragraph 24, because the offense

2  involved material that portrayed suggestive or masochistic

3  conduct or depictions of violence -- Your Honor, that's just

4  not in this case.  There is no photograph depicting

5  masochistic or sadistic conduct nor is there any photograph

6  depicting any violence.  None whatsoever.

7     THE COURT:  All right.  Well, let's take these

8  step-by-step.  Ms. Braun, do you have a response on paragraph

9  23 about whether there was distribution?

10     MS. BRAUN:  Yes, Your Honor.  In fact, I will submit

11  to the Court a Google hello chat from November 14th of 2006 in

12  which the defendant Mr. Carmony is chatting with somebody else

13  and you can see through the chat, it's real time, that he is

14  sending pictures of him engaging in sexual activity with the

15  victim to another individual.

16     THE COURT:  And I believe we went through that and

17  the Court commented on that at the time of the first -- of the

18  sentencing.  I have an independent recollection of seeing

19  those computer chat room things.

20     MS. BRAUN:  He sends the images of him engaging in

21  sexual activity with her and is chatting at the same time

22  bragging about that's him engaging in sexual activity.

23     THE COURT:  All right.  Mr. Adams, any final

24  responsible on paragraph 23 concerning your objection?

25     MR. ADAMS:  No.

1    THE COURT:  Okay.  That objection is overruled.  Then
2  we're talking about paragraph 24.  Go ahead.
3    MR. ADAMS:  24.  That is correct.  There is a
4  reference here about a ring being placed through one of the
5  labia of the young lady.  The act itself is not depicted and
6  that is not in and of itself an act of sadism, masochism, or
7  violence.  I mean, it's no worse than piercing an ear or a
8  nose or a tongue or a belly button.
9    THE COURT:  Which I find abhorrent in this culture,
10  but --
11    MR. ADAMS:  It's better than a tattoo.  You just take
12  it out and the hole heals up.
13    THE COURT:  All right.  Government's response on
14  paragraph 24?  Well, first of all, I gather there's no
15  dispute, Mr. Adams, that it happened?
16    MR. ADAMS:  No.  No dispute at all.
17    THE COURT:  What was the portrayal, if any, that you
18  understand?  Was there a picture?
19    MR. ADAMS:  No it there wasn't.  There was a picture
20  maybe of the ring itself, but --.
21    THE COURT:  After it happened.
22    MR. ADAMS:  Yeah.  After it happened.  It's the same
23  thing as taking a picture and it shows an earring.  Nobody
24  would say there has been violence done upon Ms. Vela because
25  she is sitting here with an earring in her ear or it portrays

1    sadism and masochism.

2        THE COURT:  Okay.  Well, of course we are also

3    dealing here with a minor which is another factor.  But what

4    was the portrayal, if that's the operative word?

5        MS. BRAUN:  There's a few different issues.  Not only

6    did he pierce her vaginal area but we have pictures of that

7    piercing and so there is --

8        THE COURT:  In the act of piercing or after it

9    happened?

10        MS. BRAUN:  After it's pierced.

11        THE COURT:  Okay.

12        MS. BRAUN:  In addition though -- We have those.  In

13    addition to that, in the same Google hello chat session, he is

14    specifically requesting -- Well, first, we have pictures of

15    the piercing.  We also have pictures of an adult man vaginally

16    penetrating a minor female.  We have -- he is -- the defendant

17    is requesting images involving urination.  During the same

18    chat session, he receives images depicting very young girls

19    being urinated upon their faces, into their mouths, onto their

20    chests in extremely degrading behavior.  That, under the

21    guidelines, constitutes sadistic or masochistic behavior.

22        THE COURT:  What about those representations,

23    Mr. Adams, if -- assuming that's accurate, which I have no

24    doubt is, would that rise to the level or not of sadistic or

25    masochistic conduct?

1    MR. ADAMS: Number one, no. Number two, that's not

2 him producing. That's not Mr. Carmony producing anything. He

3 may be in receipt of it.

4    THE COURT: It just says portraying. It involved

5 material portraying --

6    MR. ADAMS: It has to be -- I'm sorry.

7    THE COURT: It doesn't say he has to produce it.

8    MR. ADAMS: Yes, it does, because the offense

9 involved. The offense at question here is production of child

10 pornography. He didn't produce that. He may have received

11 it. He may have asked for it, but he didn't produce it.

12    THE COURT: Is there evidence that he was sending it

13 in addition to receiving it?

14    MS. BRAUN: Well, the picture of his piercing of her

15 private parts, he pierced it, he took a picture of it, he sent

16 it to others, he bragged about what he did. That I think

17 constitutes that enhancement.

18    Moreover, the other images that he received is

19 relevant conduct and I think that enhancement can be given

20 based on relevant conduct.

21    THE COURT: Okay. Final word, Mr. Adams, on that.

22 Any other?

23    MR. ADAMS: That's all, Your Honor.

24    THE COURT: Okay. That objection is overruled.

25    MR. ADAMS: Thereafter, paragraph 25 was objected to.

1    Paragraph 25 says because the defendant was a legal guardian

2    of the minor involved in the offense and was in the custody,

3    care, supervised control of the defendant, the offense level

4    is raised by two levels.

5         Your Honor, the relationship was boy friend and girl

6    friend.

7         THE COURT:  Adult boy, minor girl.

8         MR. ADAMS:  Judge, he --

9         THE COURT:  With permission by the parents for her to

10   be in his care and custody, as I recall.

11        MR. ADAMS:  No.  To be in his company.

12        THE COURT:  Well --

13        MR. ADAMS:  There's a difference.  Ms. Spindler is in

14   my company.  She is not in my custody.

15        THE COURT:  She's not a minor.

16        MR. ADAMS:  The fact that -- The fact that I may be

17   in the room with or may have a minor with me or -- doesn't

18   make me the custodian of that person.

19        THE COURT:  Well, now, wait a minute.  If -- In fact,

20   I have fond memories of Agent Henry dropping his minor

21   children off at my house to spend the night and grow up with

22   my kids and -- or spend a weekend and memories of me dropping

23   my youngest one off at Agent Henry's house to spend the

24   weekend with him and his wife and their kids.

25        MR. ADAMS:  That would make --

1      THE COURT:  -- aren't they -- aren't his children in

2 my care?  They are in my company, too, I agree.

3      MR. ADAMS:  If he specifically put them in your care.

4 But that's not what this is, Your Honor.  This would make

5 every -- this would make this specific character, offense

6 characteristic, apply to every offense that involves a minor

7 and a child.  Every one.

8      THE COURT:  Unfortunately, we don't have too many.

9 But one too many is -- one is too many.

10      MR. ADAMS:  If that analysis would end up with the

11 characteristic swallowing up the entire offense --

12      THE COURT:  Well, let me ask if you, on a drug case

13 that we see from time-to-time where the adult, usually male,

14 although I've seen intervention of females, who will use

15 babies and any minor children as cover in transporting drugs

16 as camouflage, it's just a family outing.  Okay?  And when

17 that happens, I think I recall that there's some bump, isn't

18 there?

19      PROBATION OFFICER:  Yes, Your Honor, there is.

20      THE COURT:  So, in other words, it's the misuse --

21      MR. ADAMS:  But the offense is not abuse of the

22 child.  See?  What this offense characteristic as interpreted

23 by the probation department means that you cannot have a

24 sexual encounter between an adult and a child without

25 involving this offense characteristic.  That theory means that

1  every time there's an adult and a child together in any sort

2  of relationship, automatically the adult becomes the

3  guardian -- the child is in the custody, care, and supervisory

4  control. That's swallowing it up.

5        THE COURT: All right. Let me hear from Ms. Braun.

6        MS. BRAUN: Even though this defendant was four years

7  older, the victim's mom believed him to be 19 and 20 years

8  old, still an adult. She allowed her daughter, who is not

9  even old enough to drive a car, can't go to a lake, can't go

10 to a movie, can't go to the Alamo by herself. Not old enough

11 to drive a car. Victim's mom allowed this man, an adult male,

12 albeit she believed he was 19 or 20, to take her daughter

13 certain places. Certainly did not agree that they could go

14 there to engage in sexual activity, but put her daughter in

15 the care and control of Mr. Carmony for those short periods of

16 time in which sexual activity took place and Mr. Carmony

17 documented that.

18        The application notes in the commentary of the

19 Sentencing Guidelines for this enhancement provide guidance in

20 that specifically this subsection, B5, is intended to have

21 broad application and includes offenses involving a minor

22 entrusted to the defendant whether temporarily or permanently.

23 The reason the enhancement is there is to -- is for this type

24 of behavior.

25        THE COURT: Okay. Last word by the defense on that

1    issue.

2        MR. ADAMS:  I've said everything I've got to say,

3    Your Honor.

4        THE COURT:  All right.  That one is overruled.  Okay.

5    Other objections.

6        MR. ADAMS:  Those are the ones that I have to the --

7        THE COURT:  Okay.

8        MR. ADAMS:  -- guidelines.

9        THE COURT:  Are you satisfied, Mr. Adams, that the

10   record is complete then on those objections?

11       MR. ADAMS:  No, I -- Other than that, as to those

12   issues, nothing further.

13       THE COURT:  Okay.  All right.  Then, I believe,

14   Ms. Braun, on your analysis that -- and statement on page 7,

15   that the Court then has to -- needs to rule on this issue of

16   the mandatory minimum and if it -- if the Court rules in favor

17   of the Government, then that would change the statement of

18   reasons page in the current judgment which would then require

19   Ms. Vela to do an amended judgment.  Do you agree or disagree,

20   Ms. Braun?

21       MS. BRAUN:  I agree, Your Honor.

22       THE COURT:  Mr. Adams, do you agree or disagree?

23       MR. ADAMS:  You have to rule whether the second

24   offense qualifies a --

25       THE COURT:  All right.  The Court will recall on --

1  where did you cite that case, Ms. Braun?  Here it is.

2       THE COURT:  The Court relies on United States v

3  Hubbard, 480 F.3d, 341, 347-48.  Prior conviction in New York

4  for attempted possession of sexual performance by a child

5  which used to enhance the sentence was not error and,

6  therefore; the Court following that Fifth Circuit Court of

7  Appeals decision will find that the second offense to which we

8  have been referring and discussing does constitute a -- an

9  enhancement and, therefore, finds that the judgment should be

10  amended in the statement of reasons portion to show the proper

11  guideline range to be 35 years to life in prison.

12       MR. ADAMS:  Your Honor, I need to make a record.

13  You've not allowed me to address that.

14       THE COURT:  Well, I thought we've been addressing it

15  for the last however long.  But go ahead.  Why do you think

16  Hubbard does not apply?

17       MR. ADAMS:  Well, Your Honor, look:  First of all,

18  you look to the statutory definition and that is found in

19  2251, Title 18 of the United States Code.

20       THE COURT:  As interpreted by the Fifth Circuit.

21       MR. ADAMS:  You start with the language of the

22  statute and you go from there.  The language of the statute

23  provides that a person who violates 2251, which, concededly

24  Mr. Carmony did, who has one prior conviction under -- and

25  then the language of the statute -- this chapter, this would

1    be Title 18, subchapter 110, section 1591 Chapter -- various

2    assorted things, or under the laws of any state relating to

3    aggravated sexual abuse, sexual abuse, abuse of sexual contact

4    involving a minor or the production of child pornography, then

5    the mandatory minimum is 25, the maximum is 50.

6         However, the next prong of the statute is

7    significantly different.  The next prong of the statute is:

8    If such person has two or more convictions under this chapter,

9    which he does not, various assorted other federal statutes, or

10   under the laws of any state relating to sexual exploitation of

11   children, this person shall be subject to 35 to life.

12        Now, note the difference in the language that

13   Congress drafted.  Congress did not say if somebody has two

14   convictions under federal law or state -- any state law

15   regarding aggravated sexual abuse, sexual abuse, abuse of

16   sexual contact, no.  Congress used a completely different

17   phrase, a phrase of sexual exploitation of children.  Now,

18   that phrase is found in no definition within Subchapter 110 of

19   Title 18.  However, that phrase is found within statute 2251

20   which is entitled sexual exploitation of children.  Thus, it

21   has to mean the same thing because it's found within the same

22   statute.  In order for an offense to be sexual exploitation of

23   a child, it has to do with visual depictions because 2251,

24   which is styled Child Sexual Exploitation of Children,

25   prohibits only and solely those acts which go to the

1  production or distribution of visual depiction of minors under

2  every circumstances. In every instance. Every paragraph of

3  that statute calls for a visual depiction. Congress could

4  have repeated the language from the first prong into the

5  second prong. They did not. Congress used the exact four

6  words that it used to talk about visual depictions. Thus,

7  they had to have at visible depictions.

8       In addition, Your Honor, under categorical approach

9  2, what constitutes a predicate offense, you look to the

10  statute and if you -- and if it can be violated in any way

11  that does not fit the definition of the predicate, then the

12  entire statute does not fit. You can't break it up. Thus,

13  any of the various as sorted ways of violating the Kentucky

14  statute that do not mean sexual abuse of a child -- sexual

15  exploitation of a child, is outside the scope of a predicate

16  offense, and in this instance what Mr. Carmony was convicted

17  of wasn't even a felony. Mr. Carmony was convicted of attempt

18  to have a prohibited transaction with a minor. An attempt

19  under Kentucky law, Your Honor, is one degree less. It's not

20  even a felony. Kentucky statute 506.010 defines criminal

21  attempt and then says: A criminal attempt is a class A

22  misdemeanor when the crime attempted is a class C or D felony.

23  Kentucky Revised Statutes 530.065, Unlawful Transaction of a

24  Minor in is Second Degree, which is what Mr. Carmony was

25  convicted of having attempted to do, unlawful transaction with

1   a minor in the second degree is a class B felony.  Because

2   it's a class B felony, an attempt to violate that statute is a

3   class A misdemeanor.

4            THE COURT:  Okay.

5            MR. ADAMS:  And I believe I have another comment, if

6   I can find it.

7            THE COURT:  This -- And so the record is clear, this

8   is the 1990 case in Harland County?

9            MR. ADAMS:  Correct.

10           THE COURT:  Okay.

11           MR. ADAMS:  I think it's the 1990 case.

12           THE COURT:  No, wait a minute --

13           MS. BRAUN:  No.  The 1990 is the forcible rape that

14   was pled down to a nonforcible rape.

15           THE COURT:  I'm sorry.  The attempted unlawful was

16   the 1998 case.

17           MR. ADAMS:  Correct.  And the 1990 case was the

18   nonforcible --

19           THE COURT:  Okay.  Go ahead.

20           MR. ADAMS:  And I would point out to the Court that

21   the Government -- the defendant does not concede that the

22   offense from 1990, the -- statutory rape, nonforced

23   intercourse with a minor is a sexual exploitation of a child

24   case.  It is not.  It is a case that fits the definition of a

25   crime under a state law which is either aggravated sexual

1  abuse, sexual abuse, or abuse of sexual contact with a minor.

2  Note the distinction between the two.

3      THE COURT: All right. Well, anything else on that

4  issue, Mr. Adams?

5      MR. ADAMS: I'm asking for help here. Oh, and, once

6  again, Your Honor, with regard to the categorical approach --

7  I mean, this goes all the way back to Taylor, it goes back to

8  all the sentencing cases and the recent precedent out of the

9  Supreme Court, you look to the elements of the offense. You

10  don't look to the underlying conduct. Thus, if it can't be

11  broken out as an element of the offense, then it just doesn't

12  count.

13      THE COURT: All right. Ms. Braun, were you aware

14  that -- of -- at least the analysis of -- and it has --

15  frankly, it has a logic to it, but were you aware of the

16  possibility this 1998 Kentucky conviction is a misdemeanor?

17      MS. BRAUN: Yes. But I think it's irrelevant. I

18  wasn't aware of that. I don't dispute that. It is a prior

19  conviction relating to the sexual exploitation of a child and,

20  therefore, it qualifies.

21      THE COURT: So, you don't think it matters whether

22  it's a felony or a misdemeanor?

23      MS. BRAUN: No. And, quite honestly, the argument

24  that if you have one prior conviction relating to the sexual

25  abuse of a child, that counts to get you up to 25. But in

1   order to get to 35, you have to have a conviction for the

2   sexual exploitation of a child has been addressed by the

3   courts and dismissed, specifically, the Eighth Circuit in

4   United States v Smith, at 367, F3d 748 addressed that issue

5   because the defendant made the same argument, that the term

6   sexual exploitation of a child should be limited to a

7   pornography or criminal sexual conduct that's captured in

8   visual depictions.  The Eighth Circuit and I believe the

9   Eleventh Circuit as well has addressed the issue, completely

10  rejected it, and said:  Although the term sexual exploitation

11  of children is not defined in the statue, the term

12  unambiguously refers to any criminal sexual conduct with a

13  child.  By it's very nature, any criminal sexual conduct with

14  a child takes advantage of or exploits a child sexually and,

15  therefore, you don't have to have photographed criminal

16  behavior -- sexual behavior in order to qualify under that.

17          It's -- Congress is confusing making one definition

18  for the 25 years and saying it differently in the 35 years. .

19  Their intent was not to distinguish those two.  Their intent

20  was if you sexually harm a child once we're going to give you

21  a harsher punishment.  If you can't follow our laws and

22  sexually harm a child twice, we're going to give you an even

23  harsher punishment.  That was the intent of Congress.

24          THE COURT:  All right.  Mr. Adams, last word on that

25  issue.

1      MR. ADAMS:  Yes, Your Honor.  I believe the

2   misdemeanor matter -- well, number one, as you know, the

3   courts require that you look first to the language of the

4   statute and where you have a direct, concrete, and immediate

5   precedent, use of a certain phase, then you're bound by that.

6      Now, whatever the Government thinks Congress's intent

7   was, that's fine.  Because the Supreme Court in recent years

8   on more than one occasion have said that may be what Congress

9   meant to do, but that's not what they wrote and the courts are

10  thus left with what Congress wrote.

11     THE COURT:  The circuit court language that Ms. Braun

12  quoted seemed to make no distinction between misdemeanor or

13  felony, if it said any exploitation.

14     MR. ADAMS:  I would, once again, looking to the

15  statute itself, you will find that every example given within

16  the statute, it says it's a violation of A, this federal

17  statute, federal statute B, federal statute C, Military Code

18  D, every one of those is of felony grade.  Every single one.

19     Every underlying offense that is referenced within

20  the statute as state law is a felony.  Sexual abuse of a

21  child, aggravated sexual abuse, sexual abuse, abuse of sexual

22  contact involving a minor, every one of those is a felony,

23  every single one.  It has to mean something.

24     THE COURT:  Okay.  We don't know what the offense in

25  Hubbard, whether it was a misdemeanor or a felony?

1    MR. ADAMS:  I believe it was a felony, but I'm not
2  certain.

3    THE COURT:  And, of course, each state may classify
4  crimes at different levels but it talks about attempted
5  possession --

6    MR. ADAMS:  If I may, Your Honor, attempted
7  possession of sexual performance by a child looks to be a
8  visual depiction.  That is to say, some sort of recording of a
9  sexual performance by a child, which would fit my analysis.

10    THE COURT:  All right.  Very well.  Anything else for
11  the defense on that issue?

12    MR. ADAMS:  No, Your Honor.

13    THE COURT:  Anything further for the Government?

14    MS. BRAUN:  No, Your Honor.

15    THE COURT:  All right.  The Court rules that the
16  second conviction under the analysis and authority of the
17  Fifth Circuit case of Hubbard makes the second conviction to
18  be a means of enhancement and, therefore, the Court finds the
19  proper guideline range to be 35 years to life and a Criminal
20  History Category of II and the total offense level, the
21  objections having been overruled, would be a 43.

22    What else do we need to address to make the record
23  complete, Mr. Adams?  And I'm happy to have Mr. Carmony
24  allocute again and pronounce sentence again, if that's --
25  unless there's some other legal issues to look at.

1        MR. ADAMS:   I believe we have covered the legal

2   issues.  But we do need to have allocution, Your Honor.

3        THE COURT:   Okay.

4        MR. ADAMS:   And I would, again, as you noted in the

5   first sentence and point out to the Court that Mr. Carmony has

6   been himself abused.

7        THE COURT:   All right.  And so also I don't -- the

8   motion to withdraw the guilty plea, Ms. Braun, do you have

9   anything else you wish to add on that?

10        MS. BRAUN:   No, Your Honor.

11        THE COURT:   Mr. Adams?

12        MR. ADAMS:   No, Your Honor.

13        THE COURT:   All right.  That's overruled.  So, now

14   the next thing is for Mr. Carmony to allocute again.

15        MR. ADAMS:   That's correct.

16        THE COURT:   Mr. Carmony, come on up.  All right.

17   Mr. Carmony, do you recall being here for the first sentencing

18   hearing?

19        THE DEFENDANT:   Yes, sir.

20        THE COURT:   And this is a continuation of that and,

21   therefore, the Court will consider you to be under the same

22   oath that you took the first time.  All right?

23        THE DEFENDANT:   Yes, sir.

24        THE COURT:   All right.  Mr. Adams, do you wish to

25   inquire or have him simply speak?

1      MR. ADAMS: Your Honor, this -- this is the

2  allocution portion where he is entitled to address the Court

3  in mitigation of punishment and under 3553(a), bearing in mind

4  you have a mandatory minimum as you ruled of 35 years, 35 and

5  40 comes out to 75.

6      THE COURT: Okay. All right. Go ahead, Mr. Carmony.

7      THE DEFENDANT: I just -- I'd like to, you know,

8  address the Court. I'm sorry for what I did. I wish you

9  would, you know, reconsider your life sentence and I just -- I

10  feel that's a little strong on, you know, behalf of me and my

11  family. And I just -- I'm -- I'm sorry that all this

12  happened. If I could take it back, I would.

13      THE COURT: Okay. Anything else?

14      THE DEFENDANT: No, sir.

15      THE COURT: All right. Mr. Adams, allocution on

16  behalf of Mr. Carmony.

17      MR. ADAMS: Yes, Your Honor. Given -- under the

18  Court's rulings, of course, and I am addressing this

19  allegation without waiving my objections to any of the

20  previous matters previously raised. I think a sentence of no

21  more than 35 years would be sufficient. Bearing in mind,

22  again, the reality of this, the core -- the core offense here

23  was Mr. Carmony's relationship with a minor. Bear in mind

24  that the sentence that the Court could have given Mr. Carmony

25  for the elicit sexual relationship with the young lady would

1   be about 30 years.  I mean, the statute is -- the statutes

2   that Congress has passed are harsher on visual depictions than

3   they are on the actual act.  A sentence of life means where

4   does this Court go in an instance when there is force as

5   opposed to deception or persuasion.  What does this Court --

6   how does Mr. Carmony, who used no force, who came down and

7   actually met the parents, who was in a relationship with the

8   parents, although they thought he was younger than he was,

9   nonetheless it was an adult/child relationship that they

10  approved.

11          THE COURT:  As I said at the first hearing, the State

12  of Texas ought to look into that.  But this is not the State

13  of Texas.

14          MR. ADAMS:  But -- And then the recent case in -- I

15  forget the state -- in which a man went to trial for

16  prostituting teenaged children.  He was sentenced to 262

17  months.  22 years.  A sentence of life in this case, Your

18  Honor, treats Mr. Carmony significantly differently than

19  similarly situated defendants and that's under the guidelines.

20          THE COURT:  How many --

21          MR. ADAMS:  I'm sorry.

22          THE COURT:  In case you -- just while I'm thinking of

23  it, the case that you just mentioned about the prostitution,

24  do you know how many times before that the defendant had

25  committed similar acts?

1    MR. ADAMS:  I do not, Your Honor, but I do know that

2    he did not -- I mean, obviously, he went to trial.  He didn't

3    accept responsibility for his actions, so had he pled guilty,

4    he would have been at about 20 years or maybe 18.

5    THE COURT:  Okay.  And you mentioned earlier the

6    difference between in a forcible rape case and someone getting

7    life and where does the Court go from there, the -- of course,

8    the distinction might be that most courts don't allow someone

9    to forcibly rape more than once and they go ahead and put

10   them -- find them to be a threat to society after the first

11   rape and sentence them to life perhaps, arguably, so that they

12   cannot do that again whereas this is Mr. Carmony's third time.

13   And to the extent that before the Court pronounces sentence,

14   the Court does find that based on his prior record,

15   Mr. Carmony is an ongoing threat to young children and will

16   take that into consideration in assessing the punishment.

17   MR. ADAMS:  In addition, Your Honor, with regard to

18   the guidelines, I would point out to the Court that,

19   particularly the guidelines with regard to child pornography,

20   have been driven not by empirical analysis or by study of

21   prior court decisions or prior sentences but have been driven

22   by the congressional mandate of statutory mandatory minimum

23   which, of course, ratchets everything up.  Unlike the rest of

24   the guidelines that have been analyzed, they look to -- what

25   did they do?  They analyzed something like 10,000 or 30,000

1    court decisions in arriving at the guidelines to kind of get a

2    mean or a median as to what judges across the country were

3    doing under certain circumstances.

4        What courts across the country prior to the mandatory

5    minimum were doing was to sentence significantly less than

6    life.  And, again, as I pointed out to it the Court, under

7    3553(a), the Court can take into account the fact that

8    Mr. Carmony was abused an a child.  And if you sentence him to

9    35 years, which is the mandatory minimum, as I pointed out,

10   he'll be 75 when he gets out.

11       The Court thereafter has supervised release available

12   to it and -- in a case such as this, it can be up to life.

13       Given Mr. Carmony's health, which I need to address

14   at another point as to his placement, he's not going to be a

15   threat to anyone when he gets out.  Even at 25 he wouldn't be

16   a threat to anyone when he gets out.

17       THE COURT:  All right.  Anything further?  Well, go

18   ahead and speak to the placement issues.

19       MR. ADAMS:  Your Honor --

20       THE COURT:  And anything else before I hear from

21   Ms. Braun.

22       MR. ADAMS:  Mr. Carmony has been transferred to GEO

23   because of the sentencing matters.  While he was at Guadalupe

24   County, and I pointed this out to you at the first sentencing,

25   he has been subject to tachycardia, that is to say a very

1  rapid heart beat with blood pressure skyrocketing.  EKGs were

2  done while he defendant was at Guadalupe County.

3        Since he has been moved from Guadalupe County to GEO,

4  there's been no monitoring of his condition.  He's not -- GEO

5  does this routinely.  They just either don't give meds or they

6  change meds without them -- without anything other than

7  saying, Oh, well, our list says this is kind of like the one

8  he has been getting, so they gave him a different or a generic

9  or an older form of the medicine and they're older and they're

10 different because they're not working and so they've been

11 improved or because a doctor has prescribed a specific drug.

12       In this instance, Mr. Carmony is not getting that.  I

13 would request it right now but from here he will be

14 transferred to Guadalupe County of Wilson County where I

15 actually know the doctor out there who is a pretty good

16 doctor, Dr. Curry, or in Guadalupe County where was being

17 treated.

18       THE COURT:  Okay.  That's fine.

19       MR. ADAMS:  And thereafter, of course, a facility

20 with proper -- an institution with proper medical facilities

21 within the Bureau of Prisons as close to Kentucky --

22       THE COURT:  But the priority being his health.

23       MR. ADAMS:  I believe the priority would be his

24 health.

25       THE COURT:  And also another factor in these kind of

1  cases whereas they used to send them to Butner, but that's no

2  longer than the case and I inquired of defense counsel of a

3  young law school graduate that was just sent off and he ended

4  up going to somewhere in Massachusetts, I don't know if it was

5  Fort Devens or what, but, anyway, they sent -- Oh, what was

6  his name?

7          MS. BRAUN:  Brock.

8          THE COURT:  Yes.  From the old ranching family in

9  South Texas.  And we let him stay out long enough to graduate

10  from law school, but they sent him to Fort Devens, although he

11  doesn't have any health problems.

12          But, at any rate, the Court will recommend that the

13  Bureau of Prisons look very closely at Mr. Carmony's

14  medication and health issues and make that the top priority as

15  to where to place him for his health and well-being.

16          The Court also finds and will put in the judgment

17  that for the health and well-being of society, the Court finds

18  Mr. Carmony to be a continuing threat based on his prior

19  record in Kentucky and the conviction in this case to

20  children.

21          Anything else, Mr. Adams?

22          MR. ADAMS:  Also, I'm informed that when Mr. Carmony

23  was transferred from Bexar County Jail to GEO, that in Bexar

24  County they had scheduled him for surgery on his back.  Of

25  course, that hasn't happened and it may never happen until he

1  reaches the Bureau of Prisons, but that's not even addressed

2  by --

3      THE COURT:  Well, all right.  That means somehow if

4  you have any records of the need for that, the Bureau of

5  Prisons needs to see all that you can get together in terms of

6  his medical history so they can make the proper --

7      MR. ADAMS:  I'll go back to Bexar County and get

8  that.  Guadalupe -- Guadalupe County has a lot of the records.

9      THE COURT:  And the Court will request, if space is

10  available, that the Marshal's Service consider placing

11  Mr. Carmony as soon as possible back at Guadalupe County or

12  Wilson County.  Any other request?

13      MR. ADAMS:  Just the least possible sentence, Your

14  Honor.

15      THE COURT:  All right.  Ms. -- Ms. Braun, to you want

16  to respond to Mr. Adams's allocution in terms of --

17      Have a seat there, Mr. Carmony.

18      -- the practical aspect of his age and whether it's

19  35 years or 50 years or life.  I know we're talking probably,

20  practical speaking, somewhat semantically.  35 he might get

21  out.  50 he probably wouldn't.  But at any rate -- or

22  somewhere in-between.  But at any rate, your response?

23      MR. ADAMS:  The Government still feels very strongly

24  that a life sentence is the only fair and just sentence in

25  this case for all the reasons that I've already submitted in

1   writing and filed with the Court and for all of the reasons

2   articulated during the sentencing hearing on January 30th.  I

3   think it's a bit misleading to compare his crime in this case

4   to other ones that have been sentenced to less.  Had

5   Mr. Carmony just committed the crime that the Western District

6   of Texas charged him with, without any prior history, he would

7   be capped out at 30.  He wasn't.  It's 35 to life because of

8   his prior convictions.  It's reasonable for Congress to

9   authorize harsher punishments for individuals who have already

10  been convicted of sexually abusing minors will not or cannot

11  comport their conduct to the dictates of the law.  That's

12  Mr. Carmony.

13          He didn't learn anything in the first time.  He

14  didn't learn anything the second time.  I don't know if he

15  will learn anything this time, but he is now at 35 to life and

16  the advisory guideline is life.  That's what's appropriate.

17          We can talk about it being semantics because we don't

18  know about his health.  He knows about his health.  35 is a

19  long time.  50 he may or may not get out.  But it's not

20  semantics to the victim of this crime.  If you set a number,

21  sentence, she is going to write that on her calendar.  Her

22  family is going to write on it their calendar, her children

23  are going to write it on their calendar, and that becomes an

24  infamous day in her life.

25          If he is sentenced to life imprisonment, then she has

1   the possibility of putting that completely aside and that part

2   is over.  I don't know that she'll get over this.  I hope she

3   will.  She is an amazing young lady.  But any time if you vary

4   or depart from the guidelines down to a number sentence, it's

5   not semantics for her.  It's extremely significant for her and

6   probably for the other children that he has exploited and

7   abused.

8           And for that and all the other reasons, the

9   Government still feels very strongly that life imprisonment is

10  the only fair and just sentence.

11          THE COURT:  All right.  Mr. Carmony, come on up here.

12  The Court finds significant the argument that the victim of

13  this crime does need to have some ability to feel that this

14  part of this tragedy is over as opposed to looking forward to

15  a particular date, so the Court will also take into account

16  that factor.

17          The Court will reaffirm its earlier judgment and

18  sentence of Mr. Carmony to life in prison.  A 100 assessment

19  for the Victim of Crime Fund per count.  Was there only one

20  count?

21          MS. BRAUN:  Yes, Your Honor.  The Government

22  dismissed the first count.

23          THE COURT:  And all of the recommendations that

24  Mr. Adams has mentioned will be incorporated into the judgment

25  along with the Court's findings.

1        And, Ms. Braun and Mr. Adams, if you all will make

2   sure that the draft of the judgment makes the appropriate

3   findings in terms of making the record complete and making

4   the -- making the recommendations that have been requested,

5   so --

6        Ms. Braun, anything further on this matter?

7        MS. BRAUN:  No, Your Honor.

8        THE COURT:  Mr. Adams?

9        MR. ADAMS:  No, Your Honor.

10       THE COURT:  Mr. Carmony, any questions?

11       THE DEFENDANT:  No, sir.

12       THE COURT:  All right.  Good luck to you.  We're in

13   recess.

14

15

16

17

18

19

20

21

22

23

24

25

1    I, DENVER B. RODEN, United States Court Reporter for the

2  United States District Court in and for the Western District

3  of Texas, San Antonio Division, hereby certify that the above

4  and foregoing contains a true and correct transcription of the

5  proceedings in the above entitled and numbered cause.

6    WITNESS MY HAND on this 12th day of May, 2009.

7

8

9                              /s/ Denver B. Roden

10                             DENVER B. RODEN, RMR
                               United States Court Reporter
11                             655 E. Durango Blvd.
                               San Antonio, Texas  78206
12                             Phone:  (210) 271-0660

13

14

15

16

17

18

19

20

21

22

23

24

25

AO 245 B (Rev. 06/05)(W.D.TX.) - Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT
## Western District of Texas
### SAN ANTONIO DIVISION

**FILED**
APR - 1 2009
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY CLERK

UNITED STATES OF AMERICA

v.

CHARLES WAYNE CARMONY,
Aliases: Reaper Carmony (CB name); Charles Car money (denies using),

Defendant.

Case Number   SA-08-CR-036(1)FB
USM Number   11622-280

*FIRST AMENDED
## JUDGMENT IN A CRIMINAL CASE
**(For Offenses Committed On or After November 1, 1987)**

The defendant, CHARLES WAYNE CARMONY, Aliases: Reaper Carmony (CB name); Charles Car money (denies using), was represented by Mr. R. Clark Adams, Assistant Federal Public Defender.

On motion of the United States, the Court has dismissed the remaining counts as to this defendant.

The defendant pled guilty to Count Two (2) of the Indictment on July 24, 2008. Accordingly, the defendant is adjudged guilty of such Count, involving the following offense:

| Title & Section | Nature of Offense | Offense Ended | Count (s) |
|---|---|---|---|
| 18 USC 2251(a) | Production of Child Pornography | August 16, 2005 | Two |

As pronounced on January 30, 2009, the defendant is sentenced as provided in pages 2 through 7 of this Judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984. ***This judgment is amended pursuant to the re-sentencing of defendant conducted on March 13, 2009.**

It is further ordered that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this Judgment are fully paid. If ordered to pay restitution, the defendant shall notify the Court and United States Attorney of any material change in the defendant's economic circumstances.

Signed this the ____/____ day of **April, 2009.**

FRED BIERY
United States District Judge

AO 245 B (Rev. 06/05)(W.D.TX.) - Imprisonment

Judgment—Page 2

Defendant: CHARLES WAYNE CARMONY,  Aliases: Reaper Carmony (CB name); Charles Car money (denies using)
Case Number:  SA-08-CR-036(1)FB

## IMPRISONMENT

**The Court will affirm its earlier judgment and re-sentences defendant.**  The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of **LIFE**.  To the extent it applies, the defendant shall receive credit for the time he has already been in custody for this federal offense.

The Court makes the following recommendations to the Bureau of Prisons:

(a)    That the defendant receive the benefits of all applicable counseling and medical treatments and other programs, while incarcerated.  Defendant's medical records shall be provided to the Bureau of Prisons by defense counsel and by United States Probation Officer so the Bureau of Prisons may designate defendant to the proper federal facility.

(b)    That the defendant participate in the Bureau of Prisons' Inmate Education Program, academic and vocational training programs, while incarcerated, as well as any work opportunities.

(c)    **That the defendant be incarcerated in a federal facility with proper medical facilities within the Bureau of Prisons as close to Kentucky as possible, but the priority being defendant's health.**

(d)    **That the Bureau of Prisons look very closely at defendant's medication and health issues and make that the top priority as to where to place him for his health and well-being.**

The defendant shall remain in custody pending service of sentence.

## RETURN

I have executed this Judgment as follows:

_____

_____
_____
_____

Defendant delivered on _____ to _____
at _____, with a certified copy of this Judgment.

_____
United States Marshal

By _____
Deputy Marshal

AO 245 B (Rev. 06/05)(W.D.TX.) - Supervised Release

Judgment--Page 3

Defendant:  CHARLES WAYNE CARMONY,  Aliases: Reaper Carmony (CB name); Charles Car money (denies using)
Case Number:  SA-08-CR-036(1)FB

### SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of life, if defendant is ever released from prison.

While on supervised release, the defendant shall comply with the mandatory, standard and if applicable, the special conditions that have been adopted by this Court as set forth on pages 4 and 5 of this judgment, and with the following conditions issued by the Court on May 27, 2004, specifically:

1.   The defendant shall abstain from the use of alcohol and/or all other intoxicants during the term of supervision.

2.   The defendant shall submit to a drug test whenever ordered by the probation officer.

3.   The defendant shall participate in sex offender counseling, as directed by the probation officer.  The defendant may be required to contribute to the costs of services rendered (copayment) in an amount to be determined by the probation officer, based on the defendant's ability to pay.

4.   The defendant will abide by all rules, requirements and conditions of the sex offender counseling program including submission to polygraph testing, at the defendant's own expense, to determine if the defendant is in compliance with conditions of release.

5.   The probation officer will provide the state officials with any and all information required by the State Sex Offender Registration Agency and may direct the defendant to report to that agency personally for additional processing such as photographing and fingerprinting.

6.   The offender shall participate in a sex offender treatment program which may include physiological testing to determine the offender's sexual orientation and patterns or sexual arousal.

7.   The defendant shall attend and participate in a mental health treatment program and/or sex offender treatment program as approved and directed by the probation officer.  The defendant shall abide by all program rules, requirements and conditions of the sex offender treatment program, including submission to polygraph and all other testing.  The defendant will be required to make co-payments based on the defendant's ability to pay as determined by the probation officer.

8.   The defendant shall follow all other lifestyle restrictions or treatment requirements imposed by the therapist, and continue those restrictions as they pertain to avoiding risk situations throughout the course of supervision.  This includes not residing or going to places where a minor or minors are known to frequent without prior approval of the probation officer.

9.   The defendant shall not associate with any child or children under the age of 18 except in the presence and supervision of an adult specifically designated in writing by the probation officer.  The probation officer will notify the designated adult of risks occasioned by the defendant's criminal record or personal history or characteristics.  The defendant shall permit the probation officer to make such notifications.

10.   The defendant shall reside in a residence approved, in advance, by the probation officer.  Any changes in the residence must be pre-approved by the probation officer.

11.   The defendant shall not reside within 1,000 feet of the real property comprising a public or private elementary, vocational, or secondary school or a public or private college, junior college, university or playground or a housing authority owned by a public housing authority or within 100 feet of a public or private youth center, public swimming pool or video arcade facility, without prior approval of the probation officer.

12.   The defendant shall refrain from purchasing, possessing, or using any sexually stimulating or sexually oriented materials including but not limited to written, audio and visual depictions, such as pornographic books, magazines, photographs, films, videos, DVDs, computer programs, or any other media for portrayal of the same.

AO 245 B (Rev. 06/05)(W.D.TX.) - Supervised Release

13.    The defendant shall not possess, or use, a computer, or electronic device with any internet capability at any location (including employment) without the prior written approval of the probation department. This includes any Internet service provider, bulletin board system, or any other public or private computer network.

14.    The defendant shall not use or possess any computer (whether or not equipped with a modem or access to the internet) at any location (whether or not at his place of employment, residence, or elsewhere) without the prior written permission of the probation officer. The defendant shall not possess or use a phone with access to the internet.

15.    The defendant will not own or possess any type of camera, photographic device, and/or equipment (including video recording equipment), without approval of the probation officer.

16.    The defendant shall have no direct or indirect contact with the victim(s) without the prior written consent of the probation officer.

17.    The defendant shall participate in the computer restriction/monitoring program and shall abide by all rules and requirement of the program. (Only for use when the Court will permit the defendant to possess or use a computer.)

18.    If required to register under the Sex Offender Registration and Notification Act, the defendant shall submit his person, and any property, house, residence, vehicle, papers, computer, other electronic communication or data storage devices or media, and effects to a search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of probation or unlawful conduct by the person, and by any probation officer in the lawful discharge of the officer's supervision functions.

19.    The defendant shall register with the State Sex Offender Registration Agency in any state where the defendant resides, is employed, carries on a vocation, or is a student, as directed by the United States Probation Officer.

Judgment--Page 5

Defendant: CHARLES WAYNE CARMONY,  Aliases: Reaper Carmony (CB name); Charles Car money (denies using)
Case Number: SA-08-CR-036(1)FB

## CONDITIONS OF SUPERVISION

**Mandatory Conditions:**

1) The defendant shall not commit another federal, state, or local crime.

2) The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

3) In supervised release cases only, the defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from custody of the Bureau of Prisons.

4) If convicted of a felony, the defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.

5) The defendant shall cooperate in the collection of DNA as directed by the probation officer if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000 (42 U.S.C. § 1413a).

6) If convicted of a sexual offense as described in 18 U.S.C. § 4042(c)(4), the defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer.

7) If convicted of a domestic violence crime as defined in 18 U.S. C. § 3561(b), the defendant shall participate in an approved program for domestic violence.

8) If the judgment imposes a fine or restitution, it is a condition of supervision that the defendant pay in accordance with the Schedule of Payments sheet of the judgment.

**Standard Conditions:**

1) The defendant shall not leave the judicial district without permission of the court or probation officer.

2) The defendant shall report to the Probation Officer and shall submit a truthful and complete written report within the first five days of each month.

3) The defendant shall answer truthfully all inquires by the Probation Officer and follow the instructions of the Probation Officer.

4) The defendant shall support his or her dependents and meet other family responsibilities.

5) The defendant shall work regularly at a lawful occupation unless excused by the Probation Officer for schooling, training or other acceptable reasons.

6) The defendant shall notify the Probation Officer at least ten days prior to any change in residence or employment.

7) The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substance, except as prescribed by a physician.

8) The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered.

9) The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the Probation Officer.

10) The defendant shall permit a Probation Officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the Probation Officer.

11) The defendant shall notify the Probation Officer within seventy-two hours of being arrested or questioned by a law enforcement officer.

12) The defendant shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the Court.

13) As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245 B (Rev. 05/04)(W.D.TX.) - Supervised Release

Judgment--Page 6

Defendant: CHARLES WAYNE CARMONY,  Aliases: Reaper Carmony (CB name); Charles Car money (denies using)
Case Number: SA-08-CR-036(1)FB

14) If convicted of a sexual offense as described in 18 U.S.C. § 4042(c)(4), or has a prior conviction of a State or local offense that would have been an offense as described in 18 U.S.C. § 4042 (c)(4) if a circumstance giving rise to Federal jurisdiction had existed, the defendant shall participate in a sex offender treatment program approved by the probation officer.  The defendant shall abide by all program rules, requirements and conditions of the sex offender treatment program, including submission to polygraph testing, to determine if the defendant is in compliance with the conditions of release.  The defendant may be required to contribute to the cost of the services rendered (copayment) in an amount to be determined by the probation officer, based on the defendant's ability to pay.

15) The defendant shall submit to an evaluation for substance abuse or dependency treatment as directed by the probation officer, and if deemed necessary by the probation officer, the defendant shall participate in a program approved by the probation officer for treatment of narcotic addiction or drug or alcohol dependency which may include testing and examination to determine if the defendant has reverted to the use of drugs or alcohol.  The defendant may be required to contribute to the cost of the services rendered (copayment) in an amount to be determined by the probation officer, based upon the defendant's ability to pay.

16) The defendant shall submit to an evaluation for mental health counseling as directed by the probation officer, and if deemed necessary by the probation officer, the defendant shall participate in a mental health program approved by the probation officer.  The defendant may be required to contribute to the cost of the services rendered (copayment) in an amount to be determined by the probation officer, based upon the defendant's ability to pay.

17) If the defendant is excluded, deported, or removed upon release from imprisonment, the term of supervised release shall be a non-reporting term of supervised release.  The defendant shall not illegally re-enter the United States.  If the defendant lawfully re-enters the United States during the term of supervised release, the defendant shall immediately report in person to the nearest U.S. Probation Office.

18) If the judgment imposes other criminal monetary penalties, it is a condition of supervision that the defendant pay such penalties in accordance with the Schedule of Payments sheet of the judgment.

19) If the judgment imposes a fine, special assessment, restitution, or other criminal monetary penalties, it is a condition of supervision that the defendant shall provide the probation officer access to any requested financial information.

20) If the judgment imposes a fine, special assessment, restitution, or other criminal monetary penalties, it is a condition of supervision that the defendant shall not incur any new credit charges or open additional lines of credit without the approval of the probation officer unless the defendant is in compliance with the payment schedule.

The Court further adopts such of the following special conditions applied to the supervised person by the judge at the time of sentencing:

1) **COMMUNITY CONFINEMENT:** The defendant shall reside in a Community Corrections Center for a period of _____ months to commence on _____.  Further, once employed, the defendant shall pay 25% of his/her weekly gross income for his/her subsistence as long as that amount does not exceed the daily contract rate.

2) **HOME DETENTION:** The defendant shall participate in the Home Confinement Program for a period of _____ days/months.  During this time the defendant shall remain at his/her place of residence except for employment and other activities approved in advance by the probation officer.  The defendant shall maintain a telephone at his/her place of residence without "call forwarding," a "modem," "caller ID," "call waiting," or portable cordless telephones for the above period.  At the direction of the probation officer, the defendant shall wear an electronic monitoring device and follow electronic monitoring procedures specified by the probation officer.  The court further orders that the defendant shall pay for the costs of Home Confinement, as directed by the probation officer.

3) **COMMUNITY SERVICE:** The defendant shall perform _____ hours of community service work without pay, at a location approved by the probation officer, at a minimum rate of four hours per week, to be completed during the first _____ months of supervision.

AO 245 B (Rev. 06/05)(W.D.TX.) - CMP

Judgment–Page 7

Defendant: CHARLES WAYNE CARMONY,  Aliases: Reaper Carmony (CB name); Charles Car money (denies using)
Case Number: SA-08-CR-036(1)FB

## CRIMINAL MONETARY PENALTIES/ SCHEDULE

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth.  Unless the Court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  Criminal Monetary Penalties, except those payments made through Federal Bureau of Prisons' Inmate Financial Responsibility Program shall be paid through the Clerk, United States District Court,  655 East Durango Boulevard, Room G-65, San Antonio, Texas 78206.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

|         | Assessment | Fine | Restitution |
|---------|------------|------|-------------|
| TOTAL:  | $100.00    | $0   | $0          |

### Special Assessment

It is ordered that the defendant shall pay to the United States a special assessment of $100.00.   Payment of this sum shall begin immediately.

### Fine

The fine is waived because of the defendant's inability to pay.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column above.  However, pursuant to 18 U.S.C. § 3664(i), all non-federal victims must be paid before the United States is paid.

If the fine is not paid, the court may sentence the defendant to any sentence which might have been originally imposed. See 18 U.S.C. §3614.

The defendant shall pay interest on any fine or restitution of more than $2,500.00, unless the fine or restitution is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. §3612(f).  All payment options may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. §3612(g).

Payments shall be applied in the following order:  (1)  assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) community restitution, (6) fine interest,  (7) penalties, and (8) costs, including cost of prosecution and court costs.

Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

FILED

2009 APR -9 PM 4: 46

|                          |     |                                               |
|--------------------------|-----|-----------------------------------------------|
| UNITED STATES OF AMERICA | §   |                                               |
| V.                       | §   | NO.  SA 08-CR-036 FB                           |
| CHARLES WAYNE CARMONY     | §   | (5th Cir. App. No. 09-50137)                  |

### AMENDED NOTICE OF APPEAL

Defendant Charles Wayne Carmony gives notice that he appeals to the Fifth Circuit Court of Appeals from the first amended judgment of conviction and sentence entered by the United States District Court in this case on April 1, 2009, as well as the judgment of conviction and sentence entered on February 10, 2009, for which the original notice of appeal was filed on February 11, 2009.


DATED this 9th day of April, 2009.

     Respectfully submitted.

<div style="margin-left:40%">

HENRY J. BEMPORAD
Federal Public Defender

R. CLARK ADAMS
Assistant Federal Public Defender
Western District of Texas
727 E. Durango Blvd., B-207
San Antonio, Texas  78206-1278
(210) 472–6700
Fax: (210) 472-4454
State Bar Number: 00877650
*Attorney for Defendant*

</div>

## CERTIFICATE OF SERVICE

I certify that I served a copy of the foregoing Record Excerpts on John

E. Murphy, Acting U.S. Attorney for the Western District of Texas (Attn:

Assistant U.S. Attorney Joseph H. Gay Jr.), by mailing it to his office at 601

N.W. Loop 410, Suite 600, San Antonio, Texas 78216-5512 on August 5,

2009.

M. CAROLYN FUENTES
*Attorney for Defendant-Appellant*